UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN J. CASSIDY, ET. AL. | : | CIVIL ACTION NO. 3:02CV1688 (CFD) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KATHRYN M. LAWSON ET. AL. | : | JULY 16, 2004 |

### OBJECTION TO PLAINTIFFS' MOTION TO AMEND THEIR COMPLAINT TO JOIN JEFFREY B. GARFIELD, EXECUTIVE DIRECTOR OF THE CONNECTICUT ELECTIONS ENFORCEMENT COMMISSION, AS A DEFENDANT

Jeffrey B. Garfield, Executive Director and General Counsel of the State Elections Enforcement Commission, hereby objects to the plaintiffs' motion to amend their Second Amended Complaint to join him as a defendant in this matter and add a claim for declaratory relief. The basis for this objection is that: (1) any claim against Mr. Garfield for monetary damages in his official capacity is barred by the Eleventh Amendment; (2) any claim against Mr. Garfield for monetary damages in his individual capacity is barred by absolute and/or qualified immunity; (3) Mr. Garfield is not a proper defendant to a claim for declaratory relief; and (4) this Court lacks subject matter jurisdiction to provide the declaratory relief that the plaintiffs seek because it would effectively overturn a judgment of the Connecticut Supreme Court, which is barred by the Rooker-Feldman doctrine.

**I.    BACKGROUND**

The plaintiffs are five individuals who published or distributed election related materials in connection with the November, 2001 municipal election in the Town of Plainville. Because the plaintiffs' political materials appeared to violate state elections laws, the defendant individuals filed complaints with the State Elections Enforcement Commission (the "Commission"). After the Commission found that in three out of the four cases reported the

plaintiffs had in fact violated state law, the plaintiffs chose not to appeal the Commission's rulings, but rather to sue the defendants for abuse of process, malicious prosecution, libel, and violation of the First and Fourteenth Amendments of the U.S. Constitution.

## II.   ARGUMENT

In the present motion, the plaintiffs seek to join Jeffrey Garfield, Executive Director and General Counsel of the Commission, as a defendant and to add a claim seeking a declaratory ruling that the statute that the Commission found the plaintiffs had violated, Conn. Gen. Stat. § 9-333w(a), violates the First and Fourteenth Amendments. See Substitute Third Amended Complaint, Count 9 (attached to plaintiffs' motion).[1] It is unclear from the plaintiffs proposed Substitute Third Amended Complaint whether the purpose of such joinder is solely to obtain a declaratory ruling or to obtain damages in addition to a declaratory ruling.[2]  In either case, the plaintiffs' motion should be denied.

### A.   Suit For Money Damages Against Jeffrey Garfield In His Official Capacity As Executive Director Of The Elections Enforcement Commission Is Barred By The Eleventh Amendment.

To the extent that the plaintiffs seek to join Jeffrey Garfield in his official capacity as Executive Director and General Counsel of the Elections Enforcement Commission as a

---

[1] Conn. Gen. Stat. § 9-333w(a) states that: "No individual shall make or incur any expenditure with the cooperation of, at the request or suggestion of, or in consultation with any candidate, candidate committee or candidate's agent, and no candidate or committee shall make or incur any expenditure for any written, typed or other printed communication which promotes the success or defeat of any candidate's campaign for nomination at a primary or election or solicits funds to benefit any political party or committee unless such communication bears upon its face the words 'paid for by' and the following: (1) In the case of such an individual, the name and address of such individual; (2) in the case of a committee other than a party committee, the name of the committee and its campaign treasurer; or (3) in the case of a party committee, the name of the committee."

[2] In their Memorandum of Law in support of their motion to add the Commission as a defendant, dated December 9, 2003, the plaintiffs stated on page five that they were "not claiming any damages from the SEEC or the State." Presumably, this is also the case with regard to Mr. Garfield, although the Substitute Third Amended Complaint is unclear.

2

defendant for the purpose of seeking damages, joinder is improper because such relief is barred by the Eleventh Amendment.

It is beyond dispute that the Eleventh Amendment to the United States Constitution prohibits a party from suing a state for any relief in federal court. Edelman v. Jordan, 415 U.S. 651, 662 (1994); Cory v. White, 457 U.S. 85, 90-91 (1982). Because a "suit against a state official in his or her official capacity is . . . no different from a suit against the State itself," it is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989); see also Berman Enterprises, Inc. v. Jorling, 3 F.3d 602, 606 (2d Cir. 1993)("[t]o the extent that the suit [seeks] damages from the defendants in their official capacities, dismissal under the eleventh amendment [is] proper because a suit against a state official in his official capacity is, in effect, a suit against the state itself, which is barred").

The bar of the Eleventh Amendment is not altered by the fact that a suit is brought pursuant to 42 U.S.C. § 1983, Quern v. Jordon, 440 U.S. 332, 341 (1979), and, because it divests the Court of subject matter jurisdiction, may be raised at any time. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 99 n. 8 (1984); Fed. R. Civ. P. 12(h)(3). Although a limited exception to the bar of the Eleventh Amendment has been created for claims against state officers for *prospective* relief based on allegations of a federal constitutional violation, Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 121 (1984); Ex Parte Young, 209 U.S. 123 (1908), this exception does not extend to claims for monetary damages or any other form of retroactive relief. Pennhurst, 465 U.S. at 105 ("we declined to extend the fiction of *Young* to encompass retroactive relief, for to do so would effectively eliminate the constitutional immunity of the States"). As the Second Circuit has explained, "suits against states and their officials seeking damages for past injuries are **firmly foreclosed** by the Eleventh Amendment." Ward v.

Thomas, 207 F.3d 114, 119 (2d Cir. 2000)(emphasis added). Accordingly, to the extent that the plaintiffs seek to join Mr. Garfield as a defendant in the current action for the purpose of seeking monetary damages against him in his official capacity, their motion should be denied because any such claim is barred by the Eleventh Amendment.

> **B.    Suit For Monetary Damages Against Mr. Garfield In His Individual Capacity Is Barred By Absolute And/Or Qualified Immunity**

Although it appears that the plaintiffs seek to join Mr. Garfield as a defendant in his official capacity, if, in fact, they seek to join him in his individual capacity for the purpose of seeking monetary damages, joinder is improper because any such relief is barred by the doctrines of absolute and/or qualified immunity.

The U.S. Supreme Court has held that although 42 U.S.C § 1983 does not expressly refer to any common law immunities, the common law absolute immunity accorded to judges, Pierson v. Ray, 386 U.S. 547 (1967), and prosecutors, Imbler v. Pachtman, 424 U.S. 409, 431 (1976), is applicable in a § 1983 action for damages. This means that a judge is absolutely immune from suit under § 1983 when performing a judicial function, unless he acts in the clear absence of all jurisdiction. Stump v. Sparkman, 435 U.S. 349, 356-57 (1978). Similarly, a prosecutor is absolutely immune from liability for initiating a prosecution and presenting the state's case. Imbler, 424 U.S. at 431. The rationale for such immunity is to preserve the independence of the judicial process and to protect judges and prosecutors from being harassed and intimidated in the performance of their duties by unfounded litigation. Imbler, 424 U.S. at 422-423.

In Butz v. Economou, 438 U.S. 478, 514 (1978), the Supreme Court concluded that the same absolute immunity from suit accorded to judges and prosecutors is equally applicable to agency officials who perform comparable functions. In reaching this conclusion, the Court analyzed the policy reasons behind absolute judicial and prosecutorial immunity and concluded

4

that the same concerns are present in many administrative agency actions and justify the same protections. Significantly, such immunity extends not only to members of commissions and boards, but also to their personnel. See, e.g., Bettencourt v. Board of Registration in Medicine of Comm. of Mass., 904 F.2d 772 (1st Cir. 1990)(absolute immunity barred claims against members of board of medical examiners and board's staff, including its legal adviser); Bass v. Attardi, 868 F.2d 45, 50 (3rd Cir. 1989)(absolute immunity barred claims against municipal planning board members and the board's counsel and consultant); Oliva v. Heller, 839 F.2d 37, 40 (2d Cir. 1988)(absolute immunity barred claims against law clerks who assisted judges in judicial functions).

In the present case, Elections Enforcement Commission's members are absolutely immune from suit because the performance of their duties, which includes investigating alleged violations of the state's election laws, issuing subpoenas, holding hearings, administering oaths, ruling on the admissibility of evidence, issuing orders and imposing sanctions, see Conn. Gen. Stat. § 9-7b, is functionally comparable to that of judges and prosecutors, and procedural protections provided to the respondents, including the right to counsel and the opportunity for appeal, obviate the need for private damages actions. See Regulations Conn. Agencies, SEEC, § 9-7b-34; Conn. Gen. Stat. § 4-183; Butz, 438 U.S. at 512. Because Mr. Garfield is employed as the Commission's Executive Director and General Counsel, and is therefore responsible for advising and assisting the Commission members in carrying out their quasi-judicial functions, the same absolute immunity that protects the Commission members also protects Mr. Garfield. Bettencourt v. Board of Registration in Medicine of Comm. of Mass., 904 F.2d 772 (1st Cir. 1990); Bass v. Attardi, 868 F.2d 45, 50 (3rd Cir. 1989); Oliva v. Heller, 839 F.2d 37, 40 (2d Cir.

1988). Accordingly, joinder of Mr. Garfield for the purpose of seeking monetary damages against him in his individual capacity is barred by absolute immunity.

Suit against Mr. Garfield is also by qualified immunity. It is well established that government officials "enjoy qualified immunity when they perform discretionary functions if either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that [their] acts did not violate these clearly established rights." Tenenbaum v. Williams, 193 F.3d 581, 595 (2d Cir. 1999). "The doctrine of qualified immunity reflects the belief 'that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated.'" Poe v. Haydon, 853 F.2d 418, 423 (6th Cir. 1988), cert. denied, 488 U.S. 1007 (1989), quoting Davis v. Scherer, 468 U.S. 183, 195 (1984). Because qualified immunity is an immunity from suit rather than a mere defense to liability and, like an absolute immunity, is effectively lost if a case is erroneously permitted to go to trial, Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), the Court has "repeatedly [] stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

The test of qualified immunity is one of objective reasonableness, and is determined by establishing whether a reasonable official in the defendant's position could have believed that his actions were reasonable, in light of clearly established law and the information available to him at the time. Anderson v. Creighton, 483 U.S. 635, 640-641 (1987). The subjective motivation of the official is irrelevant to the inquiry. Id. at 641. Rather, the focus is on whether it was objectively reasonable for the defendant to have believed his actions were lawful. Id. A public official is personally liable "[o]nly when no reasonable person would believe that the acts of the

defendants were lawful in light of clearly established law." Mann v. Purcell, 718 F. Supp. 868, 875 (D. Kan. 1989); see also Weg v. Macciarola, 995 F.2d 15, 18 (2d Cir. 1993).

In the present case, the plaintiffs allege in their proposed Substitute Third Amended Complaint that the Commission and Mr. Garfield violated the plaintiffs' First and Fourteenth Amendment rights by interpreting Conn. Gen. Stat. § 9-333w(a) to require them to include in their political advertisements, under the notation "paid for by," not only their names, but also their addresses. (Substitute Third Amended Complaint, Ninth Count).[3] The Connecticut Supreme Court addressed this precise issue, however, in Seymour v. Elections Enforcement Commission, 255 Conn. 78, 762 A.2d 880 (2000), cert. denied, 533 U.S. 931 (2001), in which two candidates for local office challenged a Commission determination that they had violated Conn. Gen. Stat. § 9-333w(a) by failing to include the "paid for by" attribution with their names and addresses in their political advertisements.[4] On appeal to the Connecticut Supreme Court, the candidates claimed that "the disclosure requirements of § 9-333w violate[d] the first and fourteenth amendments to the United States constitution, thereby rendering the statute void and unenforceable." Id. at 82. The court squarely rejected the candidates' claim, concluding that that Conn. Gen. Stat. § 9-333w(a), including the address requirement, was narrowly tailored to serve compelling state interests and therefore passed constitutional muster. With regard to the address requirement, the court stated that:

---

[3]    Although the plaintiffs refer to Mr. Garfield as having interpreted Conn. Gen. Stat. § 9-333w(a) and imply that he found the plaintiffs in violation of the statute, in fact it was the Commission, of which Mr. Garfield is **not** a member, that issued the rulings that concluded that the plaintiffs' conduct constituted a technical violation of Conn. Gen. Stat. § 9-333w(a). Even if Mr. Garfield had issued the rulings, however, which he did not, he would be entitled to qualified immunity as discussed herein.

[4]    Like the plaintiffs in the present case, the plaintiffs in Seymour were individuals who had not formed candidate committees.

7

> The address requirement adds a level of identification in order to increase accountability. Although public officials are not required to disclose their personal information, their office contact information is public knowledge. One of the foundations of our democratic society is that citizens have the opportunity to contact their public officials and representatives directly through telephone calls and letters to the appropriate office. The disclosure statute allows for the same opportunity. Section 9-333w (a) requires only that an address be listed. It does not require a personal or home address. By mandating that an address be listed on distributions falling within its ambit, § 9-333w (a) increases accountability, provides for contact information, and augments the likelihood of gaining a proper identification of the payor. We therefore conclude that the address requirement contained in § 9-333w (a) does not render the statute overbroad, and further, that our statute does not impede an individual, acting independently of a campaign, from anonymous expression.

Id. at 101. Although the plaintiffs petitioned the U.S. Supreme Court for a writ of certiorari, the Court denied the petition. Seymour v. Elections Enforcement Commission, 533 U.S. 931 (2001).

Given the Connecticut Supreme Court's ruling in Seymour expressly upholding the constitutionality of Conn. Gen. Stat. § 9-333w(a), including the address disclosure requirement, it was objectively reasonable for the Commission and Mr. Garfield to conclude that the plaintiffs in the present case were required to comply with the statute and that their failure to include their addresses constituted a violation.[5] Accordingly, all claims for money damages against Mr. Garfield in his individual capacity are barred by qualified immunity and joinder of Mr. Garfield as a defendant in order to seek such relief should be denied.

### C.  Plaintiffs' Motion To Join Mr. Garfield Should Be Denied Because Mr. Garfield Is Not A Proper Defendant.

If the plaintiffs are seeking to join Mr. Garfield for the purpose of obtaining a declaratory ruling concerning the constitutionality of Conn. Gen. Stat. § 9-333w(a), joinder is improper and

---

[5] As noted above in footnote 2, it was *the Commission*, not Mr. Garfield, which concluded that the plaintiffs had violated Conn. Gen. Stat. § 9-333w(a). Even if Mr. Garfield had been responsible for that decision, however, he would nonetheless be entitled to qualified immunity.

should be denied because Mr. Garfield has no authority to enforce Conn. Gen. Stat. § 9-333w(a) and thus is not a proper defendant. In the absence of any enforcement power, Mr. Garfield is merely a representative of the State against whom suit is barred by the Eleventh Amendment.

In Ex Parte Young, 209 U.S. 123, 157 (1908), the U.S. Supreme Court explained that in order to fit within the exception to Eleventh Amendment immunity for cases against state officials seeking prospective relief for unconstitutional acts, the state official named as a defendant "must have **some connection with the enforcement of act**, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." (Emphasis added). "[I]t is not merely the general duty to see that the laws of the state are implemented that substantiates the required 'connection,' but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." Okpalobi v. Foster, 244 F.3d 405, 416 (5th Cir. 2001). Thus, "when a plaintiff challenges the constitutionality of a rule of law, it is the state official designated to enforce that rule who is the proper defendant." American Civil Liberties Union v. The Florida Bar, 999 F.2d 1486, 1490 (11th Cir. 1993).

Applying this rule, federal courts routinely dismiss claims in which the plaintiff seeks injunctive or declaratory relief against an official who lacks specific authority to enforce the challenged statute. For example, in 1st Westco Corp. v. School District of Philadelphia, 6 F.3d 108 (3rd Cir. 1993), the Third Circuit dismissed a third party complaint against the Attorney General and Secretary of Education for the State of Pennsylvania that challenged the constitutionality of a state statute requiring workers on school construction projects to be state residents. Recognizing that (1) "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law," id. at 113; (2) the statute at issue charged the school district, not the Attorney General or the Secretary

9

of Education, with specific authority to enforce its provisions; and (3) there was no realistic likelihood that the Attorney General or the Secretary of Education would ever enforce the statute against the plaintiffs, the court concluded that the Attorney General and Secretary of Education were not proper defendants and dismissed the complaint. See also Okpalobi v. Foster, 244 F.3d 405 (5th Cir. 2001)(Attorney General and Governor were not proper defendants to a suit challenging the constitutionality of Louisiana tort statute that could be invoked only by private litigants); Waste Management Holdings, Inc. v. Gilmore, 252 F.3d 316, 331 (4th Cir. 2001)(Governor not a proper defendant in suit challenging the constitutionality of statutes governing the transport of municipal solid waste).

Similarly, in the present case, the plaintiffs' motion to join Jeffrey Garfield as a defendant should be denied because Mr. Garfield, in his capacity as Executive Director and General Counsel of the Commission, has no authority to enforce the election statutes in general or Conn. Gen. Stat. § 9-333w(a) in particular. Instead, it is the Commission that has that authority pursuant to Conn. Gen. Stat. § 9-7b(a)(2), which specifically empowers the Commission to levy civil penalties for violations of chapter 150, including Conn. Gen. Stat. § 9-333w(a). Mr. Garfield, however, is not a member of the Commission. In the absence of any statutory authority to enforce the provisions of Conn. Gen. Stat. § 9-333w(a), Mr. Garfield is not a proper defendant to the plaintiffs' declaratory judgment action.

> D.    **Plaintiffs' Motion To Add A Claim For Declaratory Relief Should Be Denied Because Such Relief Does Not Fall Within The Exception Of *Ex Parte Young* And Is Barred By The *Rooker-Feldman* Doctrine**.

Even if Mr. Garfield were a proper defendant, which he is not, the plaintiffs' motion to amend their complaint should nonetheless be denied because the declaratory relief that the plaintiffs seek to obtain by joining Mr. Garfield does not fall within the exception of Ex Parte Young, 209 U.S. 123 (1908), and is barred by the Rooker-Feldman doctrine.

10

As noted above in section II.A., the exception to Eleventh Amendment immunity that the U.S. Supreme Court recognized in Ex Parte Young, 209 U.S. 123 (1908), applies to claims against state officials for *prospective* relief only. Pennhurst, 465 U.S. at 105. Claims seeking a declaration that *past* conduct violated federal law are not within the scope of the exception. Ward v. Thomas, 207 F.3d 114 (2d Cir. 2000). Thus, the plaintiffs' request for declaratory relief, which is nothing more than a request that the Court declare that the Commission's rulings interpreting and applying Conn. Gen. Stat. § 9-333w(a) against the plaintiffs in 2002 were incorrect, falls outside the scope of Ex Parte Young and is barred by the Eleventh Amendment.

Such relief is also barred by the Rooker-Feldman doctrine. "The Rooker-Feldman doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in reversal or modification of a state court judgment." Hachamovitch v. DeBuono, 159 F.3d 687, 693 (2d Cir. 1998). In such cases, "jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment." Id.; see also Atlantic Coast Line Railroad v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 286 (1970). Thus, "[i]f the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding, Rooker-Feldman plainly will bar the action." Moccio v. N.Y. State Office of Court Administrators, 95 F.3d 195, 198-99 (2d Cir. 1996). The fact that the parties to the state and federal proceedings are not identical does not preclude the application of the bar. Lemonds v. St. Louis County, 222 F.3d 488, 494-495 (8th Cir. 2000), cert. denied, 531 U.S. 1183 (2001); Nationscredit Home Equity Services, Corp. v. City of Chicago, 135 F. Supp. 2d 905 (N.D. Ill. 2001).

In the present case, as discussed above in section II. B., the plaintiffs want to amend their complaint to seek a declaratory ruling on precisely the same issue that the Connecticut Supreme

11

Court considered and squarely rejected in Seymour v. Elections Enforcement Commission, 255 Conn. 78, 762 A.2d 880 (2000), cert. denied, 533 U.S. 931 (2001), namely, whether Conn. Gen. Stat. § 9-333w(a), including the address requirement, violates the first and fourteenth amendments to the U.S. Constitution. Not only did the Connecticut Supreme Court uphold the constitutionality of the statute, but the U.S. Supreme Court denied a petition for writ of certiorari to review the Connecticut Supreme Court's ruling. Under the circumstances, in which the plaintiffs are effectively seeking to do what the U.S. Supreme Court refused to do -- overturn the ruling of the Connecticut Supreme Court – the plaintiffs' claim is barred by the Rooker-Feldman doctrine.

### III.  CONCLUSION

For all of the foregoing reasons, the plaintiffs' motion to amend their Second Amended Complaint to join Jeffrey B. Garfield as a defendant and add a claim for declaratory relief should be denied.

        JEFFREY B. GARFIELD
        EXECUTIVE DIRECTOR AND
        GENERAL COUNSEL OF THE STATE
        ELECTIONS ENFORCEMENT
        COMMISSION

        RICHARD BLUMENTHAL
        ATTORNEY GENERAL

BY: _____
        Jane R. Rosenberg
        Assistant Attorney General
        Federal Bar No. ct16092
        55 Elm Street
        P.O. Box 120
        Hartford, CT  06141-0120
        Tel: (860) 808-5020
        Fax: (860) 808-5347
        jane.rosenberg@po.state.ct.us

# CERTIFICATION

I hereby certify that a copy of the foregoing was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 16th day of July, 2004 to:

William T. Barrante, Esq.
P.O. Box 273
Watertown, CT  06795
Tel:  (860) 379-9885
Fax: (860) 738-4906

Kenneth J. Laska, Esq.
Segal & Laska, LLC
Drawer A
63 East Main Street
Plainville, CT  06062
Tel:  (860) 747-2792
Fax: (860) 747-8609

Beatrice S. Jordon, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT  06114
Tel:  (860) 249-1361
Fax: (860) 249-7665

Karen L. Karpie, Esq.
Murphy and Karpie
350 Franklin Ave., Suite 408
Bridgeport, CT  06604
Tel : (203) 333-0177
Fax: (203) 333-0177

Charles E. Vermette, Jr., Esq.
Litchfield Cavo, Attorneys at Law
40 Tower Lane, Suite 200
Avon, CT  06001
Tel :  (860) 255-5577
Fax : (860) 255-5566

Paul M. Clyons, Esq.
Law Offices of Heidi Zultkowski
P.O. Box 9011
New Britain, CT  06050-9948
Tel:  (860) 827-4351
Fax: (860) 827-4386

John A. Barbieri, Esq.
18 Cedar Street
P.O. Box 1445
New Britain, CT 06050
Tel:  (860) 224-7119
Fax: (860) 225-7319

_____
Jane R. Rosenberg
Assistant Attorney General

2