UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JOHN J. CASSIDY, ET AL          :        NO.:  302CV1688 (CFD)
                                :
v.                              :
                                :
KATHRYN M. LAWSON, ET AL        :        SEPTEMBER 1, 2004

## DEFENDANTS, WILLIAM PETIT, PATRICK RINGROSE AND MARLISS PAVANO'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(c), the defendants, William Petit, Patrick Ringrose and Marliss Pavano, hereby move for summary judgment as to the plaintiffs' Second Amended Complaint dated November 18, 2002.

As is more particularly set forth in the attached supporting memorandum of law, the defendants are entitled to judgment as a matter of law for the following reasons:

1.    The plaintiffs' claims of abuse of process fail as a matter of law;

2.    The defendants are entitled to absolute immunity with regard to the plaintiffs' claims of abuse of process;

3.    The plaintiffs' claim for violations of their constitutional rights guaranteed by the First and Fourteenth Amendments to the U.S. Constitution, brought pursuant to 42 U.S.C. §1983, fail as a matter of law;

ORAL ARGUMENT IS REQUESTED

4.     The defendants are entitled to qualified immunity with regard to the plaintiffs' claims for violations of their constitutional rights guaranteed by the First and Fourteenth Amendments to the U.S. Constitution, brought pursuant to 42 U.S.C. §1983;

5.     Plaintiff Hinkson's claim of malicious prosecution fails as a matter of law.

As required by D. Conn. L. Civ. R. 7 and 56(a), a Memorandum of Law, exhibits, and a Statement of Material Facts Not In Dispute has been simultaneously filed with this motion.

WHEREFORE, the defendants respectfully request that this Court grant their Motion for Summary Judgment.

DEFENDANTS,
WILLIAM PETIT, PATRICK RINGROSE
and MARLISS PAVANO


By_____/s/__Beatrice S. Jordan_____
        Beatrice S. Jordan
        ct22001
        Howd & Ludorf
        65 Wethersfield Avenue
        Hartford, CT  06114
        (860) 249-1361
        (860) 249-7665 (Fax)
        E-Mail: bjordan@hl-law.com

**CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 1st day of September, 2004.

William T. Barrante
P.O. Box 273
Watertown, CT 06795

Charles E. Vermette, Jr., Esquire
Deborah E. Roser, Esquire
Melicent B. Thompson, Esquire
Litchfield Cavo
40 Tower Lane
Suite 200
Avon, CT  06001

Paul M. Clyons, Esquire
Law Offices, Heidi Zultowski
700 Stanley Drive
P.O. Box 9011
New Britain, CT  06050-9948

John A. Barbieri, Esquire
18 Cedar Street
P.O. Box 1445
New Britain, CT  06050

Kenneth J. Laska, Esquire
Segal & Laska, LLC
63 East Main Street
Plainville, CT  06062

Karen L. Karpie, Esquire
Murphy and Karpie
350 Fairfield Avenue
Bridgeport, CT  06604

Jane R. Rosenberg, Esquire
Assistant Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

_____/s/  Beatrice S. Jordan_ __
Beatrice S. Jordan

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JOHN J. CASSIDY, ET AL     :     NO.:  302CV1688 (CFD)
:
v.     :
:
KATHRYN M. LAWSON, ET AL     :

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, WILLIAM PETIT,
PATRICK RINGROSE AND MARLISS PAVANO'S
MOTION FOR SUMMARY JUDGMENT**

## I.    BACKGROUND

The plaintiffs, John J. Cassidy, William Cunningham, Jeanette Hinkson and

Henry R. Syskowski, have brought this action against the defendants, William Petit,

Patrick Ringrose and Marliss Pavano, by way of an eight count Second Amended

Complaint dated November 18, 2002.[1]  The Second Amended Complaint alleges

abuse of process, violations of the plaintiffs' rights as guaranteed by the First and

---

[1] Pursuant to the Scheduling Order in this matter, approved by the Court on September 20, 2002, the deadline for joining parties and amending the complaint was November 20, 2002.  The plaintiffs did not seek an extension of said deadline.  Notwithstanding the above, the plaintiffs filed a Motion to Join the Connecticut State Elections Enforcement Commission ("SEEC") and to file a Third Amended Complaint on October 27, 2003. The motion was denied by the Court on Autust 30, 2004. The plaintiffs again filed a Motion to Substitute an Additional Defendant and to Substitute the Third Amended Complaint on June 25, 2004, despite the fact that the deadline for filing the same lapsed on November 20, 2002.  The SEEC has objected to the same.  Said motion has not yet been ruled on by the Court.  Accordingly, the operative complaint remains the November 18, 2002 Second Amended Complaint.

Fourteenth Amendments to the U.S. Constitution brought pursuant to 42 U.S.C. §1983, and malicious prosecution.

### A.    CLAIMS OF PLAINTIFFS CASSIDY, CUNNINGHAM AND SYSKOWSKI

Specifically, the plaintiffs, John J. Cassidy, William Cunningham and Henry Syskowski, each allege that they were petitioning candidates in the Plainville November 2001 municipal election.  (See Second Amended Complaint, Count One, ¶14; Count Seven, ¶14).  In support of their campaigns, the plaintiffs' purchased separate political advertisements, which appeared in the November 2001 edition of Plainville's Hometown Connection.  (See Id., at ¶16.)  The political advertisements contained the attribution, "Paid for by" with their respective names, but did not include their addresses.  (See Id., at ¶17.)

On November 2, 2001, the defendants filed a complaint with the Connecticut State Elections Enforcement Committee (hereinafter referred to as "SEEC"), alleging violations of the election laws, including the failure of petitioning candidates to include their addresses in their political advertisements.  The plaintiffs were each ultimately cited by the SEEC for violations of Conn. Gen. Stat. §9-333w for the failure to include their addresses in their political advertisements.  (See Count One, ¶22; Count Seven, ¶22.)  Following a hearing before the SEEC, plaintiffs Cassidy and Cunningham were found to be in violation of Conn. Gen. Stat. §9-333w.  (See Id., Count One, ¶22.)  None of the defendants appeared as witnesses against the plaintiffs at any of the

proceedings before the SEEC.  (See Count One, ¶22.)  In lieu of a hearing, plaintiff

Syskowski signed a Stipulated Consent Agreement on February 19, 2002,

acknowledging that he was in violation of Conn. Gen. Stat. §9-333w by failing to

include his address in the political advertisement.  (See Id., Count Seven, ¶23.)

        In the First and Seventh Counts of the Second Amended Complaint, plaintiffs

Cassidy, Cunningham and Syskowski allege that the defendants, William Petit, Patrick

Ringrose and Marliss Pavano, committed an abuse of process in filing complaints

against each of them with the SEEC for violations of Conn. Gen. Stat. §9-333w by

failing to include their addresses in their political advertisements.  (See Count One,

¶¶19, 24; Count Seven, ¶¶19, 26.)  Plaintiffs Cassidy, Cunningham and Syskowski

further allege that the defendants filed the complaint as political payback for the

plaintiffs' opposition to a referendum question appearing on the election ballot, and to

influence the outcome of both the election and referendum question, thereby resulting

in the claimed abuse of process.  (See Id., Count One, ¶23; Count Seven, ¶25.)

        In the Second and Eighth Counts, plaintiffs Cassidy, Cunningham and

Syskowski allege causes of action pursuant to 42 U.S.C. §1983 for violations of their

civil rights guaranteed by the First and Fourteenth Amendments to the U.S.

Constitution.  Specifically, the plaintiffs allege that defendants Petit, Ringrose and

Pavano, acted in their capacities as public officials in the Town of Plainville in filing the

complaint with the SEEC.  (See Count Two, ¶26; Count Eight, ¶28.)  The plaintiffs

further allege that they had the right to purchase and publish political advertisements in support of their candidacies which did not contain their addresses pursuant to the First and Fourteenth Amendments to the U.S. Constitution as: (a) no Connecticut statute specifically required the plaintiffs to publish their addresses in their political ads; (b) any such statute would constitute an unlawful regulation of political speech; and (c) it would be a violation of equal protection of the laws to require the plaintiffs, as petitioning candidates, to publish their addresses in political ads when candidates for the same office, running on a party ticket or backed by a political committee, were not required to do so. (See Count Two, ¶24; Count Eight, ¶26.) Thus, the plaintiffs allege that the defendants' filing of the SEEC complaint constituted an infringement of the plaintiffs' constitutional rights in violation of 42 U.S.C. §1983. (See Id., Count Two, ¶26; Count Eight, ¶28.)

**B.    CLAIMS OF PLAINTIFF HINKSON**

The plaintiff, Jeanette Hinkson, alleges that she was a principal of the local newspaper, Plainville's Hometown Connection. (See Count Four, ¶2.) The plaintiff placed a 'notice' in the November 2001 edition of the paper urging voters to vote in the election. (See Id., at ¶15.) The plaintiff was cited by the SEEC for violation of the election laws with regard to the 'notice' she placed in the paper. (See Id., at ¶18.) The plaintiff alleges that, following a hearing, the SEEC ultimately concluded that she had not violated the election laws in placing the 'notice' in the paper. (See Id., at ¶20.)

In the Fourth Count of the Second Amended Complaint, plaintiff Hinkson alleges that the defendants, Petit, Ringrose and Pavano, filed a complaint against her with the SEEC, charging her with violations of Conn. Gen. Stat. §§9-333d, 9-333f and 9-333w  for her placement of the 'notice' in the November 2001 edition of the paper. (See Count Four, ¶17.)  The plaintiff further alleges that the defendants filed the complaint with the SEEC to penalize the paper for publishing Cassidy and Cunningham's political advertisements, and to penalize her for associating herself with the other plaintiffs and the paper.  (See Id., at ¶¶22, 24.)  The plaintiff alleges that based upon these motives, the defendants' alleged filing of the SEEC complaint constituted an abuse of process.  (See Id., at ¶25.)

In the Fifth Count, plaintiff Hinkson realleges the specific allegations of the Fourth Count, alleging that the defendants' filing of the SEEC complaint constituted a malicious prosecution.  (See Count Five, ¶25.)

Finally, in the Sixth Count, plaintiff Hinkson alleges a violation of her civil rights guaranteed by the First and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. §1983.  Specifically, the plaintiff alleges that the defendants, Petit, Ringrose and Pavano, filed the complaint with the SEEC in their capacities as public officials of the Town of Plainville.  (See Count Six, ¶26.)  The plaintiff further alleges that she had a right to publish the subject 'notice' in the paper pursuant to the First and Fourteenth Amendments of the U.S. Constitution.  (See Id., at ¶25.)  Thus, the plaintiff

alleges that the defendants' filing of the SEEC complaint constituted an infringement of said constitutional rights in violation of 42 U.S.C. §1983.  (See Id., at ¶26.)

### C.    REMAINING CLAIMS

The Third Count of the Second Amended Complaint is brought by plaintiff John Mastrianni, and sounds in libel, and is not directed to the defendants.

The defendants hereby incorporate by reference the Statement of Facts contained in the attached Local Rule 56(a)1 Statement which provides a more detailed background of the incident.

The defendants now move for summary judgment as to Counts One, Two, Four, Five, Six, Seven and Eight of the Second Amended Complaint for the reasons more fully set forth herein.

## II.    STANDARD OF REVIEW ON SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment". . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A factual dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A "material fact" is one whose resolution will affect the ultimate determination of the case.  Id.  In determining whether a material issue of fact exists, the Court must resolve all ambiguities and draw all inferences against the moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S.Ct. at 2513; J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3rd Cir. 1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).  However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Samuels v. Smith, 839 F. Supp. 959, 962 (D. Conn. 1993).

The party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256, 106 S.Ct. at 2510; see also, Knight v. United States Fire Insurance Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 763 (1987); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).  Thus, once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 265

(1986).  "Neither courts nor defendants should be subjected to trials which can be little more than harassment."  Applegate v. Top Associates, Inc., 425 F.2d 92, 96 (2d Cir. 1970).

When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial.  See Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987).  Where evidence is submitted in support of, or in opposition to, a motion for summary judgment, such evidence must be presented in a manner consistent with its admissibility at trial.  See First National Bank of Clinton, Ill. v. Insurance Co. of North America, 606 F.2d 760 (7th Cir. 1979) (in ruling on summary judgment motion, the District Court properly relied on documents and exhibits identified by affidavit).  Unsworn statements of the parties, letters addressed to litigants from third persons, and hearsay which does not fall under one or more of the exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not properly be considered.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Beyene v. Coleman Security Servies, Inc., 854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. v. Stasny Music Corp., 1 F.R.D. 720 (S.D.N.Y. 1941).

III.    **LAW AND ARGUMENT**

    A.    **PLAINTIFFS' SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR ABUSE OF PROCESS UPON WHICH RELIEF MAY BE GRANTED**

    In the First and Seventh Counts of the Second Amended Complaint, plaintiffs Cassidy, Cunningham and Syskowski allege that the defendants, William Petit, Patrick Ringrose and Marliss Pavano, committed an abuse of process in filing complaints against each of them with the SEEC for violations of Conn. Gen. Stat. §9-333w by failing to include their addresses in their political advertisements.  (See Second Amended Complaint, Count One, ¶¶19, 24; Count Seven, ¶¶19, 26).  Plaintiffs Cassidy, Cunningham and Syskowski allege that the defendants' filing of the SEEC complaint was done in an attempt to penalize the newspaper for publishing the plaintiffs' political advertisements.[2]  (See Count One, ¶21; Count Seven, ¶21.)  The plaintiffs further allege that the defendants filed the complaint as political payback for the plaintiffs' opposition to a referendum question appearing on the election ballot, and to influence the outcome of both the election and referendum question, thereby

_____

[2]The plaintiffs lack standing to allege such a claim and/or rely upon the same as they are not principals or agents of the subject paper, Plainville's Hometown Connection (See John Cassidy's Responses to Interrogatories, attached as **Exhibit R**; William Cunningham's Responses to Interrogatories, attached as **Exhibit S**; Henry Syskowski's Responses to Interrogatories, attached as **Exhibit T**).  In order to establish standing, the plaintiffs must demonstrate that they each have suffered some actual or threatened injury as a result of the defendants alleged conduct.  See Valley Forge College v. Americans United, 454 U.S. 464, 472 (1982).  As the plaintiffs are not principles or agents of the subject paper, they cannot demonstrate that they have personally suffered actual or threatened injury as a result of the defendants alleged attempt to penalize the newspaper for publishing the political ads at issue.  The plaintiffs possess standing only to assert their own legal rights and interests, and lack

resulting in the claimed abuse of process.  (See id., Count One, ¶23; Count Seven, ¶25.)

Plaintiff Hinkson, principal of the subject paper, alleges that the defendants filed the complaint with the SEEC as part of a campaign or movement to discredit and penalize plaintiffs Cassidy and Cunningham for supporting a defeat of the referendum and to penalize the paper for publishing Cassidy and Cunningham's political advertisements in the paper.[3]  (See Count Four, at ¶22.)  Plaintiff Hinkson further alleges that the defendants filed the SEEC Complaint to penalize her for associating herself with the other plaintiffs and the paper.  (See Count Four, at ¶24.)  The plaintiff alleges that based upon these motives, the defendants' alleged filing of the SEEC complaint constituted an abuse of process.  (See Id., at ¶25.)

> 1.    **The Mere Filing Of A Complaint With The State Elections Enforcement Committee Is Insufficient To Form The Basis Of An Abuse Of Process Claim**

"An action for abuse of process lies against any person using 'a legal process against another in an improper manner or to accomplish a purpose for which it was not designed.'"  Mozzochi v. Beck, 204 Conn. 490, 492, 529 A.2d 171 (1987), citing Varga

---

standing to rest their claim of relief upon the legal rights or interests of third-parties, namely the subject newspaper.  Id., at 474, citing Warth v. Seldin, 422 U.S. 490, 499 (1975).

[3]Plaintiff Hinkson lacks standing to allege a claim on behalf of plaintiffs Cassidy and Cunningham, and/or rely upon the same. Hinkson cannot demonstrate that she suffered some actual or threatened injury as a result of the defendants alleged campaign or movement to discredit plaintiffs Cassidy and Cunningham's support of a defeat of the referendum.  See Valley Forge College, supra.

v. Pareles, 137 Conn. 663, 81 A.2d 112 (1951).  Thus, in Mozzochi, the Court

reasoned as follows:

> Because the tort arises out of the accomplishment of a result that could
> not be achieved by the proper and successful use of process, the
> Restatement Second (1977) of Torts, § 682, emphasizes that the
> gravamen of the action for abuse of process is the use of a 'legal
> process . . . against another primarily to accomplish a purpose for which
> it is not designed . . . .' Comment b to § 682 explains that **the addition of
> 'primarily' is meant to exclude liability 'when the process is used for
> the purpose for which it is intended, but there is an incidental
> motive of spite or an ulterior purpose of benefit to the defendant**.

Mozzochi, 204 Conn. at 494 (emphasis added).

In Doctor's Associates, Inc. v. Weible, 92 F.3d 108 (2d Cir. 1996), the Court, in

evaluating an abuse of process claim pursuant to Connecticut law, held as follows:

> . . . **a party does not abuse the legal process merely by filing suit.
> This is true regardless of the [motive]** . . . .;  Vargas v. Pareles, 81
> A.2d 112, 115 (Conn. 1951) ('while an ulterior motive often is present, it
> is not an essential element of the action for abuse of process").  **Rather,
> liability for abuse of process lies only when the offending party
> overtly misuses the process once the proceeding has begun**.  [citing
> Mozzochi, 529 A.2d at 174] (abuse of process claimant must 'point to
> specific misconduct intended to cause specific injury outside of the
> normal contemplation of private litigation'); Shaeffer v. O.K. Tool Co.,
> 148 A. 330, 332 (Conn. 1930) (abuse of process occurs 'not in the issue
> of process, but in its abuse'); Lewis Truck & Trailer, Inc. v. Jandreau, 526
> A.2d 532, 534 (Conn. App. Ct. 1987) ('the gist of the tort of abuse of
> process is not commencing an action or causing process to issue without
> justification, but misusing, or misapplying that process' (citation omitted));
> see also Lodges 743 & 1746 v. United Aircraft Corp., 534 F.2d 422, 465
> (2d Cir. 1975) ('Abuse of process requires more than simply improper

---

Hinkson lacks standing to rest her claim of relief upon the legal rights or interests of plaintiffs Cassidy
and Cunningham.  Id.

motive.  There must also be some action taken to utilize the court's
processes for collateral purposes not related to the suit in question . . . .')
In short, no matter what misconduct by the tortfeasor occurs before the
commencement of suit, it is not, in itself, an abuse of process because
there is not yet process to abuse.

Doctor's Assoc., supra (emphasis added).

In the instant matter, the plaintiffs do not allege that the defendants' complaint
to the SEEC in and of itself was improperly filed.  Rather, plaintiffs Cassidy,
Cunningham and Syskowski allege that the defendants filed the SEEC complaint as
political payback for the plaintiffs' opposition to a referendum question appearing on
the election ballot, and to influence the outcome of both the election and referendum
question, thereby resulting in the claimed abuse of process.  (See Id., Count One, ¶23;
Count Seven, ¶25.)  Plaintiff Hinkson, likewise, alleges that the defendants filed the
SEEC complaint to penalize the paper for publishing Cassidy and Cunningham's
political advertisements in the paper and to penalize her for associating herself with
the other plaintiffs and the paper.  (See Count Four, at ¶¶22, 24.)  Based upon the
above motives, the plaintiffs contend that the defendants filed the SEEC complaint as
a political tool or weapon, a purpose not authorized by the statute.

The plaintiffs cannot, however, proffer any evidence supporting their claim that
the defendants utilized the SEEC complaint process in a manner for which it was not
intended.  Moreover, the plaintiffs' allegations that the defendants filed the SEEC
complaint pursuant to the above motives is based solely upon their conjecture as to

the same.  (<u>See</u>  Deposition Transcript of John Cassidy dated June 29, 2004, attached

as **Exhibit K**, at pp.34-35, 44-47; Deposition Transcript of William Cunningham dated

June 30, 3004, attached as **Exhibit L**, at pp.58-60, 69-70; Deposition Transcript of

Henry Syskowski dated June 30, 2004, attached as **Exhibit N**, at pp.55-56; Deposition

Transcript of Jeanette Hinkson dated June 29, 2004, attached as **Exhibit O**, at pp.61-

62, 64, 66.)  Such general allegations do not satisfy the requirement of showing that

the defendants used the SEEC process primarily to accomplish a purpose for which it

was intended.  <u>See</u> <u>Mozzochi</u>, 204 Conn. at 497.

 In fact, the defendants' complaint to the SEEC directly comports with the

purpose for which it was intended.  The purpose of the SEEC complaint process is to

enable the SEEC to investigate alleged violations of the election laws in order to

maintain the integrity of the election process.  <u>See</u> Conn. Gen. Stat. §9-7b(a)(1).  To

that end, the SEEC is empowered to investigate alleged violations of any election law

made by way of a sworn complaint by an individual such as the complaint by the

defendants in the instant matter.  <u>See</u> <u>Id</u>. The defendants' complaint to the SEEC

reported ads which the defendants believed were in violation of the election laws.

(<u>See</u> SEEC Complaint, **Exhibit A**; Affidavit of William Petit, attached as **Exhibit C**;

Affidavit of Patrick Ringrose, attached as **Exhibit D**; Affidavit of Marliss Pavano,

attached as **Exhibit E**; Deposition Transcript of William Petit dated June 23, 2004,

attached as **Exhibit F**, at pp.16-17, 24, 45; Deposition Transcript of Patrick Ringrose

dated June 23, 2004, attached as **Exhibit G**, at pp.12, 15-17, 26-27, 30; Deposition

Transcript of Marliss Pavano dated June 23, 2004, attached as **Exhibit H**, at pp.10-11,

35).  This is the very purpose of the SEEC complaint process.

 Moreover, the defendants' complaints regarding the omission of addresses in

the individual political advertisements of plaintiffs Cassidy, Cunningham and

Syskowski, likewise, comport with the purpose of the election laws as to the same.

Specifically, the address requirement set forth in Conn. Gen. Stat. §9-333w serves to

add a level of identification in order to increase accountability.  See Seymour v.

Elections Enforcement Comm., 255 Conn. 78, 101, 762 A.2d 880 (2000).  Moreover,

the address requirement contained in §9-333w provides for contact information of the

individual candidate, thereby serving the basic tenet of our society enabling citizens to

contact public officials directly, and promotes the likelihood of gaining a proper

identification of the payor.  See Id.  Accordingly, the defendants' SEEC complaint in

this regard falls squarely within the intended purpose of the statute.

 As indicated above, the mere filing of a complaint, even with an improper

motive, is not sufficient to create liability for an abuse of process.  Liability lies only

when the offending party overtly misuses the process once the proceeding has begun.

See Mozzochi, supra; Vargas, supra; Doctor's Assoc., supra.  For example, an overt

misuse of the process would include such things as:  (1) using the pleadings or the

process in the underlying action as leverage to coerce the payment of a debt or

surrendering property unrelated to the litigation; (2) using unreasonable force, excessive attachment or extortionate methods to enforce a right of action; and (3) using the process to gain any collateral advantage extraneous to the merits, such as improper use of a subpoena. See Doctor's Assoc., supra, citing Mozzochi, 204 Conn. at 493-94.

In the instant action, the plaintiffs cannot establish that the defendants overtly misused the process once it had begun. As in Mozzochi, the plaintiffs do not claim that the defendants used the SEEC complaint or the SEEC investigation/hearing process as leverage to coerce the plaintiffs into paying a debt or surrendering property. Additionally, the plaintiffs do not claim that the defendants used unreasonable force, excessive attachment or extortionate methods to enforce a right of action. Finally, the plaintiffs do not claim that the defendants used the SEEC investigation/hearing process, by way of improper use of a subpoena or otherwise, to gain a collateral advantage extraneous to the merits of the SEEC complaint.

Additionally, the plaintiffs' do not allege that the defendants participated in or improperly utilized the SEEC investigation and hearing proceedings once they had begun. In fact, the plaintiffs concede the contrary. Specifically, the plaintiffs concede that the defendants did not appear in any of the proceedings before the SEEC, nor did the defendants offer any evidence against them. (See Second Amended Complaint, Count One, ¶22; Deposition Transcript of John Cassidy, **Exhibit K**, at pp.47-48;

15

Deposition Transcript of William Cunningham, **Exhibit L**, at p.75; Deposition

Transcript of Henry Syskowski, **Exhibit N**, at pp.57-58; Deposition Transcript of

Jeanette Hinkson, **Exhibit O**, at pp.65-66.)

Connecticut case law is clear that the offending party must in some way overtly

utilize the process once it has begun in order to attach liability for a claim of abuse of

process.  Accordingly, the plaintiffs' complaint fails to state a cause of action for abuse

of process in that it is premised solely upon an alleged improper ulterior motive and

purpose in filing the complaints.  Such general allegations do not satisfy the

requirement of showing that the defendants used the SEEC process primarily to

accomplish a purpose for which it was intended.  See Mozzochi, 204 Conn. at 497.

The defendants are, therefore, entitled to judgment as a matter of law as to Counts

One, Four and Seven of the Second Amended Complaint.

> **2.    The Plaintiffs' Claims Of Abuse Of Process Are Barred As The Defendants Are Afforded Absolute Immunity In Filing A Complaint With The State Elections Enforcement Committee**

Notwithstanding the fact that the plaintiffs have failed to state a cause of action

for abuse of process, the conduct of the defendants in filing the complaint with the

SEEC is protected pursuant to the doctrine of absolute immunity.

In Field v. Kearns, 43 Conn. App. 265, 682 A.2d 148 (1996), the Connecticut

Appellate Court considered whether an attorney could maintain claims for abuse of

16

process and vexatious litigation against another attorney who had filed a complaint

with the Statewide Grievance Committee.  The trial court had ruled for the defendant

bar grievant, holding that bar grievants are entitled to absolute immunity from claims of

abuse of process and vexatious litigation based on the act of filing and pursuing a

complaint with the Committee.

In evaluating whether a grievant was afforded immunity in filing a complaint with

the Statewide Grievance Committee, they stated:

> In Connecticut, parties to or witnesses before judicial or quasi-judicial
> proceedings are entitled to absolute immunity for the content of
> statements mad therein . . . . The judicial proceeding to which absolute
> immunity attaches  . . . includes any hearing before a tribunal which
> performs a judicial function, ex parte or otherwise, and whether the
> hearing is public or not . . . . It extends also to the proceedings of many
> administrative officers, such as boards and commissions, so far as they
> have powers of discretion in applying the law to the facts which are
> regarded as judicial or quasi-judicial, in character.

Id. at 271, citing Petyan v. Ellis, 200 Conn. 243, 510 A.2d 1337 (1986).

The Court then analyzed whether the Statewide Grievance Committee's

proceedings could be classified as "quasi-judicial", using the factors established by the

Connecticut Supreme Court in Kelley v. Bonney, 221 Conn. 549, 606 A.2d 693 (1992).

The principal factors which are to be considered "are whether the body has the power

to:  (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts

and decide; (3) make binding orders and judgments; (4) affect the personal or property

rights of private persons; (5) examine witnesses and hear the litigation of the issues on

a hearing; and (6) enforce decisions or impose penalties." Field, 43 Conn. App. at 272.

The Field Court next examined the Statewide Grievance Committee's procedures, which include the initiation of proceedings upon the filing of a complaint against an attorney with the statewide bar counsel, followed by the complaint being referred to a local panel.  The panel must investigate the complaint to determine whether probable cause exists that the attorney is guilty of misconduct, and, within ninety days, file its written findings and a recommendation with the committee. Following the receipt of the panel's recommendation, the committee has the power to assign the case to a reviewing committee, compel testimony and the production of evidence, hold hearings, and ultimately to recommend dismissal of the complaint, impose sanctions, or order the presentment of the respondent to the Superior Court. The Field Court concluded that these rules governing Committee proceedings "clearly demonstrate that the committee has significant authority to conduct proceedings of a quasi-judicial nature . . . Therefore, we conclude that bar grievance proceedings are quasi-judicial." Field, 43 Conn. App. at 273.  Accordingly, the Field Court held that absolute immunity for statements made during quasi-judicial proceedings applies to bar grievance proceedings.

The Court then considered whether that absolute immunity should be extended to encompass the actual filing of the grievance complaint, and concluded that it

should.  First, the Court noted that an important public policy was at issue:  the

protection of the integrity of the Court, which must be preserved through a

"comprehensive disciplinary scheme . . . established to safeguard the administration of

justice, and designed to preserve public confidence in the system and to protect the

public and the court from unfit practitioners."  Id. at 274, citing In re Durant, 80 Conn.

140 (1907).  The Court reasoned "if unsuccessful bar grievants were subject to

retaliatory lawsuits it would have a 'chilling effect' on the public."  Field, 43 Conn. App.

at 275.  The Court found persuasive the reasoning that "one who felt aggrieved by his

lawyer would hesitate to complain for fear that he might face a damage suit if he failed

to prove his complaint.  Such a fear, whether it was groundless or not, would reduce

the bar's effectiveness in policing its own ranks."  Field, 43 Conn. App. at 275, citing

R.L. Netterville v. Lear Sieger, Inc., 397 So. 2d 1113 (Miss. 1981).  The Field Court

concluded that "a rule establishing absolute immunity for bar grievants protects the

public confidence and the integrity of our judicial system."  Id., citing Hearing on

Immunity for Ethics Complainants, 477 A.2d 339 (N.J. 1984).

    The Court also held that any concerns regarding the damage to an attorney's

reputation from groundless complaints made to the Statewide Grievance Committee

were "outweighed by the importance of public confidence in the supervision of attorney

conduct."  Field, 43 Conn. App. at 276.  The Court further reasoned that,  "[w]hile

[their] decision in this case may place a burden on the legal profession, 'the proper

administration of justice requires that there by a forum where a layman may have his complaint heard, investigated, and, if necessary, judicially determined.'" Id., citing R.L. Netterville, supra.    Finally, the Court reasoned that sufficient safeguards existed in the rules of practice governing grievance proceedings to protect lawyers from undue harm to their reputation.  Id. at 277.

Given these important public policy considerations, and the procedural safeguards in place to protect attorneys involved in grievance proceedings, the Court upheld that the trial court's ruling "that the public policy of protecting the courts and the public from unethical and unprofessional attorneys is so strong that there is absolute immunity for the complainant in filing or otherwise causing the institution of attorney disciplinary proceedings."  Id. at 277.

The instant case parallels Field in several respects.  First, the State Elections Enforcement Commission is as much a "quasi-judicial" body as the Statewide Grievance Committee in that it conducts investigations as to complaints filed, conducts hearings with regard to the same, admit and evaluate evidence, issue final decisions, and impose civil penalties.  See Regulations of the State Elections Enforcement Commission, §9-7b-1, et seq.  Thus, the Field Court's analysis in finding that absolute immunity applies to the filing of a complaint with the Statewide Grievance Committee is a useful "template" for considering whether absolute immunity applies to the act of filing a complaint with the State Elections Commission.

Second, and most importantly, the same public policy concerns that shaped the Field Court's decision also exist in the instant case.  Here, the concern is preserving the integrity of elections, campaigns, elected officials and their offices.  Just as the Statewide Grievance Committee must preserve the integrity of the legal profession with the public's involvement, in the form of a grievance procedure, the Elections Commission cannot possibly police every possible violation of elections law, and therefore, must rely on the general public to do so.  If individuals who file complaints regarding possible elections law violations are subjected to civil liability for their policing efforts, there will be a chilling effect on such complaints.  As a result, the important public policy goal of ensuring the integrity of political candidates and the political offices they hold, will be vitiated.

In sum, the important public policy considerations that led the Appellate Court in Field to hold that a claim of vexatious litigation or abuse of process cannot be based on the act of filing a bar grievance complaint are present in the instant case.  Thus, the defendants should be equally immune from such claims based on their filing a complaint with the State Elections Committee.  Accordingly, the defendants are entitled to judgment as a matter of law as to Counts One, Four and Seven of plaintiffs' Second Amended Complaint.

**B.**    **THE PLAINTIFFS' CLAIMS FOR VIOLATIONS OF RIGHTS GUARANTEED BY THE FIRST AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION, BROUGHT PURSUANT TO 42 U.S.C. §1983, FAIL AS A MATTER OF LAW**

In the Second and Eighth Counts, plaintiffs Cassidy, Cunningham and Syskowski allege causes of action pursuant to 42 U.S.C. §1983 for violations of their civil rights guaranteed by the First and Fourteenth Amendments to the U.S. Constitution.  Specifically, the plaintiffs allege that defendants Petit, Ringrose and Pavano, acted in their capacities as public officials in the Town of Plainville in filing the complaint with the SEEC.  (See Count Two, ¶26; Count Eight, ¶28.)  The plaintiffs further allege that they had the right to purchase and publish political advertisements in support of their candidacies which did not contain their addresses pursuant to the First and Fourteenth Amendments to the U.S. Constitution as:  (a) no Connecticut statute specifically required the plaintiffs to publish their addresses in their political ads; (b) any such statute would constitute an unlawful regulation of political speech; and (c) it would be a violation of equal protection of the laws to require the plaintiffs, as petitioning candidates, to publish their addresses in political ads when candidates for the same office, running on a party ticket or backed by a political committee, were not required to do so.[4]  (See Count Two, ¶24; Count Eight, ¶26.)

---

[4] The plaintiffs' allegations that no Connecticut statute requires them to publish their addresses in their political advertisements, and that any such requirement would be the unlawful regulation of political speech and would violate the equal protection of the laws is directly contrary to established

In the Sixth Count, plaintiff Hinkson alleges a violation of her civil rights guaranteed by the First and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. §1983.  Specifically, the plaintiff alleges that the defendants, Petit, Ringrose and Pavano, filed the complaint with the SEEC in their capacities as public officials of the Town of Plainville.  (See Count Six, ¶26.)  The plaintiff further alleges that she had a right to publish the subject 'notice' in the paper pursuant to the First and Fourteenth Amendments of the U.S. Constitution.  (See Id., at ¶25.)

> **1.      The Plaintiffs Cannot Establish That The Defendants Were Acting In Their Official Capacities And/Or Under Color Of Law**

The federal Civil Rights Act, 42 U.S.C. §1983, provides:

> Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

---

Connecticut precedent.  First, Conn. Gen. Stat. §9-333w explicitly requires that candidates for political office include their addresses in any political advertisements promoting their candidacies.  Specifically, §9-333w(a) provides in pertinent part: "[N]o candidate . . . shall make or incur any expenditure for any written, typed or other printed communication which promotes the success or defeat of any candidate's campaign . . . unless such communication bears on its face the words 'paid for by' and the following: (1) In the case of such and individual, the **name and address** of such individual . . . ."  (Emphasis added). Moreover, the Connecticut Supreme Court has explicitly held that §9-333w does not violate the First and Fourteenth Amendments of the U.S. Constitution as the address requirement served the legitimate government purpose of further identifying the candidate as the source of the communication.  See Seymour v. Elections Enforcement Commission, 255 Conn. 78, 762 A.2d 880 (2000), cert. denied, 533 U.S. 931 (2001).

See 42 U.S.C. §1983.

In order to prevail on their claim brought pursuant to 42 U.S.C. §1983, the plaintiffs must establish that the defendants deprived them of their constitutional rights under the color of law, and that their actions are properly attributable to the Town of Plainville.  See  Adickes v. Kress & Co., 398 U.S. 144, 150 (1970); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978).

The plaintiffs allege that the defendants filed the complaint with the SEEC in their capacities as public officials for the Town of Plainville.  The plaintiffs have each conceded that their allegation that the defendants were acting in their official capacity in filing the SEEC complaint is premises solely upon the manner in which the defendants signed the complaint, namely with their titles.  (See Deposition Transcript of John Cassidy, **Exhibit K**, at p.53; Deposition Transcript of William Cunningham, **Exhibit L**, at pp.81-82; Deposition Transcript of Henry Syskowski, **Exhibit N**, at pp.65-66; Deposition Transcript of Jeanette Hinkson, **Exhibit O**, at p.81.)  The plaintiffs are unable to offer any evidence establishing that the defendants were, in fact, acting in their official capacities in signing the SEEC complaint beyond the manner in which the complaint was signed.  (See Id.)

Contrary to the plaintiffs' allegations, however, the defendants were not acting in their official capacities in filing the complaint with the SEEC.  Specifically, defendant William Petit did not file the complaint in his official capacity as a Town Council

member for the Town of Plainville, or in furtherance of his duties as a Town Councilor. (See Affidavit of William Petit, **Exhibit C**.)  Likewise, defendants Patrick Ringrose and Marliss Pavano did not file the complaint in their official capacities as members of the Board of Education for the Town of Plainville, or in furtherance of their duties as members of the Board of Education.  (See Affidavit of Patrick Ringrose, **Exhibit D**; Affidavit of Marliss Pavano, **Exhibit E**.)  Rather, the defendants each filed the complaint solely in their individual capacities as citizens of the Town of Plainville.  (See Id.)

The plaintiffs are unable to establish that the defendants acted in their official capacities in filing the complaint with the SEEC, or that the defendants' actions are properly attribute to the Town of Plainville.  Accordingly, the plaintiffs' claims of violations of the First and Fourteenth Amendment rights, brought pursuant to §1983, fail as a matter of law.  See Adickes, 398 U.S. at 150; Flagg Bros., 436 U.S. at 156. The defendants are, therefore, entitled to judgment as a matter of law as to the Second, Sixth and Eighth Counts of the Second Amended Complaint.

### 2. The Plaintiffs Cannot Establish An Infringement Of Their First Amendment Rights

The plaintiffs contend that the defendants' act of filing the complaints with the SEEC deprived them of their First Amendment rights in violation of 42 U.S.C. §1983. (See Second Amended Complaint, Counts Two, Six and Eight.)  The U.S. Supreme

Court has held that government action which does not prohibit protected speech may

violate the Constitution where it deters or chills the exercise of First Amendment rights.

See Larkin v. West Hartford, 891 F. Supp. 719, 727 (D. Conn. 1995), citing Laird v.

Tatum, 408 U.S. 1, 11, 92 S.Ct. 2318, 2324, 33 L.Ed.2d 154 (1972).  A §1983 claim

alleging a chill of one's First Amendment rights requires more that allegations of a

subjective chill.  See Id.  Thus, a plaintiff must "demonstrate a . . . specific present

objective harm or a threat of specific future harm . . . Absent such harm, no justiciable

case or controversy exists . . . A plaintiff who does not show he or she has been or will

be deterred from speaking alleges a harm too remote to satisfy the injury in fact

requirement of standing."  Larkin, 891 F. Supp. at 727, citing Laird, supra, Meese v.

Keene, 481 U.S. 465, 472, 107 S.Ct. 1862, 1866, 95 L.Ed.2d 415 (1987).

     Thus, in order to state a legally cognizable cause of action pursuant to 42

U.S.C. §1983 for deprivation of one's First Amendment rights, a plaintiff must make

specific allegations of fact which indicate a deprivation of his constitutional rights.  See

Larkin, 891 F. Supp. at 727; Spear v. West Hartford, 771 F. Supp. 521, 527 (D. Conn.

1991), affirmed, 954 F.2d 63 (2d Cir. 1992).  Allegations which are merely broad,

simple and conclusory statements are insufficient to state a cause of action pursuant

to §1983 for First Amendment rights violations.  See Spear, 771 F.Supp. at 527.

     In the instant action, the plaintiffs simply allege that the conduct of the

defendants in filing the complaints with the SEEC constituted an infringement of their

constitutional rights in violation of 42 U.S.C. §1983.  (See Counts Two, Six and Eight of the Second Amended Complaint.)  The plaintiffs further allege that the conduct of the defendants intimidated the plaintiffs with respect to the exercise of their rights to freedom of speech and freedom of the press, as protected by the First and Fourteenth Amendments to the U.S. Constitution.  Such conclusory and speculative allegations are insufficient for stating a cause of action pursuant to §1983 for violation of one's First Amendment rights.  See Laird, 408 U.S. at 11; Larkin, 891 F.Supp. at 727; Spear, 771 F.Supp. at 527.

       In fact, the plaintiffs fail to make any specific allegations which indicate a deprivation of their constitutional rights, or indicate that the plaintiffs did in fact suffer any cognizable constitutional deprivation.  None of the plaintiffs allege that they stopped writing political advertisements, nor did they allege that they stopped publishing the same as a result of the defendants' conduct.  Rather, the plaintiffs each concede that they have continued to speak and/or publish materials regarding political issues, and have not been prevented from doing the same.  (See Deposition Transcript of John Cassidy, **Exhibit K**, at pp.60-61, 165; Deposition Transcript of William Cunningham, **Exhibit L**, at pp.93-95; Deposition Transcript of Henry Syskowski, **Exhibit N**, at pp.68-69; Deposition Transcript of Jeanette Hinkson, **Exhibit O**, at pp.93-94, 33-34.)  Notwithstanding the above, the plaintiffs contend that the very filing of the SEEC complaint infringed their rights under the First Amendment.  Such

speculative, indirect and remote allegations are insufficient to allege a cause of action pursuant to §1983 for deprivation of the plaintiffs' First and Fourteenth Amendment rights.  See Spear, 771 F. Supp. at 527.

   **C.    EVEN IF THE COURT FINDS THAT THE DEFENDANTS WERE ACTING IN THEIR OFFICIAL CAPACITIES, THE PLAINTIFFS' §1983 CLAIMS ARE BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY**

   Section 1983 provides a right of action against any person who, acting under color of law, deprives another of a right, privilege, or immunity secured by the Constitution or federal laws.  See 42 U.S.C. §1983; Rendell-Baker v. Kohn, 457 U.S. 830, 835, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).  Section 1983 does not create any substantive rights, but rather provides a procedure to redress the deprivation of federal rights that are guaranteed elsewhere.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); Thomas v. Roach, 165 F.3d 137, 142 (2nd Cir. 1999).  In order to succeed on a §1983 claim, the plaintiff must establish that the defendant had the requisite state of mind for the underlying violation.  Board of County Comm'rs of Bryan County, Okla v. Brown, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

   The doctrine of qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory of constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727,

2738, 73 L.Ed.2d 396 (1982); <u>see</u> <u>also</u> <u>Zahra v. Town of Southhold</u>, 48 F.3d 674, 686

(2nd Cir. 1995); <u>Natale v. Ridgefield</u>, 927 F.2d 101, 104 (2nd Cir. 1991).  "Essentially,

if it was objectively reasonable for an official to believe that he or she is acting within

constitutional and statutory bounds, the official will be insulated from liability stemming

from his or her conduct."  <u>Natale</u>, 927 F.2d at 104-5.

     As indicated above, the defendants are entitled to qualified immunity if it was

objectively reasonable for them to believe that they were not violating the plaintiffs'

constitutional rights.  <u>See</u> <u>Natale</u>, 927 F.2d at 104-5.  Specifically,

> in determining whether [the defendants are] entitled to prevail on the
> assertion of the defense of qualified immunity, [the focus] is with the
> objective reasonableness of their actions at the time, and is not a
> subjective inquiry into their personal motives.  *See, e.g., Malley v. Briggs,*
> 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) ("Under
> the *Harlow* standard, . . . an allegation of malice is not sufficient to defeat
> immunity of the defendant acted in an objectively reasonable manner.");
> *Cartier v. Lussier*, 955 F.2d 841, 843 (2d Cir. 1992) ("A subjective inquiry
> into an officer's personal belief is rejected in favor of an objective
> analysis of what a reasonable officer in defendant's position would
> believe."); *Kaminsky [v. Rosenblum]*, 929 F.2d [922, 925 (2d Cir 1991)
> ("Subjective inquiry into a government employee's motivations in acting
> or refusing to act has been rejected as the doctrine's test . . . .").

<u>Zahra</u>, 48 F.3d at 687.

     In the instant action, it was objectively reasonable for the defendants to believe

that they were not violating the constitutional rights of plaintiffs Cassidy, Cunningham

and Syskowski.  First, Conn. Gen. Stat. §9-333w explicitly requires that candidates for

political office include their addresses in any political advertisements promoting their

candidacies.  Specifically, §9-333w(a) provides in pertinent part:

> [N]o candidate . . . shall make or incur any expenditure for any written,
> typed or other printed communication which promotes the success or
> defeat of any candidate's campaign . . . unless such communication
> bears on its face the words 'paid for by' and the following: (1) In the case
> of such and individual, the **name and address** of such individual . . . .

See Conn. Gen. Stat. §9-333w(a) (emphasis added).  Moreover, the Connecticut

Supreme Court has explicitly held that §9-333w does not violate the First and

Fourteenth Amendments of the U.S. Constitution as the address requirement served

the legitimate government purpose of further identifying the candidate as the source of

the communication.  See Seymour v. Elections Enforcement Commission, 255 Conn.

78, 762 A.2d 880 (2000), cert. denied, 533 U.S. 931 (2001).

The plaintiffs each concede that their address did not appear in their respective

political advertisements published in the November 2001 edition of Plainville's

Hometown Connection.  (See Second Amended Complaint, Count One, ¶17; Count

Seven, ¶17.)  In fact, following a hearing before the SEEC, plaintiffs John Cassidy and

William Cunningham were found to be in violation of Conn. Gen. Stat. §9-333w for the

failure to include their addresses in their political advertisements appearing in the

November 2001 edition of Plainville's Hometown Connection.  (See Second Amended

Complaint, Count One, ¶22; SEEC Final Decision re John Cassidy dated July 17,

2002, attached as **Exhibit I**; SEEC Final Decision re William Cunningham dated

May 15, 2002, attached as **Exhibit J**.)  Additionally, in lieu of a hearing before the

SEEC, plaintiff Henry Syskowski signed a Stipulated Consent Agreement on

February 19, 2002, acknowledging that he was in violation of Conn. Gen. Stat. §9-

333w by failing to include his address in the political advertisement.  (See Second

Amended Complaint, Count Seven, ¶23; Agreement Containing Consent Order for

Violations of Conn. Gen. Stat. §9-333w, attached as **Exhibit M**.)

Accordingly, it was objectively reasonable for the defendants to believe that

they were not violating the plaintiffs' constitutional rights in filing a complaint with the

SEEC alleging that the plaintiffs failed to comply with the requirements of Conn. Gen.

Stat. §9-333w.

Likewise, it was objectively reasonable for the defendants to believe that they

were not violating plaintiff Jeanette Hinkson's constitutional rights in filing the

complaint with the SEEC.  Specifically, the defendants' complaint to the SEEC did not

name, reference, cite or allege that the 'notice' placed in the November 2001 edition of

Plainville's Hometown Connection by plaintiff Jeanette Hinkson was in violation of the

election laws.  (See SEEC Complaint, **Exhibit A**; Deposition Transcript of Jeanette

Hinkson, **Exhibit O**, at pp.124-25, 143; Affidavit of William Petit, **Exhibit C**; Affidavit of

Patrick Ringrose, **Exhibit D**; Affidavit of Marliss Pavano, **Exhibit E**.)  In fact, the

defendants did not know who authored the 'notice' placed by plaintiff Jeanette Hinkson

in the November 2001 edition of Plainville's Hometown Connection as the information

regarding the author and payor of the 'notice' did not become known until she notified

the SEEC as to the same.  (See Deposition Transcript of Jeanette Hinkson, **Exhibit O**,

at pp.136-37, 147; Letter to the SEEC dated November 7, 2001, attached as **Exhibit**

**P**; Affidavit of William Petit, **Exhibit C**; Affidavit of Patrick Ringrose, **Exhibit D**; Affidavit

of Marliss Pavano, **Exhibit E**.)  Thus, it was objectively reasonable for the defendants

to believe that they were not violating plaintiff Hinkson's constitutional rights where

they did not cite, reference or allege any violations of the election laws with regard to

the 'notice' she placed in the paper.

As the defendants' actions in filing the complaint with the SEEC were

objectively reasonable, their actions are protected pursuant to the doctrine of qualified

immunity.  See Natale, 927 F.2d at 104-5.  The defendants are therefore entitled to

judgment as a matter of law as to the Second, Sixth and Eighth Counts of the Second

Amended Complaint.

> D. THE PLAINTIFFS' SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR MALICIOUS PROSECUTION UPON WHICH RELIEF MAY BE GRANTED

Plaintiff Jeanette Hinkson alleges an additional cause of action for malicious

prosecution.  (See Second Amended Complaint, Fifth Count.)  An action for malicious

prosecution exists where a civil or criminal action has been instituted with malice,

without probable cause, and has terminated in favor of the plaintiff.  See Schaefer v.

O.K. Took Co., Inc., 110 Conn. 528, 532, 148 A. 330 (1930).  Thus, in order to sustain

a claim for malicious prosecution, the plaintiff must allege and prove:  (1) that the original action was instituted without probable cause, (2) that the action was instituted with malice, and (3) that the action terminated in the plaintiff's favor.  See Id.

Connecticut precedent has repeatedly acknowledged the distinction between a vexatious suit and malicious prosecution.  The Connecticut Courts have consistently noted that a vexatious suit is premised upon a prior civil action, whereas a malicious prosecution suit is ordinarily premised upon a prior criminal complaint.  See Ancona v. Manafort Bros., Inc., 56 Conn. App. 701, 708, 746 A.2d 184 (2000); Norse Systems, Inc. v. Tingley Systems, Inc., 49 Conn. App. 582, 593-94, 715 A.2d 807 (1998).  There is no allegation that the instant matter involves a prior criminal action.  Rather, the plaintiff concedes that the underlying action is civil in nature.  Accordingly, it is not properly an action for malicious prosecution.

Moreover, the plaintiff is unable to establish that the defendants "instituted" an action against her.  Plaintiff Jeanette Hinkson concedes that she placed a 'notice' in the November 2001 edition of Plainville's Hometown Connection urging voters to vote in the November 2001 municipal election.  (See Second Amended Complaint, Count Four, ¶15.)  However, the defendants' complaint to the SEEC did not name, reference, cite or allege that the 'notice' placed in the November 2001 edition of Plainville's Hometown Connection by plaintiff Jeanette Hinkson was in violation of the election laws.  (See SEEC Complaint, **Exhibit A**; Deposition Transcript of Jeanette Hinkson,

**Exhibit O**, at pp.124-25, 143; Affidavit of William Petit, **Exhibit C**; Affidavit of Patrick Ringrose, **Exhibit D**; Affidavit of Marliss Pavano, **Exhibit E**.)  In fact, the defendants did not know who authored the 'notice' placed by plaintiff Jeanette Hinkson in the November 2001 edition of Plainville's Hometown Connection as the information regarding the author and payor of the 'notice' did not become known until she notified the SEEC as to the same.  (See Deposition Transcript of Jeanette Hinkson, **Exhibit O**, at pp.136-37, 147; Letter to the SEEC dated November 7, 2001, **Exhibit P**; Affidavit of William Petit, **Exhibit C**; Affidavit of Patrick Ringrose, **Exhibit D**; Affidavit of Marliss Pavano, **Exhibit E**.)  Thus, the defendants cannot be held to have instituted an action against the plaintiff in this matter.

In addition, in order to state a cause of action for malicious prosecution, a plaintiff must establish the absence of probable cause to prosecute the action, specifically, the knowledge of facts sufficient to justify a reasonable belief that there are grounds for prosecuting the action.  See Ancona, Id.  Similarly, in order to state a cause of action for vexatious suit, a plaintiff must establish knowledge of facts sufficient to justify a reasonable belief that lawful grounds exist for prosecuting the party in the manner complained of.  See Norse, Id.

A basic element of each claim is the prosecution of the action without probable cause to do so.  In the instant matter, the plaintiff does not allege that the defendants prosecuted an action against her.  Rather, her claim of malicious prosecution is

premised solely upon the act of filing the complaint with the SEEC.  (See Second
Amended Complaint, Fifth Count, ¶25.)  The mere act of filing a complaint is
insufficient to attach liability for a claim of malicious prosecution.  See Ancona, supra;
Norse, supra.  As indicated above, a claim for malicious prosecution is premised upon
the prosecution of the action without probable cause.  See Id.  The determination as to
whether probable cause exists to pursue an action for violations of the election laws is
within the discretion of the SEEC.  See Conn. Gen. Stat. §§9-7a, 9-7b.  It is the SEEC
who is afforded the statutory authority to pursue actions against an individual for
violations of the election laws where they determine that probable cause exists to do
so.  See Id.   Here, the defendants merely filed a complaint alleging violations of the
election laws with the SEEC.

        In fact, the plaintiff does not dispute that the "prosecution" was pursued by the
SEEC.  Moreover, the plaintiffs' Second Amended Complaint acknowledges that it was
the SEEC who ultimately cited her for violations of the election laws.  (See Second
Amended Complaint, Fourth Count, ¶18.)  Likewise, the plaintiff acknowledges that the
SEEC conducted the proceedings, and determined whether a violation of the election
laws in fact occurred.  (See Id, at ¶¶19-20.)  The plaintiff has not alleged that the
SEEC maliciously prosecuted her for violations of the election laws.  In fact, the
plaintiff does not contend that the defendants filed the SEEC complaint with any
malice or intent to penalize her personally.  (See Deposition Transcript of Jeanette

Hinkson, **Exhibit O**, at pp.61-64.)  Accordingly, the plaintiff has failed to state a cause of action for malicious prosecution against the defendants.

As the SEEC action against the plaintiff was not instituted by the defendants, did not involve a malicious intent, and does not involve a prior criminal action, it is not properly a claim for malicious prosecution.  The defendants are, therefore, entitled to judgment as a matter of law as to Count Five of the Second Amended Complaint.


IV.    **CONCLUSION**

For the foregoing reasons, the defendants respectfully request that summary judgment enter in their favor as to the plaintiffs' Second Amended Complaint dated November 18, 2002.

DEFENDANTS,
WILLIAM PETIT, PATRICK RINGROSE
and MARLISS PAVANO


By____/s/  Beatrice S. Jordan____
  Beatrice S. Jordan
  ct22001
  Howd & Ludorf
  65 Wethersfield Avenue
  Hartford, CT  06114
  (860) 249-1361
  (860) 249-7665 (Fax)
  E-Mail:  bjordan@hl-law.com

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 1st day of September, 2004.

William T. Barrante
P.O. Box 273
Watertown, CT 06795

Charles E. Vermette, Jr., Esquire
Deborah E. Roser, Esquire
Melicent B. Thompson, Esquire
Litchfield Cavo
40 Tower Lane
Suite 200
Avon, CT  06001

Paul M. Clyons, Esquire
Law Offices, Heidi Zultowski
700 Stanley Drive
P.O. Box 9011
New Britain, CT  06050-9948

John A. Barbieri, Esquire
18 Cedar Street
P.O. Box 1445
New Britain, CT  06050

Kenneth J. Laska, Esquire
Segal & Laska, LLC
63 East Main Street
Plainville, CT  06062

Karen L. Karpie, Esquire
Murphy and Karpie
350 Fairfield Avenue
Bridgeport, CT  06604

Jane R. Rosenberg, Esquire
Assistant Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120


        _____ /s/ Beatrice S. Jordan_ __
        Beatrice S. Jordan