UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \* \* \*

JOHN J. CASSIDY, ET AL.,        \*

       PLAINTIFFS,        \*

VS.                             \*

KATHRYN M. LAWSON, ET AL.,      \*

       DEFENDANTS.        \*   CIVIL ACTION NUMBER

\* \* \* \* \* \* \* \* \* \* \* \* \*   3:02CV1688(CFD)

---

DEPOSITION OF PATRICK RINGROSE

---

Taken before Frances R. Teti, Licensed Shorthand Reporter and Notary Public within and for the State of Connecticut, pursuant to Notice of Deposition, at the law offices of Howd & Ludorf, 65 Wethersfield Avenue, Hartford, Connecticut, on June 23, 2004, commencing at 1:05 p.m.

A+ REPORTING

P.O. BOX 819

WALLINGFORD, CT 06492

866.369.9976

**EXHIBIT G**

| | | |
|---|---|---|
| 1 | A. | Only in one case. |
| 2 | Q. | Which one is that? |
| 3 | A. | The ad on Page 5. |
| 4 | Q. | Which is the ad that is headed: Vote for those who |
| 5 | | will represent, quote, you, not themselves? |
| 6 | A. | The one that was signed by Friends For a Better |
| 7 | | Plainville. |
| 8 | Q. | Which statutory provision did that violate? |
| 9 | A. | It was my understanding at the time "friends," |
| 10 | | being plural, indicated a committee; and if there |
| 11 | | was a formal committee acting and placing ads, they |
| 12 | | had to have a treasurer listed. |
| 13 | Q. | And they also have to be registered with the town |
| 14 | | clerk? |
| 15 | A. | I didn't know that at the time. |
| 16 | Q. | But there was no listing of any treasurer? |
| 17 | A. | Correct. |
| 18 | Q. | So that was the only statute you were familiar |
| 19 | | with.  Was there somebody at this meeting at |
| 20 | | Barbara Willard's that explained the election law? |
| 21 | A. | If there was, I don't recall.  It was a general |
| 22 | | discussion, not a formal meeting. |
| 23 | Q. | Who invited you to the meeting? |
| 24 | A. | I don't recall. |
| 25 | Q. | Was it Mrs. Willard? |

Frances R. Teti, LSR

```
 1        came out a few days before the election in late
 2        October.
 3   Q.   For the record, they date them monthly, so
 4        November, December, January, etc.  So it would
 5        have been the edition that came out just before the
 6        election.  The election was November 6 or around
 7        that day?
 8   A.   First Tuesday after the first Monday in November.
 9   Q.   Let's go through it then.  We've already looked at
10        the advertisement on Page 5.  Your complaint was
11        that there was no treasurer indicated?
12   A.   Correct.
13   Q.   And that's a violation of the law according to your
14        understanding?
15   A.   That was my understanding at the time.
16   Q.   Okay.  Was there anything else about this
17        advertisement that you found any complaint or had
18        any complaint about?
19   A.   No.
20   Q.   All right.  The next one is a -- this is on
21        Page 13.  It's an advertisement by Janice
22        Eisenhauer who was a petitioning candidate for the
23        Town Council.  Was there a violation with this ad?
24   A.   Not that I was aware of.
25   Q.   Not that you were aware of.  Okay.  But it was
```

```
 1        one of the -- on the second page -- let's see.
 2        This is on Page 13.  It's one of the ads that was
 3        complained about.  We'll go to the next ad which
 4        is on Page 17.  The number is not complete on the
 5        copy.  Was there a complaint about -- that you had
 6        about this advertisement?
 7   A.   Yes.
 8   Q.   What was that?
 9   A.   Same as the one on Page 5:  Paid for by Friends For
10        a Better Plainville; "friends," being plural,
11        indicating more than one person and no treasurer
12        being noted.
13   Q.   Okay.  The next one is on Page 19.  There are
14        actually six.  Was there any violation that you
15        saw in these ads?
16   A.   Not that I saw, but during the course of the
17        general conversation during the meeting at Barbara
18        Willard's house, a number of people there said that
19        candidates have to have their home address listed
20        and that they were missing from these.
21   Q.   Do you remember who those people were who said
22        that?
23   A.   I don't.
24   Q.   Did you believe this was a serious violation of the
25        law?
```

Frances R. Teti, LSR

| | | |
|---|---|---|
| 1 | A. | Which? |
| 2 | Q. | Not having the address on the ad? |
| 3 | A. | No. |
| 4 | Q. | But you agreed to have these included in the |
| 5 | | complaint? |
| 6 | A. | Correct. |
| 7 | Q. | When you arrived at Barbara Willard's house, did |
| 8 | | you -- were you aware that you were going to file a |
| 9 | | complaint with the Elections Commission? |
| 10 | A. | No. |
| 11 | Q. | Did someone suggest it or ask you to sign it? |
| 12 | A. | Someone suggested the filing of a complaint. |
| 13 | Q. | Do you remember who? |
| 14 | A. | I do not. |
| 15 | Q. | Do you know who prepared the document? |
| 16 | A. | I don't. |
| 17 | Q. | Did you ask anyone else to sign it? |
| 18 | A. | No. |
| 19 | Q. | After you got the telephone call that there was a |
| 20 | | meeting at Barbara Willard's -- well, strike that. |
| 21 | | The telephone call that invited you to Barbara |
| 22 | | Willard's house, what did the person say to you? |
| 23 | A. | I don't remember who it was or what was said other |
| 24 | | than there was a meeting at Barbara's to discuss |
| 25 | | the political nature of the ads in the Hometown |

| | | |
|---|---|---|
| 1 | A. | Sure. |
| 2 | Q. | And what was the election violation for these |
| 3 | | petitioners' ads? |
| 4 | A. | Didn't I answer that question already? |
| 5 | Q. | I don't think so. If you want to refer back to |
| 6 | | the complaint sheet, Exhibit B, that might refresh |
| 7 | | your memory. |
| 8 | A. | My understanding at the time was that petitioning |
| 9 | | candidates needed to have their address printed in |
| 10 | | the advertisement. |
| 11 | Q. | With their name; in other words, "Paid For By |
| 12 | | William Cunningham" with his address? |
| 13 | A. | I don't know about the "Paid For" part. |
| 14 | Q. | But the address had to be there? |
| 15 | A. | The general consensus and what was discussed at |
| 16 | | that meeting at Barbara Willard's was that a |
| 17 | | petitioning candidate had to have their address as |
| 18 | | part of the ad. |
| 19 | Q. | So that's why that complaint was made against those |
| 20 | | particular people; because they didn't have their |
| 21 | | address on their advertisement? |
| 22 | A. | That's why I signed it. |
| 23 | Q. | Now, getting back to your belief that the Hometown |
| 24 | | Connection as a newspaper was supporting these |
| 25 | | petitioning candidates, did the lack of the address |

| | | |
|---|---|---|
| 1 | | have any -- did that factor into that conclusion? |
| 2 | A. | I suppose it did. |
| 3 | Q. | In other words, if they had had their addresses, |
| 4 | | would you have assumed -- would you have believed |
| 5 | | that the paper wasn't supporting them? |
| 6 | A. | It wouldn't have been an issue if the address had |
| 7 | | been there. |
| 8 | Q. | It wouldn't have been an issue for the commission, |
| 9 | | but would you have still believed that the paper |
| 10 | | was supporting these people? |
| 11 | A. | I said I believed they were supporting. I didn't |
| 12 | | say they didn't have the right to. My only issue |
| 13 | | was the correctness of the ads with my general |
| 14 | | understanding of election law advertising. |
| 15 | Q. | So the paper -- you're saying the paper had the |
| 16 | | right to support them and that you believe they |
| 17 | | were supporting them, and the reason you believe |
| 18 | | they were supporting them is that they had the |
| 19 | | advertisements on one page of the paper? |
| 20 | A. | No. |
| 21 | Q. | No? Then why did you believe the paper was |
| 22 | | supporting them? |
| 23 | A. | It had nothing to do with advertisements being on |
| 24 | | one page of the paper. |
| 25 | Q. | Or advertisements in the paper. In fact, one of |

Frances R. Teti, LSR

| | | |
|---|---|---|
| 1 | A. | It's not editing the advertising. It's |
| 2 | | withholding publication if the newspaper believes |
| 3 | | the ads are incomplete, are not in compliance with |
| 4 | | election regulations. |
| 5 | Q. | So you believe a newspaper has the freedom to |
| 6 | | withhold or refuse to print a political |
| 7 | | advertisement? |
| 8 | A. | I would assume that they do. |
| 9 | Q. | Now, at some point, you learned -- I believe it was |
| 10 | | in the early part of 2002 -- that the State |
| 11 | | Elections Commission had found that there were no |
| 12 | | violations by either Helen Bergenty or the Hometown |
| 13 | | Connection? |
| 14 | A. | I'm not sure of the time frame, but I remember |
| 15 | | hearing about the resolution. |
| 16 | Q. | What was your reaction to that? |
| 17 | A. | I was fine with it. |
| 18 | Q. | Did you agree with it? |
| 19 | A. | I accepted it. They're the experts. |
| 20 | Q. | What exactly did you want the Elections Commission |
| 21 | | to do? |
| 22 | A. | I wanted the Elections Commission to review the ads |
| 23 | | in question from the Hometown Connection and make a |
| 24 | | determination if they were in compliance or they |
| 25 | | weren't. |

CERTIFICATE OF REPORTER

I, Frances R. Teti, a Licensed Shorthand Reporter and Notary Public duly commissioned and qualified in and for the State of Connecticut, do hereby certify that there came before me the following named person, to wit: PATRICK RINGROSE, who was by me duly sworn to testify to the truth and nothing but the truth; that he was thereupon carefully examined upon his oath and his examination reduced to writing under my supervision; that this deposition is a true record of the testimony given by the witness.

I further certify that I am neither attorney nor counsel for, nor related to, nor employed by any of the parties to the action in which this deposition is taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially interested in the action.

IN WITNESS THEREOF, I have hereunto set my hand and affixed my seal this 29th day of June, 2004.



_____

Frances R. Teti, LSR, Notary Public

My commission expires: 3-31-09

License No: 00076