
```
22      Q.   At some point in, I believe, 2003 you indicated that
23   you were writing a column for the Hometown Connection?
24      A.   Yes, I did.
25      Q.   And that was after the filing of the SEEC complaint.
page 61
 1   Correct?
 2      A.   Yes.
 3      Q.   And do you still speak on political issues or
 4   express your views?
 5      A.   Yes, I do.
 6           MS. JORDAN:  Why don't we just take a quick
 7      break so I can look at my notes, and I think I might
 8      be all set.
 9
10           (A recess was taken)
11
12           MS. JORDAN:  Back on the record.  I have no
13      further questions at this point, but I am going to
14      reserve the right to recall Mr. Cassidy for a
15      continued deposition to inquire as to anything I
16      think I need to follow-up on with regard to the
17      articles that you are going to produce to me, but I'm
18      going to let other counsel take over.
19           MR. BARRANTE:  Fair enough.
20
21           CROSS-EXAMINATION BY MS. KARPIE:
22
23      Q.   Mr. Cassidy, you indicated that you have a file that
24   contains copies of some newspaper articles or letters to the
25   editor?
page 62
 1      A.   Yes, I do.
```

[77:1] - [77:25]            6/26/2004    John Cassidy

• Exhibit K. Deposition of John J. Cassidy

```
page 76
25   any gripe with him?
page 77
 1      A.   We have disagreements.  I have no hard feelings
 2   against him.
 3      Q.   You did name him as a defendant in this case?
 4      A.   Yes, I did.
 5      Q.   So, you understand that you're suing him?
 6      A.   Yes, I do.
 7      Q.   And why are you suing Mr. Petit?
 8      A.   Because of what his actions were.
 9      Q.   And what were his actions?
10      A.   He filed a complaint.
11      Q.   Is that the only reason that you're suing Mr. Petit,
12   because he signed the complaint that was filed against you in
13   the Election Commission?
14      A.   Yes.
15      Q.   Do you have any knowledge of any malice that he had
16   towards you?
17      A.   No.
18      Q.   In fact, do you believe he had any malice or any ill
19   feelings towards you when he signed the complaint?
20      A.   I don't think he did.
21      Q.   Did you ever speak with any of the defendants about
22   the complaint to the State Elections Commission?  The
23   defendants are the people that you have sued.
24      A.   Right.
25      Q.   Have you ever discussed anything with them about the
page 78
 1   complaint?
```

[133:1] - [133:25]           6/26/2004    John Cassidy

Segal & Laska LLC / Attorneys at Law / 63 East Main Street / Plainville, Connecticut 06062

• Exhibit K. Deposition of John J. Cassidy

```
page 132
25      A.    I think.  I don't -- I think I did.  It was all by
page 133
 1  checks.
 2      Q.    And you did that so that if anybody ever questioned
 3  you, you would have a record.  Correct?
 4      A.    Oh, yeah.
 5      Q.    That's important to you.  Right?
 6      A.    Right.  If I ever thought I was going close to over
 7  $500, yeah.
 8      Q.    So, you would never pay by way of cash?
 9      A.    No.
10      Q.    All by check?
11      A.    I remember, yeah.
12      Q.    Okay.  Did Mr. Pavano do anything maliciously
13  towards you?
14      A.    I have no idea.
15      Q.    Did he do anything intentionally towards you?
16      A.    Towards me?  I don't think -- I don't think so.
17      Q.    Okay.  Now, you say that you learned of the filing
18  of the complaint with the SEEC -- I believe that's Defendant's
19  Exhibit 1.  Do you have that?  Could you give that to Mr.
20  Cassidy?  You got that from the Elections Enforcement
21  Commission by way of a letter dated -- what is it?  November
22  13th?
23      A.    Yeah, November 13, 2001.
24      Q.    Okay.  When did you learn -- you indicated that you
25  learned of this complaint shortly before the election?
page 134
 1      A.    Yeah.  It was before, I thought.
```

[159:1] - [161:25]    6/26/2004    John Cassidy

• Exhibit K. Deposition of John J. Cassidy

```
page 158
25  him?
page 159
 1      A.    I don't like the way he acts.  I don't like what he
 2  says in regards to the school board.  I just don't like the
 3  man.  I don't know him.  I know his father.  I knew his
 4  grandfather, but --
 5      Q.    So, that was my other question.  Do you know Pat
 6  Ringrose?  Have you met him before?
 7      A.    No.  I just don't like his -- I don't like what he
 8  does, no.
 9      Q.    And you indicated that you believe Bill Petit was
10  okay?
11      A.    Billy is all right.
12      Q.    Do you think that Bill Petit had any malice towards
13  you?
14      A.    No.  I think his malice is directed towards Helen.
15      Q.    Do you believe that Patrick Ringrose had any malice
16  directed towards you?
17      A.    Towards me personally?  No, I don't think he does.
18  I wouldn't know.  I don't think so.  I think he hates
19  everybody.
20      Q.    But as you sit here today, you don't think that he
21  has any malice directed towards you personally?
22      A.    Only when it comes to the school because I was
23  against the school.
24      Q.    How about Marliss Pavano, do you know Marliss?
25      A.    I know her father, yeah.
page 160
 1      Q.    Do you like Marliss Pavano?
 2      A.    Marliss kissed me one time.  I like her.
 3      Q.    Do you believe that Marliss Pavano had any malice
 4  directed towards you personally in filing the complaint?
 5      A.    Personally?  No.  Only when it comes to the school.
```

Segal & Laska LLC / Attorneys at Law / 63 East Main Street / Plainville, Connecticut 06062

```
            6   They are all upset about the school.
            7        Q.   Well, I am asking about you do you think she --
            8        A.   No, I don't think so.
            9        Q.   So, if I understand your testimony correctly, then,
           10   you do not believe that Patrick Ringrose, William Petit or
           11   Marliss Pavano had any malice towards you personally in filing
           12   the complaint.  You think that it may have been related to the
           13   school issue?
           14        A.   Centered around -- for those individuals.
           15        Q.   Did you mean now Patrick Ringrose?
           16        A.   Yeah.
           17        Q.   William Petit?
           18        A.   No.
           19        Q.   And Marliss Pavano?
           20        A.   Okay.  Ringrose and Marliss, their anger centered
           21   over the school.  Billy hates Helen.  He was after Helen and
           22   the newspaper, and I think it was because of this.  Well, he
           23   didn't like her anyway, but it was because of this ad that
           24   somebody put in there.
           25        Q.   But you don't believe any of those individuals filed
        page 161
            1   a complaint against you personally because of some malice
            2   towards you?
            3        A.   Only my stand on the school.
            4             MR. BARRANTE:  Let the record show that Mr.
            5        Cassidy was pointing at the page five ad that was
            6        previously referred to.
            7        Q.   (By Ms. Jordan)  Now, when you were being questioned
            8   by Attorney Vermette, you gave some testimony about the
            9   statements that the ten individuals did or did not make, and
           10   you indicated that Ms. Lawson didn't make any statements that
           11   you were concerned about.  Correct?
           12        A.   She didn't.  I never heard anything from her.
           13        Q.   Let's go through the other defendants.  We know that
           14   you have given some testimony about Mr. Ringrose, but do you
           15   believe that William Petit made any statements or wrote any
           16   articles in the paper that you felt were damaging to you or an
           17   attack of you personally?
           18        A.   No.  I think Billy was just after Helen.
           19        Q.   But my question is, do you think he made --
           20        A.   No.
           21        Q.   No?  How about Marliss Pavano?
           22        A.   She never said anything.
           23        Q.   So, your complaint with William Petit and Marliss
           24   Pavano is just in the actual filing of the complaint?
           25        A.   For the reasons -- the reason they filed a complaint
        page 162
            1   wasn't to protect the State of Connecticut elections laws.
```

[162:1] - [162:25]        6/26/2004    John Cassidy

• Exhibit K. Deposition of John J. Cassidy

```
        page 161
           25        A.   For the reasons -- the reason they filed a complaint
        page 162
            1   wasn't to protect the State of Connecticut elections laws.
            2        Q.   But not directed towards you personally?
            3        A.   What?
            4        Q.   But not directed towards you personally?
            5        A.   With what?
            6        Q.   With regards to William Petit and Marliss Pavano?
            7        A.   I was what they called collateral damage.
            8        Q.   Now, you also gave some testimony about your belief
            9   that David Underwood had an opportunity to see the newspaper
           10   before it was published.  Do you recall that?
           11        A.   Yes, I do.
           12        Q.   Do you have any knowledge that Patrick Ringrose had
           13   seen the paper before it was published?
           14        A.   No.
```

Segal & Laska LLC / Attorneys at Law / 63 East Main Street / Plainville, Connecticut 06062

```
15      Q.   How about William Petit?
16      A.   No.
17      Q.   How about Marliss Pavano?
18      A.   No.
19      Q.   Now, you also gave testimony that you believed that
20 the ten individuals who filed a complaint all hated Helen
21 Bergenty.  Do you recall that?
22      A.   Yes, I do.
23      Q.   Do you have any personal knowledge as to whether
24 William Petit had any ill-feelings or malice towards Helen
25 Bergenty?
page 163
 1      A.   Personal knowledge?
```

[165:1] - [165:24]     6/26/2004    John Cassidy

• Exhibit K. Deposition of John J. Cassidy

```
page 164
25      A.   No, I don't.
page 165
 1      Q.   Do you any if anyone paid for the ad?
 2      A.   I don't.
 3      Q.   When you saw the ad, did you ever inquire as to why
 4 your name was in an ad that you claimed to have nothing to do
 5 with?
 6      A.   No.
 7      Q.   To this day, have you ever made any inquiry?
 8      A.   No.
 9      Q.   You're not curious about that?
10      A.   No, I'm not.
11           MS. KARPIE:  I don't have anything further.
12
13           RECROSS-EXAMINATION BY MR. VERMETTE:
14
15      Q.   In the 2003 election Mr. Cassidy, nothing prevented
16 you from placing an ad on behalf of yourself that had your
17 address in it, did it?
18      A.   Did somebody prevent me?  Nothing prevented me from
19 doing what I want to do as a citizen, as a human being, and my
20 natural rights.  I made a conscious decision not to do it
21 because of the decision rendered by Cashman and the Election
22 Enforcement Commission.
23           MR. VERMETTE:  Thank you, Mr. Cassidy.  Nothing
24      further.
25
```

[166:1] - [166:23]     6/26/2004    John Cassidy

• Exhibit K. Deposition of John J. Cassidy

```
page 165
25
page 166
 1           RECROSS-EXAMINATION BY MR. LASKE:
 2
 3      Q.   So, if I understand it correctly, sir, a former
 4 United States Marine, a former president of a union, a former
 5 treasurer of a union, a former individual that's been involved
 6 in politics with his mother, Ernie Millerick, Nora Powers,
 7 whimped out in the 2003 election.  Is that a fair statement?
 8      A.   That is a fair statement.  Unfortunately, that is a
 9 fair statement.
10      Q.   So, you're an old man and you just decided to hang
11 it up.  Is that a fair statement?
12      A.   No.  I will be honest about this.  We had this
13 situation going on since these charges were filed, and I
14 pressed and I sued.  I have stayed away from the town council
15 meetings on my own volition.  I have done it myself.  I think
16 I haven't even appeared there once, maybe twice, since I filed
```

Segal & Laska LLC / Attorneys at Law / 63 East Main Street / Plainville, Connecticut 06062

```
17   this lawsuit.  I really -- I contemplated in 2003 to put a big
18   ad in there without my address.  I sat down and thought it
19   over and it was just detrimental to what I'm trying to do
20   here, and so I didn't.  I withheld it.  I'm not proud of
21   myself for doing that because that's not my persona or in my
22   nature, but that's the decision I made on my own and did I it,
23   you know.
24        Q.   Let me ask you this.  With regards to Ronald Pavano,
```

[166:24] - [167:25]    6/26/2004    John Cassidy

• Exhibit K. Deposition of John J. Cassidy

```
page 166
23   you know.
24        Q.   Let me ask you this.  With regards to Ronald Pavano,
25   you know of no statements that were derogatory, vicious or
page 167
 1   vile made by him against you?
 2        A.   No.
 3        Q.   And Exhibit 5 that was written by a concerned
 4   citizen, the letter, Exhibit 5, sir?
 5        A.   Okay.
 6        Q.   Do you know who wrote that letter?
 7        A.   I have no idea.
 8        Q.   For all you know, that could have been written by
 9   Helen Bergenty.  Correct?
10        A.   Could have been.
11        Q.   Okay.
12        A.   I don't think so, but it could have been.
13        Q.   And with regards to the other defendants in this
14   matter, you have no knowledge of any derogatory, vicious or
15   vile statements made by them against you.  Correct?
16        A.   But --
17        Q.   The other people that have been mentioned --
18        A.   -- I think in some Ringrose letters.
19        Q.   Well, you have already discussed Ringrose, but I am
20   talking about the other individuals.
21        A.   No.
22             MR. LASKE:  I have nothing further.
23             MR. BARBIERI:  I have nothing.
24             MS. JORDAN:  Nothing further.
25             (Deposition concluded at 2:15 p.m.)
page 168
 1                    C E R T I F I C A T E
```

• Exhibit L Deposition of William Cunningham

[58:1] - [61:1]    6/30/2004    William Cunningham

• Exhibit L Deposition of William Cunningham

```
page 57
25   political payback for your opposition to the Linden
page 58
 1   Street School referendum.  Are you aware of that
 2   allegation?
 3        A    Yes, I am.
 4        Q    Can you explain for me what is the basis for
 5   your claim that the SEEC complaint was done for a
 6   political payback against you personally?
 7        A    Well, they quite literally took exception to
 8   my stance with the fact that I don't believe that they
 9   did due diligence to alternative concepts for Linden
10   Street School and the new construction method that they
11   were planning, and questions that I had raised about
12   that.  And the easiest way to make me a nonentity would
13   be to discredit me.  What better way to discredit me
14   than to make me out to be a law breaker.
15        Q    How do you know they knew what your stance
```

-25-

```
16  was on the Linden Street School?
17       A    I was quite vocal about it.  I'd raised
18  multiple questions about the amount of reimbursement
19  from the State.  I had raised questions about the
20  design.  I've raised questions about the amount of
21  square feet and space they were attempting to build by
22  comparison to square footage space that we already had.
23  Different aspects that they appeared to be not
24  forthcoming with to the general public.
25       Q    Other than your questions about the various
page 59
 1  aspects of the project, how do you know that they
 2  specifically knew that you were opposed to the project
 3  and that was their intent in filing the complaint?
 4       A    Like I said, I was very public about it.  I
 5  even drove around with signs on my truck that said,
 6  "vote no on Linden Street School."
 7       Q    Well, as you sit here today, other than it's
 8  your assumption because you were vocal about it, do you
 9  know for a fact that the defendants, each of the
10  defendants knew at the time that they filed the SEEC
11  complaint, that you were opposed to the project?
12       A    I'm sorry.  I spaced in the middle of that
13  question.  Can you say that again?  I didn't understand
14  it.
15       Q    Sure.
16            ATTORNEY JORDAN:  Can you read it back?
17            (Whereupon, the reporter read back the
18            last question.)
19       A    I'm not sure I understand it any better the
20  second time when she read it.
21       Q    As you sit here today, do you know for a
22  fact that any of the defendants knew you were opposed
23  to the Linden Street School project and that was the
24  reason they filed the SEEC complaint?
25       A    I believe that was part of or a good portion
page 60
 1  of their reason for filing the complaint against me.  I
 2  believe in my mind that was their logic behind it.
 3       Q    So this is based on something that you just
 4  believed personally?
 5       A    After conversation with them and different
 6  things that had been said around town and comments to
 7  the press, things of that nature, counterstatements to
 8  statements that I had made, the different political
 9  rhetoric going back and forth between, I can only
10  assume that they took real issue with my stance on the
11  Linden Street School.
12       Q    And that's based on your assumption?
13       A    Yes.
14       Q    When you said conversations with them, who
15  are you referring to?
16       A    I would say Mr. Pavano, Mrs. Keezer
17  Mr. DeMay.  I might have even talked to Mr. Ringrose.
18  (Phonetic.)
19       Q    I'm sorry?
20       A    I may have even spoken to Mr. Ringrose about
21  it at some point in time very briefly.   ...Dave Brown.
22  These are all people that were, you know, at some point
23  either members of one party or the other, either
24  members of the republican or democratic committees,
25  members of the Board of Ed or, you know, Town Council
page 61
 1  or something of that nature.
 2       Q    Well, did you ever have any conversations
```

[69:1] - [70:25]        6/30/2004    William Cunningham

• Exhibit L Deposition of William Cunningham

-26-

```
page 68
 25       A    No.  Nothing that I can testify to as
page 69
  1  first-hand knowledge.
  2       Q    Did you ever hear anything from anybody
  3  else about Kate Lawson's filing the SEEC complaint
  4  specifically about her?
  5       A    No.
  6       Q    When you decided to run for town council in
  7  the 2001 election, you had the option to form a
  8  committee and appoint a treasurer, correct?
  9       A    Yes.
 10       Q    You chose not to do that?
 11       A    Correct.
 12       Q    You chose to run as an individual
 13  candidate?
 14       A    Yes.
 15       Q    And you were subject to the state election
 16  laws as they applied to individual candidates without
 17  committee and treasurer?
 18       A    Yes.
 19       Q    That was a choice you made?
 20       A    Yes.
 21       Q    And as you sit here today, do you feel as
 22  an individual candidate for town council in 2001
 23  without a committee and without treasurer you were
 24  somehow exempt from these state election laws that
 25  pertain to individual candidates such as yourself?
page 70
  1       A    No.
  2       Q    Would you expect those election laws to be
  3  applied equally to an individual candidate without
  4  committee, without a treasurer as those laws would be
  5  applied to other individual candidates without a
  6  treasurer and committee?
  7       A    Yes.
  8       Q    Do you have any facts which lead you to
  9  believe Kate Lawson made any malice or ill will
 10  towards you?
 11       A    No.
 12       Q    Yet you have made that allegation against
 13  her in the complaint?
 14       A    Yes.
 15       Q    Without support?
 16       A    Yes.
 17       Q    Are you willing to withdraw that allegation
 18  against her seeing you have no support?
 19            MR. BARRANTE:  Objection.
 20  BY MR. VERMETTE:
 21       Q    You can answer.
 22       A    Not at this time.
 23       Q    Why not?
 24       A    Because I don't believe it would be prudent
 25  for me to withdraw that at this time.
page 71
  1       Q    You feel it would be more prudent to
```

[75:1] - [76:25]    6/30/2004    William Cunningham

• Exhibit L Deposition of William Cunningham

```
page 74
 25  associating with them.  I don't necessarily agree with
page 75
  1  everything that was printed in here, yet I didn't have
  2  a problem with having my name appear with these
  3  people.
  4       Q    You didn't care who paid for this ad?
  5       A    No.
  6       Q    Now, do you have any evidence or facts that
```

-27-

Segal & Laska LLC / Attorneys at Law / 63 East Main Street / Plainville, Connecticut 06062

```
 7  Mr. Ronald Pavano has maliciously filed this SEEC
 8  complaint against you?
 9       A    No.
10       Q    Would you be willing to withdraw that
11  portion of your complaint brought against Mr. Pavano?
12            MR. BARRANTE:  Objection.
13       A    No.
14       Q    Pardon me?
15            MR. BARRANTE:  Objection.  That is
16       not his decision.
17       Q    I am asking you a question.
18       A    Not at this time.
19       Q    You have any facts Mr. Pavano used this
20  process to maliciously file this SEEC complaint
21  against you?
22       A    No.
23       Q    Again, would you withdraw that portion of
24  the complaint where you are alleging Mr. Pavano abused
25  the process?
page 76
 1            MR. BARRANTE:  Objection.
 2       A    Not at this time.
 3       Q    Do you have any evidence that Mr. Pavano
 4  filed this complaint with the SEEC for political
 5  payback?
 6       A    No.
 7       Q    Again, would you withdraw that portion of
 8  your complaint where you alleged he brought this
 9  complaint for political payback?
10            MR. BARRANTE:  Objection.
11       A    Not at this time.
12       Q    Do you have any evidence that Mr. Pavano
13  through his action in filing this complaint with the
14  SEEC attempted to penalize the Hometown Connection?
15       A    No.
16       Q    Again, would you withdraw that portion of
17  the complaint that alleges that?
18            MR. BARRANTE: Objection.
19       A    Not at this time.
20       Q    Do you have any evidence that Mr. Pavano,
21  by the filing of this SEEC complaint, attempted to
22  influence the election of 2001?
23       A    No.
24       Q    Would you withdraw that portion of your
25  complaint where he alleged that?
page 77
 1            MR. BARRANTE:  Objection.
```

[75:1] - [75:25]    6/30/2004    William Cunningham

• Exhibit L Deposition of William Cunningham

```
page 74
25  associating with them.  I don't necessarily agree with
page 75
 1  everything that was printed in here, yet I didn't have
 2  a problem with having my name appear with these
 3  people.
 4       Q    You didn't care who paid for this ad?
 5       A    No.
 6       Q    Now, do you have any evidence or facts that
 7  Mr. Ronald Pavano has maliciously filed this SEEC
 8  complaint against you?
 9       A    No.
10       Q    Would you be willing to withdraw that
11  portion of your complaint brought against Mr. Pavano?
12            MR. BARRANTE:  Objection.
13       A    No.
14       Q    Pardon me?
15            MR. BARRANTE:  Objection.  That is
```

-28-

```
                          16              not his decision.
                          17         Q    I am asking you a question.
                          18         A    Not at this time.
                          19         Q    You have any facts Mr. Pavano used this
                          20   process to maliciously file this SEEC complaint
                          21   against you?
                          22         A    No.
                          23         Q    Again, would you withdraw that portion of
                          24   the complaint where you are alleging Mr. Pavano abused
                          25   the process?
                          page 76
                          1                     MR. BARRANTE:  Objection.
```

[75:6] - [77:25]          6/30/2004    William Cunningham

• Exhibit L Deposition of William Cunningham

```
page 75
5         A    No.
6         Q    Now, do you have any evidence or facts that
7    Mr. Ronald Pavano has maliciously filed this SEEC
8    complaint against you?
9         A    No.
10        Q    Would you be willing to withdraw that
11   portion of your complaint brought against Mr. Pavano?
12                  MR. BARRANTE:  Objection.
13        A    No.
14        Q    Pardon me?
15                  MR. BARRANTE:  Objection.  That is
16             not his decision.
17        Q    I am asking you a question.
18        A    Not at this time.
19        Q    You have any facts Mr. Pavano used this
20   process to maliciously file this SEEC complaint
21   against you?
22        A    No.
23        Q    Again, would you withdraw that portion of
24   the complaint where you are alleging Mr. Pavano abused
25   the process?
page 76
1                   MR. BARRANTE:  Objection.
2         A    Not at this time.
3         Q    Do you have any evidence that Mr. Pavano
4    filed this complaint with the SEEC for political
5    payback?
6         A    No.
7         Q    Again, would you withdraw that portion of
8    your complaint where you alleged he brought this
9    complaint for political payback?
10                  MR. BARRANTE:  Objection.
11        A    Not at this time.
12        Q    Do you have any evidence that Mr. Pavano
13   through his action in filing this complaint with the
14   SEEC attempted to penalize the Hometown Connection?
15        A    No.
16        Q    Again, would you withdraw that portion of
17   the complaint that alleges that?
18                  MR. BARRANTE: Objection.
19        A    Not at this time.
20        Q    Do you have any evidence that Mr. Pavano,
21   by the filing of this SEEC complaint, attempted to
22   influence the election of 2001?
23        A    No.
24        Q    Would you withdraw that portion of your
25   complaint where he alleged that?
page 77
1                   MR. BARRANTE:  Objection.
2         A    Not at this time.
3         Q    Do you have any evidence that Mr. Pavano by
4    the filing of this SEEC complaint attempted to
```

Segal & Laska LLC / Attorneys at Law / 63 East Main Street / Plainville, Connecticut 06062

```
                5   influence the referendum in November 2001?
                6        A    No.
                7        Q    Again, would you withdraw that portion of
                8   your complaint?
                9             MR. BARRANTE:  Objection.
               10        A    Not at this time.
               11        Q    You mentioned that you filed a grievance
               12   against Attorney Michalik?
               13        A    No, I did not file a grievance.
               14        Q    You sent a letter?
               15        A    Yes.
               16        Q    To whom?
               17        A    Connecticut Bar.
               18        Q    The Connecticut Bar Association?
               19        A    Yes.
               20        Q    Alleging what?
               21        A    I didn't allege anything.  All I did was
               22   supply the information that I had found two documents
               23   in the town records showing Mr. Michalik's law firm
               24   handled two mortgages on a piece of paper on the
               25   corner of upper and lower Camp Street.  And the
             page 78
                1   article from a newspaper clipping that showed he had
```

[76:1] - [77:25]    6/30/2004    William Cunningham

• Exhibit L Deposition of William Cunningham

```
           page 75
           25   the process?
           page 76
            1             MR. BARRANTE:  Objection.
            2        A    Not at this time.
            3        Q    Do you have any evidence that Mr. Pavano
            4   filed this complaint with the SEEC for political
            5   payback?
            6        A    No.
            7        Q    Again, would you withdraw that portion of
            8   your complaint where you alleged he brought this
            9   complaint for political payback?
           10             MR. BARRANTE:  Objection.
           11        A    Not at this time.
           12        Q    Do you have any evidence that Mr. Pavano
           13   through his action in filing this complaint with the
           14   SEEC attempted to penalize the Hometown Connection?
           15        A    No.
           16        Q    Again, would you withdraw that portion of
           17   the complaint that alleges that?
           18             MR. BARRANTE: Objection.
           19        A    Not at this time.
           20        Q    Do you have any evidence that Mr. Pavano,
           21   by the filing of this SEEC complaint, attempted to
           22   influence the election of 2001?
           23        A    No.
           24        Q    Would you withdraw that portion of your
           25   complaint where he alleged that?
           page 77
            1             MR. BARRANTE:  Objection.
            2        A    Not at this time.
            3        Q    Do you have any evidence that Mr. Pavano by
            4   the filing of this SEEC complaint attempted to
            5   influence the referendum in November 2001?
            6        A    No.
            7        Q    Again, would you withdraw that portion of
            8   your complaint?
            9             MR. BARRANTE:  Objection.
           10        A    Not at this time.
           11        Q    You mentioned that you filed a grievance
           12   against Attorney Michalik?
           13        A    No, I did not file a grievance.
```

Segal & Laska LLC / Attorneys at Law / 63 East Main Street / Plainville, Connecticut 06062