FILED

2004 SEP 10 A 11: 51

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN J. CASSIDY, ET AL | CIVIL NO. 3.02CV1688(CFD) |
| Plaintiffs | |
| v. | |
| KATHRYN M. LAWSON, ET AL | |
| Defendants: | SEPTEMBER 9, 2004 |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

**FACTS**: In the First Count and Fourth Count, the Plaintiffs allege that the Defendants committed an "abuse of process" by filing a complaint with the Connecticut State Elections Enforcement Commission (SEEC). The complaint concerned advertisements the Plaintiffs placed in the November 2001 edition of Plainville's Hometown Connection. The advertisements arose out of Plaintiffs' opposition to a referendum involving construction of a school. Defendants complained to the SEEC because the ads failed to indicate certain information required by Connecticut Statute and regulation. The Plaintiffs allege in the First and Fourth Counts that by filing this complaint with the SEEC, the Defendants committed an abuse of process.

In the Fifth Count, the Plaintiff, Hinkson, accuses the Defendants of malicious prosecution.

- 1 -

The Third Count is a claim of libel brought by the Plaintiff, Mastrianni, against Defendant, Ciesielski.

**WHAT IS THE ABUSE OF PROCESS?**

Abuse of process involves the use of "a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." *Varga v. Pareles*, 137 Conn. 663, 667, 81 A.2d 112 (1951); *Schaefer v. O.K. Tool Co.*, 110 Conn. 528, 532-33, 148 A.330 (1930).

There is no allegation that the Defendants filed their SEEC complaint in an improper manner. Plaintiffs do allege that the Defendants filed the complaint with "improper" motivation. But improper motivation, even if it exists in theory, is not, in and of itself, the basis for a tort action. In *Mozzochi v. Beck*, 204 Conn. 490, 529 A2d 171 (1987) the Connecticut Supreme Court relied, in part, on the Restatement Second (1997) Torts §682 in emphasizing that abuse of legal process must involve a Defendant implementing that process to accomplish a purpose outside the normal use or design of that process. Liability does not exist "when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the Defendant." Restatement Second (1997) of Torts §682, comment b; cited at 529 A2d 171 p. 173.

By filing a complaint with the SEEC the Defendants prompted the SEEC to conduct an investigation and arrive at an independent determination as to whether the Plaintiffs committed a violation. That is precisely the purpose of the complaint procedure. The complaint itself is not legal process which forces the Plaintiffs to appear in court or at a deposition or a hearing; it does not effectuate a lien or attachment on Plaintiffs' property or assets. It is not legal process at all. Whether or not the Defendants had secondary motivation in filing the complaint is irrelevant unless the courts are willing to entertain causes of action based on bad Karma. And, as Plaintiffs indicate in the First Count §19 of their Amended Complaint, the SEEC <u>did</u> find them in violation of Connecticut General Statute 9-333w.

**DEFENDANTS ENJOY ABSOLUTE IMMUNITY**

Parties to a judicial or quasi judicial proceeding are entitled to absolute immunity for the statements made therein. *Petyan v. Ellis*, 200 Conn. 243, 510 A2d 1337 (1986); *Field v. Kearns*, 43Conn. App. 265, 682 A2d 148 (1996). The question is whether this immunity extends to the actual filing of the complaint. The Court in *Field v. Kearns, supra*, addressed this issue in the context of the filing of a grievance against an attorney. The Court held that grievants are absolutely immune for the act of filing a complaint. It based its decision on the public policy need to protect the integrity of the court and the

corollary importance of shielding grievants from retaliatory litigation which would have a "chilling effect" on the public.

The same considerations prevail in the instant case. Integrity of elections is as fundamental to the purpose and function of a democracy as the integrity of the judicial system. To allow the Plaintiffs here to retaliate against the Defendants because of their filing complaints with the SEEC threatens the mechanism the Connecticut legislature has put in place to monitor the integrity of the election process. Elections, by their very nature are contentious and fraught with and complicated by a complete range of emotions and motivations. To subject SEEC complainants to lawsuits that seek to test the purity of their motivation is to allow for the intimidation of the electorate and the frustration of the SEEC in protecting the public.

### PLAINTIFF HINKSON FAILS TO ALLEGE THE ELEMENTS OF A CLAIM FOR MALICIOUS PROSECTION.

In the Fifth Count the Plaintiff, Jeanette Hinkson, alleges in Paragraph 9 that the "filing of the aforesaid complaint with the Commission constituted a malicious prosecution . . ."

The elements of an action for malicious prosecution are:

1. a prior charge in a criminal prosecution;

2. the charge was brought by a non-privileged person;

3. the charge was brought without probable cause;

4.  malice (implied from lack of probable cause);

5.  acquittal or discharge of the accused person.

WRIGHT, FITZGERALD & ACKLERMAN <u>Connecticut Law of Torts</u> Third Edition, §161 p. 430; Mulligan v. Rioux, 229 Conn. 716, 643 A2d 126 (1994).

Plaintiff's claim obviously fails on the first element. The SEEC complaint procedure is civil in nature. It is not a criminal prosecution. SEEC Regulations §s 9-7b-46, 9-7b-47, 9-7b-48, 9-7b-49, 9-7b-50 & 9-7b-51 describe the authority of the Commission to impose <u>civil</u> <u>penalties</u>. Therefore, there is no basis for Plaintiff to contend that the mere filing of the complaint and the resulting administrative procedure to adjudicate it rises to the level of a criminal prosecution.

**THIRD COUNT**

In this Count, the Plaintiff, Mastrianni, alleges that Defendant, Ciesielski, made libelous statements about him. The two statements appeared in *The Herald* a New Britain newspaper. The statements concerned a recent referendum involving construction of a new school on Linden Street in Plainville. Plaintiff opposed the project and distributed a leaflet voicing opposition. Defendant remarked that the information contained in the leaflet was incorrect and "*I think he put the information out intentionally.*" Plaintiff alleges that Defendant also stated, "*This was about a group of citizens that were going to say anything they could to prevent this school from being built.* "

As to this latter statement, Defendant did not say it at all. The newspaper attributes the quote to one Anthony Zaleski and Plaintiff acknowledges the error in his deposition. *[See attached Exhibit 2.]*

Plaintiff alleges that the statement, *"I think he put the information out intentionally"*, *[see attached Exhibit 3]* accuses him of being a liar and is thus defamatory. The "information" referred to is contained in the leaflet Plaintiff distributed before the referendum. The parties refer to it as the "Red Flyer". *[See attached Exhibit 6.]*

It is instructive to consider the deposition testimony of the Defendant about the contents of the flyer *[See attached Exhibit 4]* This exchange demonstrates that Plaintiff and Defendant had different opinions about certain issues that drove the referendum debate. Defendant objected to Plaintiff expressing his opinion as fact. As stated to the newspaper, it was Defendant's opinion that Plaintiff intentionally expressed as fact what was nothing more than his opinion. There has probably never been a political campaign in the history of the world that has not, at some point, involved the boundary between fact and opinion. The issue before the Court is whether this debate between Plaintiff and Defendant creates the grounds for an action in libel because Defendant opines in effect that the Plaintiff intentionally stated opinion in the form of fact.

## DEFENDANT'S STATEMENT NOT SUBJECT TO PROOF AS TRUE OR FALSE

Defendant says he thinks Plaintiff intentionally put out incorrect information. Can someone objectively verify this? Who is to judge Plaintiff's exact intent when he wrote and distributed the Red Flyer? If Defendant's opinion about Plaintiff's opinion (and vice versa) is not true or false in any meaningful way then it cannot be defamatory. *Restatement Second Torts Sec. 566; Milkovich v. Lorain Journal Co. 497 U. S. 1 (1990)*.

## DEFENDANT'S STATEMENT IS PURE OPINION

Defendant thinks Plaintiff put incorrect information out intentionally. That is his opinion, his theory on the Plaintiff's Red Flyer. *"If it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable."* *Livinsky v Wal-Mart Stores, Inc. 127 F 3d 122, 127 (1st Cir. 1997)*. Language expressing "a viewpoint only" is immune from liability. *Phantom Touring, Inc. v Affiliated Publications 953 F2d 724, 729 (1st Cir.) cert denied 504 U.S. 974 (1992)*. Because Defendant was expressing what he thought about Plaintiff's intent, there is no reasonable interpretation of his allegedly libelous statement as one based on "objectively verifiable facts".

## **DEFENDANT'S STATEMENT IS PRIVILEGED BECAUSE HE MADE IT IN THE CONTEXT OF A POLITICAL CAMPAIGN OR BECAUSE IT INVOLVES A MATTER OF PUBLIC CONCERN**

The Red Flyer and Defendant's response to it arose out of a referendum in November 2001 involving the Linden Street School project. The voters defeated the project but the issue remained a matter of public concern. In fact, the Plaintiff himself served on the steering committee for the school project after the November 2001 referendum at least until another referendum did pass in November 2003. *[See Plaintiff's deposition testimony attached as Exhibit 5.]* Generally, a conditional privilege attaches to speech made in the course of a political campaign or to speech that involves matters of general public interest or public concern. *Charles Parker Company v. Silver City Crystal Co.* 142 Conn. 605, 116 A.2d 440 (1955); *Philadelphia Newspapers, Inc. v. Hepp* 475 U.S. 767 (1986); *Gertz v. Robert Welch, Inc.* 418 U.S. 323, 346-47 (1974). Plaintiff must prove then that Defendant's statement is false, i.e. that he did *not* intentionally spread incorrect information. The Red Flyer however is not susceptible to such analysis. For example, the flyer states, *"Five of our council members decided to pass the buck to the taxpayers by putting it on the referendum. This way they wouldn't have to explain the large tax increases when the Library, Police Station, Sewer Plant and other School renovations kick-in. It's said they did this to insure a large vote turn-out so they could be reelected. Oh really?"* This is diatribe not fact. The innuendo of duplicity on the

part of these government officials is clear. Is this not protected speech? So how is Defendant's comment on or questioning of this not equally protected? Do we protect one side of the equation but not the other?

The flyer states, *"Making matters worse we now have 'All In The Family' government. Family members who are in control of Plainville's purse strings and its destiny. TAXPAYERS BEWARE."* Again, how are we to parse the fact from the fiction of this? It implies that something nefarious is going on. It tells the taxpayers to BEWARE. Yet consider the following exchange at Plaintiff's deposition with reference to the "Option B" proposal to the taxpayers made by the "All In The Family" members:

Q   "Did you mean to suggest by this that these individuals had something personally to gain by proposing and trying to sell Option B?"

A   "No, not at all."

Q   "So was it your opinion, or is it your opinion, that the reason they made this proposal of Option B was that they honestly agreed that it was the best option in terms of the Linden Street School?"

A   "I believed they believed that, yes."

Q   "Okay. When you wrote this statement about all-in-the-family government, did you believe that people reading this might believe that you were suggesting that these family members had something personally to gain by what they were proposing?"

A    "No." *[See attached Exhibit 7.]*

This from a man who has made a career of writing copy and who designed and wrote annual reports for Aetna for 28 years; this from a man who is a professional propagandist. *[See attached Exhibit 8.]*

Plaintiff wants to take all kinds of liberties with language to take advantage of his own right to comment on matters of public concern. But how dare the Defendant call into question his methods and motivation. The point is that this argument, this exchange of opinions is impervious to any effective analysis of what is true and false. Therefore, it cannot serve as the basis for any defamation claim.

RESPECTFULLY SUBMITTED,
THE DEFENDANT,
DANIEL CIESIELSKI,

BY _____
Paul M. Clyons, Esq.
Law Offices, Rodd J. Mantell
700 Stanley Drive
New Britain, CT 06053
Tel: (860) 827-4351 / Facsimile: 827-4386
Federal Bar No. CT06291

**CERTIFICATION**

I hereby certify that a copy of the above was mailed, postage prepaid, on September 9, 2004, to:

William T. Barrante, Esq.
P.O. Box 273-65 Elm Street
Watertown, CT 06795

Kenneth John Laska, Esq.
63 East Main Street
Plainville, CT 06062

Karen Karpie, Esq.
350 Fairfield Avenue, Suite 408
Bridgeport, CT 06604

Beatrice Jordan, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114

Charles E. Vermette, Jr.
Litchfield Cavo
40 Tower Lane, Suite 200
Avon, CT 06001

John Barbieri, Esq.
18 Cedar Street
New Britain, CT 06050

David Koskoff, Esq.
144 West Main Street
Plainville, CT 06062

_____
Paul M. Clyons, Esq.
Attorney for Daniel Ciesielski
Federal Bar No. CT06291