UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| John J. Cassidy, William Cunningham, John Mastrianni, Jeannette Hinkson,<br>  Plaintiffs,<br><br>vs.<br><br>Kathryn M. Lawson, Dean Rustic, David Underwood, Daniel Ciesielski, William Petit, Patrick Ringrose, Marliss Pavano, Ronald Pavano, Sr., Barbara Willard, and Gary Willard,<br>  Defendants | Case No.: No. 302cv1688(CFD)<br><br><br><br><br><br><br><br>September 20, 2004<br><br>Defendant Ronald Pavano<br>Objection to Plaintiff's Request for Extension of Time and to Objections to Motions for Summary Judgment Dated September 15, 2004 |

The defendant, Ronald Pavano objects to the Plaintiff's Motion entitled "Objection to Motions for Summary Judgment and Motion for Extension of Time" dated September 15, 2004. The reason for this Objection is as follows:

Aside from a few minor alterations regarding citations and facts the Defendant, Ronald Pavano's Motion for Summary Judgment and accompanying documents are basically similar to the Motion for Summary Judgment filed by the Defendants William Petit, Patrick Ringrose and Marliss Pavano. Thus, any arguments made by the Plaintiff's regarding the Motion for Summary Judgment filed by those three individuals would be same arguments that they would make regarding the Motion filed by the Defendant, Ronald Pavano. The only argument that

would differ would be that regarding the claims against the Defendants William Petit, Patrick Ringrose and Marliss Pavano, as public officials.

Furthermore, the Motion for Summary Judgment by Ronald Pavano was filed after the Motion for Summary Judgment filed by the Defendants, Petit, Ringrose and Pavano in order to save time and not duplicate the work that was done by Counsel for those three defendants.

In addition, all three of the Plaintiff's who have brought claims against the Defendant have acknowledged that they have no facts that would support their claim for abusive process or malicious prosecution. See the following portions of their depositions.

**Issues Report [Cassidy v Pavano]**

• AbuseOfProcess

    [47:13] - [48:16]    6/26/2004    John Cassidy

        • AbuseOfProcess

```
page 47
12      A.   Yes.
13      Q.   And can you tell me how the filing of the SEEC
14 complaint by the defendants, how that was an abuse of process?
15      A.   Because they used the system to make a gain; to
16 demean us and to take away and violate my rights; and that is
17 wrong and that's an abuse of process.
18      Q.   Well, how did they violate your rights?
19      A.   Because in my opinion it had nothing to do with
20 election laws.  It had all to do with the school project and
21 the election.
22      Q.   Well, did any of the ten defendants that you
23 identified appear at the hearing of your complaint before the
24 SEEC?
25      A.   At my hearing?
page 48
1       Q.   Yes, at your hearing?
2       A.   No, they weren't there.
3       Q.   Did any of the defendants offer any type of written
4 statement or testimony at the hearing against you?
5       A.   No, they did not.
6       Q.   Did any of the defendants that you identified offer
7 any evidence at your hearing against you?
8       A.   I thought I answered that, but they didn't.  No,
```

Segal & Laska LLC / Attorneys at Law / 63 East Main Street / Plainville, Connecticut 06062

```
 9  they did not.
10       Q.   And the SEEC did, in fact, find you in violation of
11  the election laws.  Is that correct?
12       A.   They said I shouldn't do it again.
13       Q.   But they acknowledged that there was something that
14  you did in error and advised you not to do it again?
15       A.   That's their opinion.  I could do it again if I
16  wanted to.
17            MR. BARRANTE:  Excuse me.  To interject, I have
```

[140:23] - [141:16]   6/26/2004   John Cassidy

• AbuseOfProcess

```
page 140
22       A.   To influence the election, no.
23       Q.   Do you think Mr. Pavano did anything to abuse the
24  process of filing the complaint with the SEEC?
25       A.   I think he was part of that.
page 141
 1       Q.   What did he do to abuse the process?
 2       A.   I think he was part of a conspiracy to file a
 3  complaint against us for ulterior motives, and it was the
 4  school, that was the primary thing, and their hatred of Helen
 5  and that I was caught in between it in that, and I got real
 6  bad vibes from that.
 7       Q.   They hate Helen?
 8       A.   Huh?
 9       Q.   They hate Helen?
10       A.   You better believe they hate Helen.
11       Q.   Mr. Pavano hates Helen Bergenty?
12       A.   Oh, yeah.
13       Q.   How do you know that?
14       A.   He hates her.
15       Q.   Do you know why Mr. Pavano hates her?
16       A.   I don't know for sure, Ken.
17       Q.   And when you say Mr. Pavano conspired with others,
```

[147:18] - [148:2]   6/26/2004   John Cassidy

• AbuseOfProcess
• Malicious

```
page 147
17  editor and I put it in the Hometown Connection.
18       Q.   Do you think Mr. Pavano in any way intimidated you
19  in the filing of this complaint?  Are you intimidated by
20  Ronnie Pavano?
21       A.   No.  I am definitely not intimidated by Ron Pavano,
22  believe me.  Geeze.
23       Q.   You think Ronnie Pavano is harassing you?
24       A.   Ronnie Pavano is known to do a lot of things.
25       Q.   But not harassing you.  Correct?
page 148
 1       A.   He might, but it would be -- no, I don't think he is
 2  harassing me.
 3            MR. LASKE:  I have nothing further.
```

[189:19] - [190:1]   6/29/2004   Jeannette Hinkson

Segal & Laska LLC / Attorneys at Law / 63 East Main Street / Plainville, Connecticut 06062

• AbuseOfProcess

```
page 189
18        A    That is right.
19        Q    What facts do you have within your own
20   knowledge that he's abusing the process by filing a
21   complaint with the SEEC?
22        A    Only they filed the charges and that letter
23   from the SEEC.
24        Q    And I take it -- your name is not in this
25   complaint?
page 190
 1        A    Not on this original complaint.
 2        Q    You have other facts other than the fact
```

[148:16] - [148:22]        6/30/2004    Henry R. Syskowski, Jr.

• AbuseOfProcess

```
page 148
15        A    Not one-on-one.
16        Q    Now, with regard to abusive process, do you
17   know of any facts that you believe led Mr. Pavano to
18   engage in abuse of process?
19        A    Other than the fact if he was generally
20   concerned about the election process being violated,
21   you know, the complaint should have been made the
22   first time.
23        Q    Do you know of any facts that would lead
```

[148:23] - [150:10]        6/30/2004    Henry R. Syskowski, Jr.

• AbuseOfProcess
• Malicious

```
page 148
22   first time.
23        Q    Do you know of any facts that would lead
24   you to believe that Mr. Pavano engaged in abuse of
25   process?  You understand what the word fact means?
page 149
 1        A    No.
 2        Q    You have been a police officer for how many
 3   years, sir?
 4        A    I am trying to relate it to this particular
 5   instance instead of criminal law.
 6        Q    How long were you a police officer?
 7        A    Eleven and a half, twelve years.
 8        Q    You never arrested somebody on bare
 9   suspicion?
10        A    No.
11        Q    You never arrested somebody on bare rumor?
12        A    No.
13        Q    You never arrested somebody on a
14   supposition, correct?
15        A    No.
16        Q    You look for facts, correct?
17        A    Right.
18        Q    So, you know what facts mean, correct?
19        A    Yes.
```

Segal & Laska LLC / Attorneys at Law / 63 East Main Street / Plainville, Connecticut 06062

```
                  20       Q    Now, based upon that, do you know of any
                  21  facts that would lead you to believe that Mr. Pavano
                  22  was engaged in abuse of process?  Yes or no, sir.
                  23       A    None as they apply to me personally, no.
                  24       Q    With regards to any claim that Mr. Pavano
                  25  acted willfully, do you know of any facts Mr. Pavano
                  page 150
                   1  acted willfully against you?
                   2       A    Not against me personally, no.
                   3       Q    Do you know of any facts that would lead
                   4  you to -- that you can state that Mr. Pavano acted
                   5  maliciously against you?
                   6       A    Again, other than the fact that you would
                   7  have to assume it would influence the outcome of the
                   8  election, no.
                   9       Q    You don't know of any facts, correct?
                  10       A    No.
                  11       Q    Now, you presently sell guns at your house
```

[155:14] - [157:18]    6/30/2004    Henry R. Syskowski, Jr.

• AbuseOfProcess

```
                  page 155
                  13       A    No.  I have never had one.
                  14       Q    Thank you.
                  15            You were a police officer for 11 years?
                  16       A    Eleven and a half, twelve years.  Somewhere
                  17  around there.
                  18       Q    You understand the concept of what probable
                  19  cause is?
                  20       A    Yes.
                  21       Q    Is that a yes?
                  22       A    Yes.
                  23       Q    The court reporter has to take it down.
                  24       A    Sorry.
                  25       Q    You testified in court before?
                  page 156
                   1       A    Yes, I have.
                   2       Q    As a police officer?
                   3       A    Yes.
                   4       Q    On numerous occasions?
                   5       A    Yes.
                   6       Q    And you have been involved in
                   7  investigations of numerous crimes?
                   8       A    Yes, I have.
                   9       Q    As a matter of fact, weren't you involved
                  10  in the investigation of the Donna Lee Bakery murder?
                  11       A    Yes.
                  12       Q    What was your role in that, sir?
                  13       A    I would assume I was lead investigator.  I
                  14  was called in to investigate it.
                  15       Q    In terms of making arrests, you understand
                  16  that you need probable cause, correct?
                  17       A    Yes.
                  18       Q    Without probable cause you can't make an
                  19  arrest, correct?
                  20       A    Yes.
                  21       Q    And you have had the various -- I would
```

Segal & Laska LLC / Attorneys at Law / 63 East Main Street / Plainville, Connecticut 06062

```
                        22   assume in the course of your 11 and a half years as a
                        23   police officer after you have made an arrest, the
                        24   prosecutor or the court has thrown out the case either
                        25   by way of motion to dismissal or nolle, correct?
                       page 157
                         1        A    Yes, on occasion.
                         2        Q    That happens?
                         3        A    Yes.
                         4        Q    And it is nothing that -- you may be
                         5   disappointed, but that is not your job.  That is the
                         6   job of the prosecutor.  That is the job of the court,
                         7   correct?
                         8        A    That is correct.
                         9        Q    But you made that arrest on probable cause,
                        10   correct?
                        11        A    Either probable cause or warrant.
                        12        Q    So, when this application that was
                        13   submitted to the SEEC by the defendants, the SEEC made
                        14   a determination as to what to do with it, correct?
                        15        A    Yes.
                        16        Q    And you acknowledged that you had omitted
                        17   your address from the ad, correct?
                        18        A    Yes.
                        19                  MR. LASKA:  I have no further
```

[75:19] - [76:2]        6/30/2004    William Cunningham

- AbuseOfProcess
- Malicious

```
                       page 75
                        18        A    Not at this time.
                        19        Q    You have any facts Mr. Pavano used this
                        20   process to maliciously file this SEEC complaint
                        21   against you?
                        22        A    No.
                        23        Q    Again, would you withdraw that portion of
                        24   the complaint where you are alleging Mr. Pavano abused
                        25   the process?
                       page 76
                         1                  MR. BARRANTE:  Objection.
                         2        A    Not at this time.
                         3        Q    Do you have any evidence that Mr. Pavano
```

- **Malicious**

[77:15] - [77:20]        6/26/2004    John Cassidy

- Malicious

```
                       page 77
                        14        A.   Yes.
                        15        Q.   Do you have any knowledge of any malice that he had
                        16   towards you?
                        17        A.   No.
                        18        Q.   In fact, do you believe he had any malice or any ill
                        19   feelings towards you when he signed the complaint?
                        20        A.   I don't think he did.
                        21        Q.   Did you ever speak with any of the defendants about
```

Segal & Laska LLC / Attorneys at Law / 63 East Main Street / Plainville, Connecticut 06062

| | | |
|---|---|---|
| [77:21] - [78:2] | 6/26/2004 | John Cassidy |

• Malicious

```
page 77
20      A.   I don't think he did.
21      Q.   Did you ever speak with any of the defendants about
22   the complaint to the State Elections Commission?  The
23   defendants are the people that you have sued.
24      A.   Right.
25      Q.   Have you ever discussed anything with them about the
page 78
 1   complaint?
 2      A.   No.
 3      Q.   Now, you mentioned that you had had some prior
```

| | | |
|---|---|---|
| [95:24] - [96:8] | 6/26/2004 | John Cassidy |

• Malicious

```
page 95
23      A.   No.  She is a good friend of my niece.
24      Q.   Do you have any knowledge about whether Kathryn
25   Lawson had any malice or ill will towards you when she signed
page 96
 1   the complaint?
 2      A.   No.
 3      Q.   Did you believe she did?
 4      A.   I don't even think she knows who I am.
 5      Q.   So, the answer is no?
 6      A.   No.
 7      Q.   You don't think she did?
 8      A.   Yeah, no.
 9      Q.   Have you ever held any positions with the Hometown
```

| | | |
|---|---|---|
| [133:12] - [133:14] | 6/26/2004 | John Cassidy |

• Malicious

```
page 133
11      A.   I remember, yeah.
12      Q.   Okay.  Did Mr. Pavano do anything maliciously
13   towards you?
14      A.   I have no idea.
15      Q.   Did he do anything intentionally towards you?
```

| | | |
|---|---|---|
| [133:15] - [133:16] | 6/26/2004 | John Cassidy |

• Malicious

```
page 133
14      A.   I have no idea.
15      Q.   Did he do anything intentionally towards you?
16      A.   Towards me?  I don't think -- I don't think so.
17      Q.   Okay.  Now, you say that you learned of the filing
```

| | | |
|---|---|---|
| [147:18] - [148:2] | 6/26/2004 | John Cassidy |

• AbuseOfProcess
• Malicious

Segal & Laska LLC / Attorneys at Law / 63 East Main Street / Plainville, Connecticut 06062

```
                        page 147
                        17  editor and I put it in the Hometown Connection.
                        18      Q.   Do you think Mr. Pavano in any way intimidated you
                        19  in the filing of this complaint?  Are you intimidated by
                        20  Ronnie Pavano?
                        21      A.   No.  I am definitely not intimidated by Ron Pavano,
                        22  believe me.  Geeze.
                        23      Q.   You think Ronnie Pavano is harassing you?
                        24      A.   Ronnie Pavano is known to do a lot of things.
                        25      Q.   But not harassing you.  Correct?
                        page 148
                        1       A.   He might, but it would be -- no, I don't think he is
                        2   harassing me.
                        3            MR. LASKE:  I have nothing further.

[149:4] - [149:7]       6/26/2004    John Cassidy

                        • Malicious

                        page 149
                        3   They are after Helen and they caught me in the middle.
                        4       Q.   Do you feel there was any malice directed towards
                        5   you personally?
                        6       A.   Not directly.  I don't think it was directed towards
                        7   me.
                        8       Q.   And do you think his signing of this complaint was

[159:12] - [160:18]     6/26/2004    John Cassidy

                        • Malicious

                        page 159
                        11      A.   Billy is all right.
                        12      Q.   Do you think that Bill Petit had any malice towards
                        13  you?
                        14      A.   No.  I think his malice is directed towards Helen.
                        15      Q.   Do you believe that Patrick Ringrose had any malice
                        16  directed towards you?
                        17      A.   Towards me personally?  No, I don't think he does.
                        18  I wouldn't know.  I don't think so.  I think he hates
                        19  everybody.
                        20      Q.   But as you sit here today, you don't think that he
                        21  has any malice directed towards you personally?
                        22      A.   Only when it comes to the school because I was
                        23  against the school.
                        24      Q.   How about Marliss Pavano, do you know Marliss?
                        25      A.   I know her father, yeah.
                        page 160
                        1       Q.   Do you like Marliss Pavano?
                        2       A.   Marliss kissed me one time.  I like her.
                        3       Q.   Do you believe that Marliss Pavano had any malice
                        4   directed towards you personally in filing the complaint?
                        5       A.   Personally?  No.  Only when it comes to the school.
                        6   They are all upset about the school.
                        7       Q.   Well, I am asking about you do you think she --
                        8       A.   No, I don't think so.
                        9       Q.   So, if I understand your testimony correctly, then,
                        10  you do not believe that Patrick Ringrose, William Petit or
                        11  Marliss Pavano had any malice towards you personally in filing
                        12  the complaint.  You think that it may have been related to the
```

Segal & Laska LLC / Attorneys at Law / 63 East Main Street / Plainville, Connecticut 06062

```
                            13  school issue?
                            14      A.   Centered around -- for those individuals.
                            15      Q.   Did you mean now Patrick Ringrose?
                            16      A.   Yeah.
                            17      Q.   William Petit?
                            18      A.   No.
                            19      Q.   And Marliss Pavano?
```

[190:6] - [190:19]          6/29/2004    Jeannette Hinkson

- Malicious

```
page 190
  5  office.
  6       Q   What facts do you have that would indicate
  7  that Mr. Pavano acted either willfully or maliciously
  8  in these incidents?
  9       A   Like I say, only from the things that were
 10  said around town and what Mr. Mercer told me.
 11       Q   I am not asking what Mr. Mercer said.  I am
 12  not asking what you heard from gossip.  I am asking
 13  what you have of your own personal knowledge.
 14       A   Mr. Pavano would know me and has known me
 15  since the early '70s and knows better than to come up
 16  and do something like that and start calling me names.
 17       Q   So, you're saying he wouldn't call you
 18  names?
 19       A   Not to my face.
 20       Q   Now, you have had an ongoing dispute with
```

[148:23] - [150:10]         6/30/2004    Henry R. Syskowski, Jr.

- AbuseOfProcess
- Malicious

```
page 148
 22  first time.
 23       Q   Do you know of any facts that would lead
 24  you to believe that Mr. Pavano engaged in abuse of
 25  process?  You understand what the word fact means?
page 149
  1       A   No.
  2       Q   You have been a police officer for how many
  3  years, sir?
  4       A   I am trying to relate it to this particular
  5  instance instead of criminal law.
  6       Q   How long were you a police officer?
  7       A   Eleven and a half, twelve years.
  8       Q   You never arrested somebody on bare
  9  suspicion?
 10       A   No.
 11       Q   You never arrested somebody on bare rumor?
 12       A   No.
 13       Q   You never arrested somebody on a
 14  supposition, correct?
 15       A   No.
 16       Q   You look for facts, correct?
 17       A   Right.
 18       Q   So, you know what facts mean, correct?
```

Segal & Laska LLC / Attorneys at Law / 63 East Main Street / Plainville, Connecticut 06062

|  |  |
|---|---|
|  | ```
19      A    Yes.
20      Q    Now, based upon that, do you know of any
21 facts that would lead you to believe that Mr. Pavano
22 was engaged in abuse of process?  Yes or no, sir.
23      A    None as they apply to me personally, no.
24      Q    With regards to any claim that Mr. Pavano
25 acted willfully, do you know of any facts Mr. Pavano
page 150
 1 acted willfully against you?
 2      A    Not against me personally, no.
 3      Q    Do you know of any facts that would lead
 4 you to -- that you can state that Mr. Pavano acted
 5 maliciously against you?
 6      A    Again, other than the fact that you would
 7 have to assume it would influence the outcome of the
 8 election, no.
 9      Q    You don't know of any facts, correct?
10      A    No.
11      Q    Now, you presently sell guns at your house
``` |
| [75:6] - [75:13] | 6/30/2004    William Cunningham |
|  | • Malicious |
|  | ```
page 75
 5      A    No.
 6      Q    Now, do you have any evidence or facts that
 7 Mr. Ronald Pavano has maliciously filed this SEEC
 8 complaint against you?
 9      A    No.
10      Q    Would you be willing to withdraw that
11 portion of your complaint brought against Mr. Pavano?
12           MR. BARRANTE:  Objection.
13      A    No.
14      Q    Pardon me?
``` |
| [75:19] - [76:2] | 6/30/2004    William Cunningham |
|  | • AbuseOfProcess<br>• Malicious |
|  | ```
page 75
18      A    Not at this time.
19      Q    You have any facts Mr. Pavano used this
20 process to maliciously file this SEEC complaint
21 against you?
22      A    No.
23      Q    Again, would you withdraw that portion of
24 the complaint where you are alleging Mr. Pavano abused
25 the process?
page 76
 1           MR. BARRANTE:  Objection.
 2      A    Not at this time.
 3      Q    Do you have any evidence that Mr. Pavano
``` |

Furthermore, the Defendant, Cunningham has acknowledged and admitted that he has no basis for bringing this action against the Defendant, Ronald Pavano as well as the

-10-

Defendant, Kathryn Lawson and yet he still continues to do so.  See copies of the portions of

the transcript of the Deposition of William Cunningham.

**Issues Report [Cassidy v Pavano]**

• **Refusal to Withdraw**

[70:8] - [70:25]         6/30/2004     William Cunningham

• Refusal to Withdraw

```
page 70
  7        A    Yes.
  8        Q    Do you have any facts which lead you to
  9   believe Kate Lawson made any malice or ill will
 10   towards you?
 11        A    No.
 12        Q    Yet you have made that allegation against
 13   her in the complaint?
 14        A    Yes.
 15        Q    Without support?
 16        A    Yes.
 17        Q    Are you willing to withdraw that allegation
 18   against her seeing you have no support?
 19             MR. BARRANTE:  Objection.
 20   BY MR. VERMETTE:
 21        Q    You can answer.
 22        A    Not at this time.
 23        Q    Why not?
 24        A    Because I don't believe it would be prudent
 25   for me to withdraw that at this time.
page 71
  1        Q    You feel it would be more prudent to
```

[75:6] - [77:10]         6/30/2004     William Cunningham

• Refusal to Withdraw

```
page 75
  5        A    No.
  6        Q    Now, do you have any evidence or facts that
  7   Mr. Ronald Pavano has maliciously filed this SEEC
  8   complaint against you?
  9        A    No.
 10        Q    Would you be willing to withdraw that
 11   portion of your complaint brought against Mr. Pavano?
 12             MR. BARRANTE:  Objection.
 13        A    No.
 14        Q    Pardon me?
 15             MR. BARRANTE:  Objection.  That is
 16             not his decision.
 17        Q    I am asking you a question.
 18        A    Not at this time.
 19        Q    You have any facts Mr. Pavano used this
 20   process to maliciously file this SEEC complaint
 21   against you?
```

Segal & Laska LLC / Attorneys at Law / 63 East Main Street / Plainville, Connecticut 06062

```
22        A    No.
23        Q    Again, would you withdraw that portion of
24   the complaint where you are alleging Mr. Pavano abused
25   the process?
page 76
 1                  MR. BARRANTE:  Objection.
 2        A    Not at this time.
 3        Q    Do you have any evidence that Mr. Pavano
 4   filed this complaint with the SEEC for political
 5   payback?
 6        A    No.
 7        Q    Again, would you withdraw that portion of
 8   your complaint where you alleged he brought this
 9   complaint for political payback?
10                  MR. BARRANTE:  Objection.
11        A    Not at this time.
12        Q    Do you have any evidence that Mr. Pavano
13   through his action in filing this complaint with the
14   SEEC attempted to penalize the Hometown Connection?
15        A    No.
16        Q    Again, would you withdraw that portion of
17   the complaint that alleges that?
18                  MR. BARRANTE: Objection.
19        A    Not at this time.
20        Q    Do you have any evidence that Mr. Pavano,
21   by the filing of this SEEC complaint, attempted to
22   influence the election of 2001?
23        A    No.
24        Q    Would you withdraw that portion of your
25   complaint where he alleged that?
page 77
 1                  MR. BARRANTE:  Objection.
 2        A    Not at this time.
 3        Q    Do you have any evidence that Mr. Pavano by
 4   the filing of this SEEC complaint attempted to
 5   influence the referendum in November 2001?
 6        A    No.
 7        Q    Again, would you withdraw that portion of
 8   your complaint?
 9                  MR. BARRANTE:  Objection.
10        A    Not at this time.
11        Q    You mentioned that you filed a grievance
```

-12-

It is quite apparent from those portions of the transcript cited above that any delay or extension granted to the Plaintiff's will only prolong a specious lawsuit that has no place or business in any Court.  It is therefore respectfully requested that the Court deny the Plaintiff's Motion.

                                    DEFENDANT
                                    RONALD PAVANO

                             By_____
                                  Kenneth John Laska
                                  Segal & Laska, LLC
                                  Drawer A
                                  63 east Main Street
                                  Plainville, Connecticut 06062
                                  Office     (860) 747-2792
                                  Fax       (860) 747-8609
                                  E-Mail    kenneth.laska@snet.net
                                  Federal Bar Number ct00042

## **CERTIFICATION**

      I hereby certify that a copy of the foregoing Motion was mailed postage prepaid to all parties listed below on the above date.

| | |
|---|---|
| Ms. Beatrice S. Jordan<br>Attorney At Law<br>Howd & Ludorf<br>65 Wethersfield Avenue<br>Hartford, Connecticut 06114 | Karen L. Karpie<br>Attorney at Law<br>Murphy & Karpie<br>350 Fairfield Avenue<br>Bridgeport, Connecticut 06604 |
| Paul M. Clyons, Esq.<br>Law Office of Heidi Zultowsky<br>70 Stanley Drive<br>New Britain, Connecticut 06050 | Charles E. Vermette, Jr.<br>Litchfield Cavo, Attorneys at Law<br>40 Tower Lane, Suite 200<br>Avon, Connecticut 06001 |
| John A. Barbieri, Esq.<br>P.O. Box 1445<br>New Britain, Connecticut 06050 | William T. Barrante, Esq.<br>Attorney At Law<br>P.O. Box 273<br>Watertown, Connecticut 06795 |

Ms. Jane Rosenberg
Assistant Attorney General
State of Connecticut
55 Elm Street
P.O. Box 120
Hartford, Connecticut 06106-0120

    By _____
        Kenneth John Laska
        Segal & Laska, LLC
        Drawer A
        63 East Main Street
        Plainville, Connecticut 06062
        Office     (860) 747-2792
        Fax       (860) 747-8609
        E-Mail    kenneth.laska@snet.net
        Federal Bar Number ct00042