FILED

2004 SEP 23 P 5: 37

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT    U.S. DISTRICT COURT
                           HARTFORD, CT.

JOHN J. CASSIDY, WILLIAM
CUNNINGHAM, JEANNETTE HINKSON,
JOHN MASTRIANNI, and HENRY R.
SYSKOWSKI, JR.,
                    Plaintiffs
                                              NO. 3:02CV1688(CFD)
v.

KATHRYN M. LAWSON, DEAN A.
RUSTIC, DAVID UNDERWOOD,
DANIEL CIESIELSKI, WILLIAM PETIT,
PATRICK RINGROSE, MARLISS
PAVANO, RONALD PAVANO, SR.,
BARBARA WILLARD, and
GARY WILLARD,
                    Defendants              SEPTEMBER 22, 2004

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
OF DEFENDANTS PETIT, RINGROSE AND M. PAVANO**

The defendants William Petit, Patrick Ringrose and Marliss Pavano have filed a Motion for Summary Judgment, dated September 1, 2004, claiming that plaintiffs' claims of abuse of process and violations of 42 U.S.C. Section 1983 and plaintiff Hinkson's claim for malicious prosecution fail as a matter of law and that they are protected by absolute immunity with respect to the abuse of process claims and by qualified immunity with respect to the civil rights claims.

The defendants are wrong for the following reasons:

(1) The SEEC complaint process is a "legal process" and if used by the people

**ORAL ARGUMENT REQUESTED**

who procure it for a purpose for which it was not intended, the injured parties may sue for abuse of process.

(2) If the defendants used the state election statutes as a pretext for bringing an SEEC claim against a newspaper that published political advertisements which they disliked for reasons other than any alleged violation of the election laws, and the plaintiffs were encompassed in that complaint, then defendants may not claim any immunity for their wrongdoing.

(3) Plaintiffs' signing of the SEEC Complaint as members of the Town Council or Board of Education was the equivalent of putting on a badge of office while violating plaintiffs' civil rights—a private citizen who breaks into someone's house commits a common-law trespass; a police officer who does it without a warrant or without probable cause commits a civil rights violation.

(4) The SEEC administrative process is an administrative prosecution. It is functionally the same as a criminal prosecution, and would thus give rise to a claim of malicious prosecution because the SEEC found no basis for the claim against Mrs. Hinkson. Defendants' plea that they did not intend to make a claim against Mrs. Hinkson is unavailing because the claim was against the newspaper of which Mrs. Hinkson was a principal.

## I.   BACKGROUND

The plaintiffs John J. Cassidy, William E. Cunningham and Henry R. Syskowski, Jr. were petitioning candidates for the Plainville Town Council in the November 2001 municipal election. (See Second Amended Complaint, First Count, par. 14; Seventh Count, par. 14.) Because each of them intended to spend less than $500.00 in their respective campaigns, each filed a certificate to that effect with the State Elections Enforcement Commission (SEEC). (See, e.g., Certificate of Exemption from Forming a Candidate Committee, by William E. Cunningham, September 4, 2001, attached as **Exhibit 12**.) This certificate contained their respective addresses. Each of these plaintiffs placed a political advertisement on page 19 of the November 2001 edition of the Hometown Connection, a monthly newspaper. (Second Amended Complaint, First Count, at 16; Seventh Count, at 16.) Each ad contained the notation "Paid for by" with the respective candidate's name, but did not set forth any address. (Id., 17.)

Also on the ballot in the November 2001 election was a referendum question regarding a new Linden Street School, which each of these plaintiffs opposed. (Second Amended Complaint, First Count, par. 15; Deposition Transcript of Henry R. Syskowsky, Jr., June 30, 2004, attached as **Exhibit 13**, at 51-53.) All the defendants supported a "Yes" vote in that referendum. (Second Amended Complaint, First Count, par. 18; Seventh Count, par. 18.)

3

The November 2001 edition of the Hometown Connection also contained a political advertisement advocating the election of Councilwoman Helen Bergenty, who was president of the newspaper, along with plaintiffs Cassidy and Cunningham. (See SEEC Complaint, **Exhibit 1**, page 5 ad.), an advertisement advocating a "No" vote in the school referendum (Id., page 17 ad), and an ad criticizing defendant William Petit and his daughter, who was running for Town Council (Petit deposition, **Exhibit 3**, at 16-17, 23-24.) The defendants were upset with the content of those advertisements. (Lawson deposition, **Exhibit 2**, at 30-32, 36, 41, 49; Petit deposition, **Exhibit 3**, at 16-17, 23-24.)

On and before November 1, 2001, the defendants, including Mr. Petit, Mr. Ringrose and Mrs. Pavano, met twice at the home of defendant Barbara Willard to discuss the ads, including the petitioning candidates' ads, and what to do about them. (See Patrick Ringrose's Response to Interrogatories, March 17, 2004, attached as **Exhibit 14**, Nos. 1, 2, and 3.) Defendant Kathryn Lawson, who found one of the political ads to be "vicious," had checked with the SEEC to see if the SEEC could take any action. (Lawson deposition, **Exhibit 2**, at 11-18; 30-31.) The defendants collectively decided to charge the Hometown Connection and the petitioning candidates with violations of state election laws. (Lawson deposition, at 54.) Defendant Dean Rustic typed up the Complaint. (Lawson deposition, at 51.) All the defendants signed it on November 1, 2001 and it was filed with the SEEC on November 2, 2004 (See **Exhibit 1**), four days before the election. The filing of the SEEC Complaint was covered in The Hartford

4

Courant and The Herald of New Britain. (See Underwood deposition, **Exhibit 11**, at 34.)

The plaintiff Jeannette Hinkson, who was publisher of the Hometown Connection, placed a "get out and vote" notice on page 5 of the same November 2001 edition of the newspaper. (See SEEC Findings and Conclusions re Jeannette Hinkson, **Exhibit 9**.) The SEEC cited both plaintiff Hinkson and Helen Bergenty, president of the newspaper, as well as the newspaper's corporate owner, as respondents. (See SEEC letter to Jeannette Hinkson, November 13, 2001, **Exhibit 6**; SEEC Finding re Helen Bergenty, **Exhibit 8**.) The SEEC completely absolved plaintiff Hinkson, Mrs. Bergenty, and the Hometown Connection of any wrongdoing. (See **Exhibit 8**; **Exhibit 9**.)

Plaintiff Cassidy was required to spend time and plaintiff Cunningham was required to spend time and money to defend themselves before the SEEC. (Second Amended Complaint, First Count, par. 25.) Plaintiff Syskowski was induced by the SEEC to sign a statement admitting that he violated C.G.S. Section 9-333w. (Second Amended Complaint, Seventh Count, par. 23.)

## II.   STANDARD OF REVIEW ON SUMMARY JUDGMENT

Plaintiffs will not here repeat what is set forth in Part II of defendants' Memoandum of Law (pp. 6 ff) except to emphasize that the burden of proof in their motion for summary judgment is on the defendants and the court should resolve all disputed facts, for which plaintiffs have presented countervailing evidence, in plaintiffs' favor.

### III. LAW AND ARGUMENT

#### A. Plaintiffs Have Stated a Claim for Abuse of Process.

With respect to all of plaintiffs' claims, it is important for the Court to understand that the defendants' filing of the SEEC Complaint on November 2, 2001 was part of a campaign by defendants against the Hometown Connection newspaper and its president, Helen Bergenty, prompted by the newspaper's publication of certain advertisements opposed to the Linden Street School referendum and other advertisements giving support to the petitioning candidates in the November 2001 election. In footnote 2, on page 9 of their Memorandum (hereafter "Def. Mem."), defendants say that plaintiffs lack standing to raise any claims by the newspaper. Plaintiffs can, however, establish that they were injured in the exercise of their freedom of the press rights by defendants' action against the newspaper. Also, if the defendants' were attempting to penalize the newspaper for exercising its right to publish political advertisements, and the petitioning candidates, who were targets but not major targets of defendants' action, were also injured, the petitioning candidates (Cassidy, Cunningham and Syskowski), as well as Mrs. Hinkson, publisher of the newspaper, may successfully charge defendants with violation of their own rights. To use an historical example, in 1932 or 1933 there was an assassination attempt against Franklin D. Roosevelt in Miami, Florida. Chicago Mayor Anton Cermak was with FDR on the podium. The assassin missed Roosevelt but killed Cermak. The assassin could not very well claim that he shouldn't be found liable for killing Cermak

6

because he was aiming at Roosevelt. The defendants may not have intended to deprive Cassidy, Cunningham and Syskowski of their First Amendment rights, but they certainly intended **to take action against the newspaper for the content of what it published.** See Lawson deposition, **Exhibit 2**, at 30-32, 36, 41, 49; Witness Statement of Daniel Ciesielski, SEEC Complaint, **Exhibit 1**; Petit deposition, **Exhibit 3**, at 16-17, 23-24.

The Court should understand that it is not necessary for it to find that each defendant had a claim against each plaintiff. There is a collective responsibility here. Northrop v. Town of Clinton, 14 Conn. Sup. 28 (Super.Ct. 1946); Ashmead v. Colby, 26 Conn. 287 (1857); State v. Coltherst, 253 Conn. 478, 820 A.2d 1024 (2003).

The plaintiffs have filed a legally cognizable cause of action for abuse of process because:

(1)   Plaintiffs' case is not based **on the mere filing** of the SEEC Complaint. Despite what defendants assert (Def. Mem., at 12-13), plaintiffs can establish that defendants used the SEEC complaint process in a manner for which it was not intended— as a political weapon and to penalize a newspaper and people associated with it **for publishing articles they did not like**. It wasn't the alleged violation of election laws that prompted two meetings at Barbara Willard's house. Defendant Petit himself said, at his deposition, that if the lack of addresses in the petitioning candidates' ads were the only problem, he wouldn't have signed the Complaint. Petit Dep., **Exhibit 3**, at 44. Mr. Petit also had serious political differences with Helen Bergenty, which would be a good

reason to ask the SEEC to penalize the newspaper, an attitude that was shared by defendants Marliss Pavano and David Underwood. See Hinkson Dep., **Exhibit 5**, at 35-36; Cassidy Dep., **Exhibit 15**, at 159-160.

(2) The fact that all the defendants were in favor of passage of the Linden Street School referendum and all the plaintiffs were opposed to its passage is too much of a coincidence to be ignored. The trier of fact would be able to infer that it was more than citizen concern for compliance with election laws that brought all these people to Barbara Willard's house. Defendants' counsel conveniently cites those portions of defendants' depositions in which they say that the reason they filed the Complaint was to have the SEEC investigate what they believed were election law violations. But in other parts of those depositions, which plaintiffs have attached to this memorandum, defendants give the real purpose of the filing of the Complaint—the newspaper published ads they did not like and appeared to be supporting the petitioning candidates against the major party candidates. See Lawson Dep., **Exhibit 2**[1]; Petit Dep., **Exhibit 3**; Pavano Dep., **Exhibit 4**; Ringrose Dep., **Exhibit 10**, particularly pp. 20-21, 23, 24-26.

Plaintiffs are alleging not simply an improper motive, but an improper purpose, a perversion of the SEEC complaint process for purely political ends. Defendants have presented no evidence nor any case law that supports such a use of the SEEC. On page

8

---

[1] Although Kathryn Lawson is not one of the moving parties, she had the best memory of what happened at the Willard home on November 1, 2001 and thus can shed some good light on what the defendants were about. Also, even the defendants who were not concerned with a particular concern of a fellow defendant is liable for joining in an effort to abridge the newspaper's freedom to publish.

15 of their Memorandum, defendants assert that plaintiffs cannot prove that defendants misused the SEEC process "once it had begun." But after it had begun, the story appeared in The Hartford Courant and The Herald, two newspapers circulated in Plainville. See Underwood Dep., **Exhibit 11**, at 34. Did the defendants "overtly" misuse the process? As defendants were political people (three town officials, two town chairmen), the trier of fact may infer that they knew there would be publicity adverse to the newspaper and the petitioning candidates just before the election.

The arguments presented by defendants with respect to abuse of process are the same ones made in their Motion to Dismiss, which was denied (No. 52).

### B. Defendants Are Not Protected by Absolute Immunity.

Defendants assert that they should be afforded absolute immunity because otherwise ordinary citizens might be fearful of making complaints to the SEEC because they might be sued. However, absolute immunity should not protect political people when they use the SEEC process for political reasons. In Field v. Kearns, 43 Conn. App. 265, 271, 682 A.2d 148 (1996), the court said that parties and witnesses in judicial or quasi-judicial proceedings "are entitled to absolute immunity **for the content of statements made therein** . . . ." (Emphasis added.) Plaintiffs are not complaining about the "content" of what defendants said to the SEEC. In fact, defendants complained to the SEEC about alleged violations of the law, but were really concerned about the "content" of what the Hometown Connection printed. The Constitution provides a form of

9

immunity to publishers, the First Amendment, applied to the States through the Fourteenth Amendment.

The court in Field also spoke about protecting unsuccessful bar grievants from being sued by the attorney they grieved, and that allowing such suits would have a "chilling effect on the public." 43 Conn. App. at 275. However, defendants overlook what the court was really driving at—the need to protect a bar grievant from the attorney, who is a more powerful member of the community. In the present case, the defendants are the more powerful group—three town officials, a Democratic town chairman, a Republican town chairman, people involved in getting the new Linden Street School built. The plaintiffs are three people who ran as petitioning candidates and the publisher of a small monthly newspaper.

Furthermore, defendants here did not address a matter that the Court specifically asked them to address in its ruling (No. 52) denying their motion to dismiss—"whether common law absolute immunity applies to federal constitutional claims." Their argument is essentially the same as that made in their motion to dismiss, supplemented by self-serving affidavits and self-serving excerpts from their depositions.

**C. Defendants Petit, Ringrose and Marliss Pavano Were Acting in an Official Capacity When They Signed the SEEC Complaint as Town Officials.**

Defendant William Petit signed the SEEC Complaint (See Exhibit 1) as "Republican Town Councilor." Defendant Patrick Ringrose signed the Complaint as "Democratic Board of Education." Defendant Marliss Pavano signed it as "Republican

Board of Education." Now, after being called to task, they claim they signed the Complaint only as "citizens." The word "citizen" appears nowhere on the signature page of the SEEC Complaint. Neither does the business or occupation of any of these people appear under their respective names. Defendants appear to believe that they could be held liable as town officials only if the Town authorized the filing of the SEEC Complaint. They are wrong. First, plaintiffs are not suing the Town of Plainville. Second, a town officer can be liable for wrongdoing even if he or she is acting outside the established bounds of his or her office. In fact, that is usually the case. A police officer who violates the law by beating up a suspect is usually acting outside his authority. Are defendants saying that the suspect does not have a Section 1983 claim against that officer? The case reports are filled with Section 1983 claims against police officers who stepped over the line. The cases may fail against the town, but they are upheld against the officer if the plaintiff proves a violation of constitutional rights.

### 1. Defendants Acted Under Color of State Law.

When defendants placed their official titles under their signatures, that was the equivalent of pinning a police or sheriff's badge on plain clothes when they joined with civilians to violate plaintiffs' civil rights. Also, these defendants were using the prestige of their respective offices to add gravitas to the SEEC Complaint.

### 2. Plaintiffs Have Established That Defendants Violated Their Constitutional Rights.

Defendants appear to believe that the only way plaintiffs' right to freedom of

11

speech or press could be violated is if plaintiffs were prevented or deterred from **future** exercise of those rights. If a police officer unlawfully beats up a protester, does the protester lose his civil rights action if he continues to protest? Of course not. A First Amendment claim may be made even if the only violation is a past action. As the Supreme Court said in Laird v. Tatum, 408 U.S. 1, 13, 33 L.Ed.2d 154, 163 (1972), there is an "established principle that to entitle a private individual to invoke the judicial power to determine the validity of [government] action, he must show that he **has sustained** or is immediately in danger of sustaining **a direct injury as a result of that action** . . . ."

Plaintiffs placed political ads in a newspaper. They each had a notation "Paid for by" as required by Section 9-333w(a) of the Connecticut General Statutes. Defendants charged them with failing to include their addresses, even though the statute does not specifically require them to include any address. The only person Section 9-333w requires to have an address in a political ad is an "individual" who purchases an ad in conjunction with a candidate. The statute does not require any "candidate" to place an address in his ad. Although the **constitutionality** of Section 9-333w(a) has been upheld by the Connecticut Supreme Court, Seymour v. Elections Enforcement Comm., 255 Conn. 78, 762 A.2d 880 (2000), cert. denied, 533 U.S. 931 (2001), no Connecticut appellate court has yet construed the meaning of "such an individual" or "such individual" as used in the statute.[2] This court is therefore not foreclosed from addressing

12

---

[2] Plaintiffs hereby incorporate by reference their discussion of Section 9-333w(a) in their Memorandum of Law in Response to Jeffrey B. Garfield's Objection to Being Joined as Defendant, dated August 26, 2004.

that issue in this case. If the plaintiffs' interpretation of Section 9-333w(a) is correct, then their right to freedom of speech was infringed when they were charged with violation of Section 9-333w.

But plaintiffs do not even have to go that far. There is no question that the First Amendment rights of Helen Bergenty, Jeannette Hinkson, and the Hometown Connection were violated, because the SEEC absolved them. After a hearing, it found for Mrs. Bergenty and the newspaper. The SEEC found no probable cause for any claim against plaintiff Hinkson. See **Exhibit 8**; **Exhibit 9**. If defendants were aiming at Mrs. Bergenty and the newspaper, missed, but hit the petitioning candidates, then defendants could be held liable for injuring the petitioning candidates. True, the SEEC found them in violation. **But abuse of process does not depend on the plaintiff's having prevailed in the underlying action.** Schaefer v. O.K. Tool Co., 110 Conn. 528 (1930). If the defendants were improperly using the SEEC process to get Mrs. Bergenty and the newspaper because of the content of what was published, then plaintiffs Cassidy, Cunningham and Syskowsky, who were also victims of that process, have a valid civil rights claim.

Also, plaintiffs may be able to establish that defendants' conduct had some chilling effect on their future exercise of First Amendment rights. Plaintiff Cassidy, who ran again as a petitioning candidate in 2003, did not have any newspaper ads. See Cassidy Dep., **Exhibit 15**, at 165-166. See also Hinkson Dep., **Exhibit 5**, at 93-94, 135-

13

136; Cunningham Dep., **Exhibit 16**, at 93-94.

### D. Defendants Are Not Protected By Qualified Immunity With Respect to the Civil Rights Claim.

Qualified immunity does not apply for the following reasons:

(1) Defendants were not engaged in a "discretionary function" of their office. They were engaged in an assault on the First Amendment rights of a newspaper and of the plaintiffs. Qualified immunity does not protect a public official who violates a fundamental constitutional right, such as freedom of the press. Harlow v. Fitzgerald, 457 U.S. 800, 818 73 L.Ed.2d 396 (1982). If the defendants, or any one of them, had in mind to penalize the Hometown Connection for the **content** of what was published, then there can be no immunity. The evidence will show that several, if not all, of the defendants in this case did not like what the November 2001 edition of the newspaper had printed and wanted to take some kind of action.

### E. Jeannette Hinkson States a Sufficient Case for Malicious Prosecution.

As noted at the beginning of this Memorandum, the SEEC administrative process, which cites people before it to answer charges, is an "administrative prosecution." It is conceptually the same as a criminal prosecution for the purposes of the tort of malicious prosecution. Defendants' pedantic argument to the contrary has already been rejected by this court (No. 52) when it denied defendants' Motion to Dismiss, which raised the same arguments. There is no public policy reason why an administrative prosecution lacking in probable cause should not give rise to an action for malicious prosecution. See, e. g.,

14

Melvin v. Pence, 130 F.2d 423, 426 (D.C. Cir. 1942); Rainier's Dairies v. Raritan Valley Farms, 117 A.2d 889-896 (N.J. 1955).

Defendants deny that they "instituted" any action against Mrs. Hinkson. The SEEC disagrees. See **Exhibit 6**, the November 13, 2001 letter from the SEEC to Jeannette Hinkson, in which the SEEC's investigator says, "This is to inform you that Ms. Kathryn M. Lawson has filed a complaint against you for alleged violations of" Connecticut election laws. See also **Exhibit 7**, where an assistant attorney general representing the SEEC informed plaintiffs' counsel that "ten residents of Plainville" filed a complaint "against Ms. Hinkson and others." See also **Exhibit 9**, the SEEC Findings and Conclusion with respect to plaintiff Hinkson "In the Matter of a Complaint by Kathryn M. Lawson et al. of Plainville," which concluded that there was no violation of the law by Mrs. Hinkson. There was no finding of probable cause. As AAG Cobb wrote in **Exhibit 7**, "the facts did not support a finding that Ms. Hinkson had violated the State's election laws . . . ." Plaintiff has stated a legally cognizable claim.

## IV.  CONCLUSION

There are genuine issues of fact to be tried, specifically as to defendants' real purpose in bringing the SEEC Complaint. Defendants have not established that, as a matter of law, summary judgment should be granted. The motion should be denied.

15

PLAINTIFFS

By /s/ W. T. Barrante
William T. Barrante
Fed. Bar No. 10677
P.O. Box 273
Watertown, CT 06795
(860) 379-9885
Telefax (860) 738-4906
E-mail: william.barrante@snet.net

## CERTIFICATION

I certify that on September 23, 2004 a copy of the foregoing with attached exhibits was mailed to the following:

Attorney Beatrice S. Jordan
65 Wethersfield Avenue
Hartford, CT 06114

Attorney Charles E. Vermette, Jr.
40 Tower Lane, Ste 200
Avon, CT 06001

Atty. John Barbieri
P.O. Box 1445
New Britain, CT 06050

AAG Jane Rosenberg
P.O. Box 120
Hartford, CT 06141-0120

Atty. Kenneth John Laska
Drawer A, 63 East Main Street
Plainville, CT 06062

Atty. Paul M. Clyons
P.O. Box 9011
New Britain, CT 06050

Atty. Karen L. Karpie
350 Fairfield Avenue
Bridgeport, CT 06604

/s/ W. T. Barrante
William T. Barrante

16