UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN J. CASSIDY, ET AL.                          NO. 3:02CV1688(CFD)

    Plaintiffs

v.

KATHRYN M. LAWSON, ET AL.

    Defendants                                OCTOBER 13, 2004

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO SUMMARY JUDGMENT MOTION
OF DEFENDANT CIESIELSKI**

    In this Memorandum, the plaintiffs, including the plaintiff John Mastrianni, adopt the facts and arguments as set forth in plaintiffs' Memorandum of Law (dated September 22, 2004) in opposition to the summary judgment motion of defendants Petit, Ringrose and Marliss Pavano, which will be referred to herein as plaintiffs' Principal Memorandum or Prin. Mem. Plaintiffs also adopt Exhibits 1 to 16 attached to the Principal Memorandum. Any additional exhibits will be numbered in series and will be attached to this memorandum.

    **I.    FACTS**

    In this action the defendant Daniel Ciesielski is being sued in two capacities. In the First, Fourth and Seventh Counts, plaintiffs Cassidy, Cunningham, Hinkson and Syskowski sue him and the other defendants for abuse of process for having filed a complaint with the State Elections Enforcement Commission (SEEC) (**Exhibit 1**) against

**ORAL ARGUMENT REQUESTED**

them for a purpose for which it was not intended, as a political weapon against political opponents. In the Fifth Count, the plaintiff Hinkson sues him and the other defendants for malicious prosecution for having caused the SEEC Complaint to be brought against her without probable cause. These counts arise out of items that those plaintiffs placed in the November 2001 issue of the Hometown Connection, a monthly newspaper distributed in Plainville. In the Third Count, plaintiff John Mastrianni sues defendant Ciesielski for libel, for having called him a liar in a newspaper interview regarding Mr. Mastrianni's distribution of a flier opposing passage of the Linden Street School project in the November 2001 municipal election in Plainville. In the interview, defendant Ciesielski said the information in Mr. Mastrianni's flier was incorrect and that Mr. Mastrianni knew it was incorrect, and "I think he put out the information intentionally." (Second Amended Complaint, Third Count, par. 9."[1]

## II.   ARGUMENT

### A. Abuse of Process and Malicious Prosecution Claims

Plaintiffs here adopt the arguments they made in their Principal Memorandum, but emphasize that defendant interprets "abuse of process" and "malicious prosecution" too narrowly. The court is aware that in the last 60 years administrative law has become more prevalent in American jurisprudence. There is no public policy reason why the

2

---

[1] The plaintiff Mastrianni concedes that the second statement in paragraph 9, that opponents of the school project "were going to say anything they could to prevent this school from being built," was said by someone else. This was counsel's error, and is one of the items that plaintiffs seek to amend in their proposed Substitute Third Amended Complaint.

common-law torts of abuse of process and malicious prosecution should not apply to administrative actions as well. The SEEC Complaint (Exhibit 1 to Prin. Mem.) was part of an administrative legal process that resulted in a citation of the plaintiffs to answer the Complaint. In Connecticut small claims practice, the "process" is a notice sent by certified mail. "Process" does not have to be a writ or court document served by a sheriff or marshal. It could be a process established by law for an administrative agency such as the SEEC. And if the process were procured for an improper purpose—as a political tool or weapon—such conduct could support an abuse of process claim. Likewise, there is no public policy reason why malicious prosecution cannot be based on an "administrative prosecution."

The Court should also note that defendant Ciesielski included his own Witness Statement as part of the SEEC Complaint (Exhibit 1 to Prin. Mem.) in which he complained about the identification of plaintiffs Cassidy and Cunningham as Democrats in an advertisement on page 5 of the November 2001 Hometown Connection. They were Democrats running as petitioning candidates. This ad also supported Helen Bergenty and other Republicans. This was a complaint about the **content** of the ad, which did not violate any campaign finance law and was fully protected by the First Amendment. The SEEC found no violation in that ad's characterization of plaintiffs Cassidy and Cunningham. Thus, Mr. Ciesielski's implication in his deposition (Ciesielski Dep., July 15, 2003, at 14, attached to this memorandum as **Exhibit 17**) that the SEEC Complaint

3

was brought only because of alleged violations of campaign finance law is misleading.

In his deposition (plaintiffs' **Exhibit 17**), Mr. Ciesielski and his counsel incorrectly stated that the SEEC Complaint was not brought against the Hometown Connection. (Ciesielski Dep., at 14, 16). The corporation that owns the newspaper was cited as a respondent. (See plaintiffs' **Exhibit 9** to Prin. Mem.). Mr. Ciesielski also made a specific complaint against Helen Bergenty (see his Witness Statement, SEEC Complaint, Exhibit 1 to Prin. Mem.), but in his deposition, he refused to express his opinion of Mrs. Bergenty and the other plaintiffs, and his counsel refused to allow him to do so (**Exhibit 17**, at 16-18), thus protecting the pretext of election law violations as the only reason the SEEC Complaint was filed. In his Witness Statement to the SEEC Complaint, however, Mr. Ciesielski plainly set forth that he did not like the **content** of one of the ads, with no statutory violation cited. His deposition statement that the Linden Street School referendum had nothing to do with the SEEC Complaint (**Exhibit 17** at 32) is called into question by the testimony of Kathryn Lawson in her deposition (plaintiff's **Exhibit 2** to Prin. Mem., at 26-28, 30-32, 36, 56-57) that the school project was a major concern of the people who signed the Complaint. Defendant Ciesielski's underlying purpose in filing the SEEC Complaint will be an issue of material fact for the jury.

**B. The Libel Claim (Third Count)**

**(1) Defendant's Statements Were Defamatory.**

Defendant Ciesielski asserts that his statements in The Herald were simply his

4

"opinion" that plaintiff Mastrianni put out as fact what was only plaintiff's opinion and that plaintiff intentionally put out his opinion as fact. That's not what was said. Defendant told the newspaper that the information plaintiff put out was incorrect and that plaintiff knew it was incorrect. He then said, "I think he put out the information intentionally." Defendant said that plaintiff put out information that plaintiff knew was incorrect. In short, plaintiff was lying to the public. Defendant did not say that plaintiff's "viewpoint" was wrong or incorrect. He did not say that he thought the information was only Mr. Mastrianni's opinion and that plaintiff was wrong it putting out his opinion as factual. He said that part of the reason the school referendum failed was plaintiff's distribution of a flier with incorrect information, a flier he called "infamous" in his deposition (see Ciesielski Dep., **Def. Exhibit 4**, at 24).

The interview with defendant Ciesielski took place in February 2002, two months after the election. Defendant was not saying that he and plaintiff had different views and plaintiff was wrong. He called plaintiff, who was in the advertising business, a liar.

Defamation is still defamation even though it is expressed as an "opinion." Milkovich v. Lorain Journal Co., 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). Accusing a person of lack of integrity when such integrity is important for his profession is libel per se. Proto v. Bridgeport Herald Corp., 136 Conn. 557, 72 A.2d 820, 826 (1950).

Defendant claims, incorrectly, that the defamation is grounded only in his

5

statement that he thought plaintiff put out the incorrect information intentionally, and that because that cannot be objectively verified, it is not actionable. But before he said that (see defendant's Exhibit 1, the newspaper article in question), he said that the plaintiff **knew** the information was incorrect. The question is, therefore, not whether the plaintiff's statements in the flier were correct, **but whether plaintiff believed they were correct**. And that was verified by the plaintiff in his own deposition. (See Mastrianni Dep., **Exhibit 19** at 31-45). Plaintiff believed his statements were true, and had support for them.

### (2) Defendant Is Not Protected By Conditional Privilege.

On pages 8-10 of his Memorandum, defendant claims that because his statements about plaintiff involved a matter of public concern (the Linden Street School project), his statements were conditionally privileged. Such a privilege does not apply if the defamatory statements were malicious. Malice includes actual malice or ill will, or making a false statement with reckless disregard for the truth. Dacey v. Connecticut Bar Assn., 170 Conn. 520, 535, 368 A.2d 125, 133 (1976); Harte-Hanks Communications, Inc. v. Connaughton, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989); Akins v. Altus Newspapers, Inc., 609 P.2d 1263 (Okla. 1977), cert. denied, 66 L.Ed.2d 467.

Calling Mr. Mastrianni's flier "infamous" is certainly a sign of malice or ill will. (See Ciesielski Dep., **Def. Exhibit 4**, at 24). On its face, the flier (defendant's Exhibit 2) does not appear "infamous." But defendant regarded it as not only wrong or incorrect,

6

but "infamous." Whether it was the content of the flier or the way it was distributed or the time it was distributed (the week before the election), it was "infamous" in the mind of Mr. Ciesielski.

Defendant told The Herald that plaintiff knew the information in his flier was not correct. His statement that he **thought** plaintiff put out incorrect information intentionally was only a supplement to the original statement. If plaintiff knew the information was false, and put out the flier anyway, then it can be presumed that he did so intentionally. Defendant's "thinking so" was only a logical conclusion. Defendant wants the court to believe that this was only a clash of viewpoints over a matter of public concern. No, it was more than that. Defendant and his allies in the Linden Street School fight were angry and upset about losing the contest. They blamed the Hometown Connection and they blamed Jack Mastrianni.[2]

Defendant is also guilty of having made the defamatory statements with reckless disregard for the truth. This is revealed in his own arguments set forth in his Memorandum of Law. In February 2002, he said that plaintiff knew his flier was incorrect and put it out anyway. Now, he claims that plaintiff was only expressing his opinion and that he, Mr. Ciesielski, was simply expressing an opposing opinion. It was really a clash of viewpoints, and thus not actionable. Well, if Mr. Ciesielski believed that Mr. Mastrianni was simply expressing an incorrect opinion, why didn't he say that?

7

---

[2] Mr. Mastrianni was also cited by the SEEC for a campaign violation. See Exhibit B to SEEC Complaint, plaintiffs' Exhibit 1 to Prin. Mem., asserting that "Silent Majority Team" failed to register. See also reference in defendant's Exhibit 1 (the newspaper article) about Mr. Mastrianni's being fined and being called a lawbreaker by Mr. Ciesielski.

Because he was angry about defeat of the referendum and lashed out at both the Hometown Connection and Mr. Mastrianni. (See defendant's Exhibit 1).

### III. Conclusion

With respect to the claims of plaintiffs Cassidy, Cunningham, Hinkson and Syskowski, defendant Ciesielski, who was the Democratic town chairman, signed the SEEC Complaint because he did not like the content of at least one of the political ads published in the November 2001 issue of the Hometown Connection and was concerned, along with the other defendants, about the Linden Street School project, which plaintiffs opposed. The alleged violations of campaign finance laws was only a pretext, a way to get the SEEC to take action against defendant's political opponents.

With respect to plaintiff Mastrianni's libel count, defendant Ciesielski told a newspaper that plaintiff distributed a knowingly false flier. Defendant cannot now undo this by claiming he was only expressing his opinion in a public debate. This case does not present the free speech equation that defendant's counsel asserts should be in balance (Def. Mem., at 9). Plaintiff's flier contained statements that plaintiff believed were true. Defendant regarded the flier as "infamous" and called plaintiff a liar. This was not a clash of viewpoints. It was a malicious attack on plaintiff's character and integrity. Defendant should not be shielded by any privilege in this matter.

There are genuine issues of fact for the trier of fact to consider. The motion for summary judgment should be denied.

8

PLAINTIFFS

By _____
William T. Barrante
Fed. Bar No. CT10677
P.O. Box 273
Watertown, CT 06795
(860) 379-9885
Telefax (860) 738-4906
E-Mail: william.barrante@snet.net

## CERTIFICATION

I certify that on October 18, 2004, a copy of the foregoing with attached exhibits was mailed to:

Attorney Paul M. Clyons
P.O. Box 9011
New Britain, CT 06050

Attorney Kenneth John Laska
Drawer A, 63 East Main Street
Plainville, CT 06062

Attorney Karen L. Karpie
350 Fairfield Avenue
Bridgeport, CT 06604

AAG Jane Rosenberg
P.O. Box 120
Hartford, CT 06141-0120

Attorney Beatrice S. Jordan
65 Wethersfield Avenue
Hartford, CT 06114

Attorney John Barbieri
P.O. Box 1445
New Britain, CT 06050

Attorney Charles E. Vermette, Jr.
40 Tower Lane, Ste 200
Avon, CT 06001

_____
William T. Barrante