UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN J. CASSIDY, WILLIAM E.
CUNNINGHAM, JOHN MASTRIANNI,
JEANNETTE HINKSON, HENRY R.
SYSKOWSKI, JR.,
        Plaintiffs

v.

KATHRYN M. LAWSON, DEAN RUSTIC,
DAVID UNDERWOOD, DANIEL
CIESIELSKI, WILLIAM PETIT, PATRICK
RINGROSE, MARLISS PAVANO, RONALD
PAVANO, SR., BARBARA WILLARD and
GARY WILLARD,
        Defendants

NO. 3:02CV1688(CFD)

OCTOBER 19, 2004

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO SUMMARY JUDGMENT
OF DEFENDANT RONALD PAVANO, SR.**

In this Memorandum of Law the plaintiffs adopt and restate the facts and arguments as set forth in their memorandum in opposition to the summary judgment motion of defendants Petit, Ringrose and Marliss Pavano (hereafter the Principal Memorandum or Prin. Mem.). Plaintiffs also adopt the Exhibits attached to the Principal Memorandum. Here, plaintiffs will respond to certain specific points in the memorandum of law of defendant Ronald Pavano, Sr. (hereafter, Def. Mem.).

The defendant Ronald Pavano, Sr. filed the SEEC Complaint (Exhibit 1 to Prin. Mem.) along with the other defendants. He is the husband of defendant Marliss Pavano (see Marliss Pavano Dep., Exhibit 4 to Prin. Mem., at 10) and harbored an animus against

both Helen Bergenty, president of the Hometown Connection, and plaintiff Jeannette Hinkson, who was associated with Mrs. Bergenty in publishing that newspaper. (Hinkson Dep., Exhibit 5 to Prin. Mem., at 35-36).

### A. Defendant Misused the SEEC Complaint Process.

Defendant claims he used the SEEC complaint process for the purpose for which it was intended, i.e., enforcement of the election laws. (Def. Mem., at 12). That, however, was only a pretext. As is made clear in the deposition testimony of defendant Kathryn Lawson, defendants were concerned about the **content** of certain political ads in the November 2001 edition of the Hometown Connection and were concerned that at least one of the ads might adversely affect passage of the Linden Street School project, which all the defendants supported. (Lawson Dep., Exhibit 2 to Prin. Mem., at 26-28. 30-32, 36, 41, 49. 56-57).[1] They needed to take action, and quickly.

Plaintiffs are not complaining about the "mere" filing of the SEEC Complaint. The Complaint was filed against them "to accomplish a purpose for which it [was] not designed," Mazzochi v. Beck, 204 Conn. 490, 494, 529 A.2d 171 (1987). It was filed for a political purpose, to put plaintiffs in a bad light shortly before the election. This purpose was neither "incidental" nor secondary. People from both major parties don't get together in two meetings simply because they are concerned about election laws.

2

---

[1] Defendant Ronald Pavano, Sr.'s counsel refused to allow plaintiffs' counsel to depose his client after the July 1, 2004 cutoff date. All we get from Mr. Pavano, therefore, is his self-serving Affidavit (Defendant's Exhibit R). What is important in this affidavit, as with the affidavits of the other defendants, is not what he said but what he did not say. Counsel has just learned that the court [96] has given leave to depose Mr. Pavano out of time, but that has not yet been accomplished.

It was the content of the various ads that sparked the defendants' interest in taking some action. Kathryn Lawson called one ad "vicious." (Lawson Dep., Exhibit 2 to Prin. Mem., at 30-31). William Petit didn't like an ad that criticized him and his daughter, who was running for office that year. (Petit Dep., Exhibit 3 to Prin. Mem., at 16-17, 23-24). Daniel Ciesielski, the Democratic town chairman, didn't like an ad that described plaintiffs Cassidy and Cunningham as Democrats. (Witness Statement to SEEC Complaint, Exhibit 1 to Prin. Mem.). And defendant Ronald Pavano, Sr. had an animus against the two principal members of the Hometown Connection because of what was published in its November 2001 edition. (Hinkson Dep., Exhibit 5 to Prin. Mem., at 35-36). Defendants Petit and Marliss Pavano also had political problems with Helen Bergenty, president of the newspaper. (Cassidy Dep., **defendant's Exhibit K**, at 160); Marliss Pavano Dep., Exhibit 4 to Prin. Mem., at 40-41). And all the defendants shared a common political goal, passage of the Linden Street School referendum, a goal the plaintiffs opposed. (Lawson Dep., Exhibit 2 to Prin. Mem., at 26-28).

Defendant Ronald Pavano, Sr. is equally liable with the other defendants because they were all in league for a common purpose, to attack the Hometown Connection for the content of what it printed and to attack plaintiffs for what they believed with respect to the school referendum. Ashmead v. Colby, 26 Conn. 287 (1857); State v. Coltherst, 253 Conn. 478, 820 A.2d 1024 (2003). This has a constitutional impact because three of the defendants (Petit, Ringrose and Marliss Pavano) were public officials who signed the Complaint as such. Freedom of the press also has roots in the common law, going back to

3

the 18th century case of John Peter Zenger in New York. See Ralph Gregory Elliot, Benjamin Franklin and the Seedtime of American Newspapers: Persistent Issues of a Free Press, 72 Conn. Bar J. 478, 489-492 (1998).

The defendants certainly had "collateral purposes not related to" election law enforcement. Lodges 743 & 1746 v. United Aircraft Corp., 534 F.2d 422, 465 (2d Cir. 1975). Contrary to defendant Pavano's claim (Def. Mem. at 11), plaintiffs have certainly proferred evidence that defendants used the SEEC complaint process for a purpose for which it was not intended. In their affidavits, defendants say they filed the Complaint only because of the election law violations. That is the same logic a racist police officer, who targets blacks for traffic violations, might use in saying that the reason the cars are stopped is that the driver was speeding. What is important is what defendants did not say in their affidavits.

The conduct of the defendants supports plaintiffs' claims for both abuse of process and, with respect to plaintiff Hinkson, malicious prosecution. See Principal Memorandum, at 6-9, 14-15.

**B. Defendant Is Not Entitled to Absolute Immunity.**

As set forth on pages 9-10 of the Principal Memorandum, defendant Ronald Pavano, Sr. is not entitled to absolute immunity. Defendant cites Field v. Kearns, 43 Conn. App. 265, 682 A.2d 148 (1996) for the proposition that he should be shielded from liability "for statements made during quasi-judicial proceedings" such as those of the

4

SEEC. (Def. Mem., at 17). Plaintiffs, however, are not complaining about any statements he made. He admittedly did not make any statements after the filing of the Complaint. He also argues (Def. Mem., 18) that the immunity should also extend to "the actual filing" of the Complaint.. Defendant's claim should be rejected because <u>Field</u> was concerned about protecting a weaker party (the bar grievant) against retaliation by a more powerful party (the attorney). Here the roles are reversed. The plaintiffs are "the weaker party" (three petitioning candidates and the publisher of a small monthly newspaper) and defendants are the "more powerful party" (three public officials, two party chairmen, and their political allies). Also, defendant failed to address the First Amendment implications as directed by the court in its denial of the motions to dismiss [No. 52].

If the plaintiffs prevail in this case, will people be deterred from complaining about election law violations? If they group together to strike back at political opponents for the **content** of what those opponents are saying or to put them in a bad light just before the election—maybe so. Election laws by their very nature impact First Amendment freedoms. Political people should not be allowed to misuse the SEEC process as a political weapon. Where First Amendment values are at stake, the court should advance those values. If the trier of fact finds that defendants brought the SEEC Complaint for an improper purpose, then defendants should be found liable for abuse of process and (re Hinkson) malicious prosecution with respect to plaintiffs' freedom of the press. Those torts (plus vexatious litigation) would not exist if anyone who filed a lawsuit or complained to authorities were absolutely immune from liability.

5

Defendant argues that the SEEC Complaint was intended to "ensur[e] the integrity of political candidates and the political offices they hold, . . . ." (Def. Mem., 20). The petitioning candidates' failure to put addresses in their ads did not affect the integrity of the election. Their addresses were already registered with the SEEC (see Exhibit 12 to Prin. Mem.) and their addresses were on file with the registrars of voters. If any citizen wanted to contact any of them, he or she would have had no trouble doing so. The **address** is important for "an individual" other than a candidate who places an ad for the candidate. See the first part of C.G.S., Section 9-333w(a). Also, because the statute exempts certain candidates from placing their addresses, the address requirement cannot be all that important. And because the statute distinguishes candidates for no rational reason, there are equal protection problems under the Fourteenth Amendment.

Because of the constitutional implications, defendant should not be afforded absolute immunity.

### C. The SEEC Complaint Was Directed at Jeannette Hinkson.

Defendant argues that he should not be liable to plaintiff Hinkson because the SEEC Complaint mentioned neither her nor her published notice. The SEEC, however, regarded the Complaint as directed against Mrs. Hinkson. See Exhibits 6, 7 and 9 to Prin. Mem.). It must be noted here that, contrary to paragraph 45 of defendant's Local Rule 56(a)1 Statement, plaintiff Hinkson **never** told the SEEC that she published any **illegal** notice in the newspaper. As the SEEC found (Exhibit 9 to Prin. Mem.), the

6

complaint against her was brought by "Kathryn M. Lawson et al." and there was **no probable cause** for any complaint against her. At no point did any of the defendants advise the SEEC that Mrs. Hinkson was not a proper respondent. They lit the fire and did not care who was in the house. If the SEEC Complaint was brought for an improper purpose, and it encompassed plaintiff Hinkson, the damage done to her in having to respond should be compensated by the defendants.

Defendant also claims he did not have any malice toward plaintiff Hinkson. (Def. Mem., 25). First, that's not true. Plaintiffs Petit, Underwood and Ronald Pavano, Sr. verbally attacked plaintiff Hinkson at a Republican town committee meeting because of what was published in her newspaper. (Hinkson Dep., Exhibit 5 to Prin. Mem., at 35-36). Also, because this was a conspiracy to penalize plaintiffs for their political opinions, all the defendants share in the liability. See cases cited at page 3 above.

There are certainly issues of material fact for the trier in this case. The motion for summary judgment should be denied.

PLAINTIFFS,

By _____
William T. Barrante
P.O. Box 273
Watertown, CT 06795
(860) 379-9885
Telefax (860) 738-4906
Fed. Bar No. CT10677
Email: william.barrante@snet.net

7

CERTIFICATION

I hereby certify that on October 22, 2004, a copy of the foregoing was mailed to the following:

Mr. Kenneth John Laska
Drawer A, 63 East Main Street
Plainville, CT 06062

Miss Karen L. Karpie
350 Fairfield Avenue, Suite 408
Bridgeport, CT 06604

Mr. Charles E. Vermette, Jr.
Litchfield Cavo
40 Tower Lane, Suite 200
Avon, CT 06001

Miss Jane R. Rosenberg
Assistant Attorney General
P.O. Box 120
Hartford, CT 06141-0120

Miss Beatrice S. Jordan
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114

Mr. John A. Barbieri
P.O. Box 1445
New Britain, CT 06050

Mr. Paul M. Clyons
P.O. Box 9011
New Britain, CT 06050-9948

William T. Barrante
Attorney for Plaintiffs
Fed. Bar No. CT10677

8