FILED

2004 NOV -1 A 9:05

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN J. CASSIDY, ET AL., | NO. 3:02CV1688(CFD) |
| Plaintiffs | |
| v. | |
| KATHRYN M. LAWSON, ET AL., | |
| Defendants | OCTOBER 27, 2004 |

**PLAINTIFFS' MEMORANDUM OF LAW
IN RESPONSE TO AMICUS CURIAE BRIEF
RE: MOTION FOR SUMMARY JUDGMENT**

The plaintiffs present this Memorandum of Law in response to the Amicus Curiae Brief, dated September 1, 2004, filed by Assistant Attorney General Jane R. Rosenberg on behalf of the State Elections Enforcement Commission (SEEC). For economy, plaintiffs will rely on the Exhibits attached to their memorandum in response to the Motion for Summary Judgment filed by Attorney Jordan on behalf of defendants William Petit, Patrick Ringrose and Marliss Pavano. Attorney Jordan's memorandum of law will be referred to here as "Def. Mem." Plaintiffs' opposing memorandum to her memorandum will be referred to as "Principal Memorandum" or "Prin. Mem."

The AAG claims that this action is a "classic 'strategic lawsuit against public Participation' or 'SLAPP' suit." As the facts show, however, the defendants' complaint to the SEEC (**Exhibit 1** to Prin. Mem.) was actually a type of "SLAPP suit" against the

<u>Hometown Connection</u> newspaper, the people associated with it, and the petitioning candidates in Plainville's November 2001 municipal election.

## I.    STATEMENT OF FACTS

Plaintiffs incorporate by reference the facts as set forth in their Principal Memorandum, but will emphasize the following: Plaintiffs Cassidy, Cunningham and Syskowski ran for the Plainville Town Council in the November 2001 election as petitioning candidates. They and other petitioning candidates placed political advertisements on page 19 of the November 2001 edition of the <u>Hometown Connection</u> (hereafter, the "Newspaper"). Each of these ads had the required notation "Paid for by [name of candidate]" but did not have any address. In the same edition, the Newspaper also published a political ad advocating the election of Republican Helen Bergenty, president of the Newspaper, along with petitioning candidates Cassidy and Cunningham (**Exhibit 1**, page 5 ad) and an advertisement urging a "No" vote in the Linden Street School referendum (**Exhibit 1**, page 17 ad). All the petitioning candidates supported a "No" vote in the referendum. All the defendants, who included a town councilman (Petit), two school board members (Ringrose and Mrs. Pavano), the Democratic town chairman (Ciesielski), and the Republican town chairman (Underwood), supported a "Yes" vote in the referendum. As defendant Kathryn Lawson states very clearly and honestly in her deposition (**Exhibit 2** to Prin. Mem., at 30-32, 36, 41, 49), the defendants did not like the page 5 and page 17 ads and wanted to do something about it. Mrs.

2

Lawson called the SEEC and learned that there were possible election law violations with the page 5 and page 17 ads (no notation of a treasurer for the sponsoring group) and also with the petitioning candidates' ads (lack of addresses). (Lawson Dep., at 12-13). They met twice at the home of defendant Barbara Willard, president of the Linden Street School PTO (see **Exhibit 1**, signature page), and decided to file the SEEC Complaint. The Complaint was signed on November 1, 2001 and filed on November 2, 2001, four days before the election. As related by David Underwood in his deposition (**Exhibit 11** to Prin. Mem.), this filing received publicity in two major newspapers. All the plaintiffs, plus Helen Bergenty and the Newspaper, were cited for violations by the SEEC (see **Exhibits 6, 7, 8, 9** to Prin. Mem.). The SEEC found plaintiff Hinkson, Mrs. Bergenty and the Newspaper "not guilty." After hearings, plaintiffs Cassidy and Cunningham were found in violation of C.G.S. Section 9-333w(a). Plaintiff Syskowski admitted to an unintentional violation of Section 9-333w(a).

II.  **ARGUMENT**

A. **THE PLAINTIFFS' ACTION IS NOT A "SLAPP" SUIT.**

On page 1 of her memorandum, AAG Rosenberg says that this case is a "classic" SLAPP suit. Nothing could be further from the truth. A "classic" SLAPP suit is where a powerful group or person brings an action against a less powerful group or person for purposes of intimidation, to deter the less powerful group from acting against the more powerful entity or to penalize it for so acting. A common example is where a developer will sue neighbors who oppose the development. In the present case, the defendants are

3

the powerful group—three town officials and two major-party town chairmen, plus close political allies in the fight for passage of the school referendum. Three plaintiffs were petitioning candidates in the election. The other plaintiff (Mrs. Hinkson) was publisher of a small, monthly newspaper. The Newspaper was the principal target. The SEEC Complaint was an action by defendants to penalize a newspaper for the exercise of its right to freedom of the press. The election law violations were only a pretext, a way to get the matter before the SEEC. Under the AAG's interpretation, the neighboring property owners who appeal the approval of a developer's project could be charged with bringing a SLAPP suit against the developer. The "World Turned Upside Down," which the British bands played at Yorktown.

AAG Rosenberg's arguments on pages 4-8 of her amicus brief are wrong in the following respects:

(1)   "The plaintiffs have failed to state a claim for violation of state or federal law." (Page 4). Plaintiffs have alleged violations of their rights under the First and Fourteenth Amendments to the U. S. Constitution, enforceable against defendants Petit, Ringrose and Marliss Pavano through 42 U.S.C. Section 1983. If the alleged election law violations were only a pretext and defendants' actual reason for bringing the SEEC Complaint was to penalize the Newspaper for printing ads they did not like shortly before the election, then First Amendment rights are certainly implicated. The deposition testimony of defendant Lawson (**Exhibit 2**), defendant Petit (**Exhibit 3**), defendant

4

Marliss Pavano (**Exhibit 4**) and defendant Ringrose (**Exhibit 10**), as noted in plaintiffs' Principal Memorandum, clearly indicates that defendants had problems with more than lack of a treasurer or lack of an address. They were using the SEEC Complaint as a political weapon, something it was not designed for, and that makes their action an abuse of process. And it makes the action of the defendant public officials a violation of constitutional rights. It's one thing to penalize someone for violating election law. It's entirely another thing to penalize that person for having spoken out. And because the petitioning candidates and Mrs. Hinkson were encompassed by the SEEC Complaint, they can claim injury as a result of defendants' improper use of the SEEC process.

(2) One element of a SLAAP suit is that it be "filed against a nongovernment individual," citing at pages 4-5 the case of Field v. Kearns, 43 Conn. App. 265, 276, 682 A.2d 148 (1996). Three of the defendants in this case, as already noted, were government officials. AAG Rosenberg doesn't address this at all. The other defendants were in league with these officials.

(3) AAG Rosenberg claims (page 5) that "in the fourth case" (i.e., Jeannette Hinkson's), the SEEC found on its face that her "get out and vote" notice "appeared" to violate the law, "but after a full investigation concluded that it did not." This is completely false. The SEEC found no probable cause whatsoever. (See **Exhibit 9** to Prin. Mem.; see also AAG Cobb's letter to undersigned counsel, **Exhibit 7**.) Defendants' claim against Mrs. Hinkson was simply unfounded harassment, more of a

5

"SLAPP" case than what AAG Rosenberg complains about.

(4) There was no corruption with respect to the plaintiffs in this case. AAG Rosenberg argues that the purpose of the SEEC complaint process is to allow the SEEC to investigate perceived corruption in elections (pages 6-7). None of the defendants has argued that the address violations by plaintiffs Cassidy, Cunningham and Syskowski were serious. Although the SEEC could have imposed as much as a $2,000.00 fine for that violation, none was imposed. Mr. Cassidy's violation was regarded as "an honest misinterpretation of the law." (See **Exhibit I** to Def. Mem.) With respect to Mr. Cunningham, the SEEC found that there was "no deception or confusion concerning sponsorship of the ad." (See **Exhibit J** to Def. Mem.) And with respect to Mr. Syskowski, the violation was "unintentional." (See **Exhibit M** to Def. Mem.).

(5) The AAG's interpretation of C.G.S. Section 9-333w(a) is incorrect.

Section 9-333w(a), which supposedly requires a petitioning candidate who agrees to spend less than $500.00 in an election to place his address after the "Paid for by" notation in a political ad, doesn't say that at all. The statute says,

> No **individual** shall make or incur an expenditure **with the cooperation of or at the request or suggestion of, or in connection with** any candidate or candidate committee or candidate's agent, **and no candidate** or committee shall make or incur an expenditure for any written, typed or other printed communication which promotes the success or defeat of any candidate's campaign for nomination at a primary or election or solicits funds to benefit any political party or committee unless such communication bears upon its face the words "paid for by" and the following: (1) in the case of **such an individual**, the name and address of **such individual**; (2) in the case of a committee other than a party committee, the name of the committee and its campaign treasurer; or (3) in the case of a party committee, the name of the committee.    (Emphasis added.)

6

The "individual" who is required to place his address in the ad is the only "individual" mentioned at the beginning of the statute--one who places an ad in connection with a "candidate." There is no specific requirement for any "candidate" to put his address in an ad. This makes sense. In the case of the plaintiffs in this case, their addresses were already registered with the SEEC. (See **Exhibit 12**, attached to Prin. Mem.). The petitioning candidates also had their addresses registered with the Registrars of Voters. Anyone in town, and anyone at the SEEC, could find them. The Attorney General's rationale for the address requirement in this case is without merit.

True, the Connecticut Supreme Court upheld the **constitutionality** of Section 9-333w in Seymour v. Elections Enforcement Commission, 255 Conn. 78, 762 A.2d 880 (2000), cert. denied, 533 U.S. 931 (2001), but the court in that case did not address, and was not asked to address, the issue raised in this case, whether "such an individual" and "such individual" refer to a "candidate." If the Legislature had intended the statute to require candidates, who already have their addresses registered, to put their addresses in political ads, the Legislature could have said so: ". . . in the case of such an individual or candidate . . . ." But the Legislature didn't. As is well known, any statute that implicates First Amendment rights must be narrowly construed to achieve the valid governmental purpose. Reno v. ACLU, 138 L.Ed.2d 874 (1997); Edwards v. South Carolina, 372 U.S. 229, 9 L.Ed.2d 697 (1963); Shelton v. Tucker, 364 U.S. 479, 5 L.Ed.2d 231 (1960). A government agency, particularly one whose purpose is to regulate First Amendment activity, should not be allowed to interpret for itself more power than the statute gives it.

There is no valid reason for requiring a candidate whose address is already registered with the SEEC to place an address in a political ad, especially when the statute (Section 9-333w) does not explicitly require it. Also, an administrative agency does not have the power to confer additional powers upon itself. Castro v. Viera, 207 Conn. 420, 428-429, 541 A.2d 1216, 1220 (1988).

(6) The plaintiffs' case is not, as the AAG contends, "an end-run around the administrative process." Plaintiffs Cassidy, Cunningham and Syskowski did not appeal the SEEC's adverse rulings. Plaintiff Hinkson did not have to, because the SEEC found in her favor. If the other three plaintiffs had appealed, and prevailed on the appeal, all that would have done is put them in the same category as plaintiff Hinkson. The Superior Court in an administrative appeal of an SEEC ruling does not have the power to award damages against the complaining parties. The AAG's argument here makes no sense.

### B. DEFENDANTS ARE NOT PROTECTED BY ABSOLUTE IMMUNITY.

Because the plaintiffs' action implicates constitutional rights and involves actions by public officials, the court should analyze this case on the basis of qualified rather than absolute immunity.. If public officials and people in league with them, who violate the civil rights of their political opponents, can hide behind the shield of "absolute immunity," then the Section 1983 civil rights remedy would be greatly diminished. Find a government agency, complain to it, and let the agency do our dirty work. We'll be safe.

That's the defendants' argument, which is being supported by the Attorney General in order to protect the power of a state agency.

While absolute immunity may protect the prosecuting official (Amicus Brief, p. 9), it certainly does not protect a person who makes a false complaint to the police or to a prosecutor against another person. That's why we have the torts of abuse of process and malicious prosecution. If the defendants here are given absolute immunity, then those torts become meaningless. A person who applies to a court for a legal process for a purpose for which it was not designed would be protected. Likewise, a person who falsely charges his enemy with a crime without probable cause would be protected. Nonsense.

It must be emphasized that this case is not against the "prosecutors" or the agency (the SEEC). And the absolute immunity that protects certain individuals, Field v. Kearns, 43 Conn. App. 265, 682 A.2d 148 (1996), does not apply here, because the defendants are not a weaker group that needs protection from a more powerful group. The defendants are the more powerful group, as explained above. In Field, the court found that the bar grievant (the client) needed immunity as protection against the more powerful person (the attorney), so attorneys would not be able to intimidate clients who have claims against them for wrongdoing. That situation simply does not apply here.

In Craig v. Stafford Construction, Inc., 78 Conn. App. 549, 827 A.2d 793 (2003), cited by the AAG on page 11, a citizen accused a Hartford police officer of racial bias.

9

Again, it was a weaker person who made a complaint against a more powerful person. The rationale of that case also does not apply here.

Furthermore, the SEEC found probable cause only in the Cassidy, Cunningham and Syskowski cases. It did not find probable cause in the Hinkson case. See Plaintiffs' **Exhibit 9** attached to the Principal Memorandum. And with respect to abuse of process, it is not necessary that the plaintiffs prove that they were absolved if the process was procured for an improper purpose.

With respect to Section 1983, the AAG would have us believe that public officials who use a government process with the intention of penalizing a newspaper and people they believe are associated with it (the petitioning candidates, see Plaintiffs' **Exhibit 8** attached to the Principal Memorandum), can hide behind absolute immunity. In the cases cited by the AAG on page 13 of her memorandum, the absolute immunity was afforded to public officers who were doing what their jobs required them to do—initiating a criminal prosecution or filing a delinquency petition or juvenile abuse petition. But police or sheriffs who arrest people because of racial bias cannot successfully invoke that immunity. Likewise, public officials like defendants Petit, Ringrose and Marliss Pavano, who use a governmental process as a political weapon, should not be able to shield themselves.

The defendants should not be protected by any immunity if they knew or should have known that their actions would violate plaintiffs' constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 814, 73 L.Ed.2d 396 (1982). Immunity does not apply if

10

defendants' conduct violated a clearly established constitutional right. Id. At 818. Freedom of the press is certainly such a right. And as noted above at pages 4-5, defendants were concerned about the **content** of what was published, clearly a First Amendment matter. The court must find for plaintiffs if it finds that plaintiffs' allegations, if true, establish a constitutional violation. Hope v. Pelzer, 536 U.S. 730, 736, 153 L.Ed.2d 666 (2002).

The defendants' motions for summary judgment should be denied.

PLAINTIFFS

By /s/ William T. Barrante
William T. Barrante
Fed. Bar No. CT10677
P.O. Box 273
Watertown, CT 06795
(860) 379-9885
Telefax (860) 738-9885
E-mail: william.barrante@snet.net

11

## CERTIFICATION

I certify that on October 29, 2004, a copy of the foregoing was mailed to the following:

AAG Jane Rosenberg
P.O. Box 120
Hartford, CT 06141-0120

Atty. Beatrice S. Jordan
65 Wethersfield Avenue
Hartford, CT 06114

Atty. Kenneth John Laska
Drawer A, 63 East Main Street
Plainville, CT 06062

Atty. Charles E. Vermette, Jr.
40 Tower Lane, Ste 200
Avon, CT 06001

Atty. John A. Barbieri
P.O. Box 1445
New Britain, CT 06050

Atty. Karen L. Karpie
350 Fairfield Avenue
Bridgeport, CT 06604

Atty. Paul M. Clyons
P.O. Box 9011
New Britain, CT 06050

William T. Barrante