UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN J. CASSIDY, ET. AL.              :        CIVIL ACTION NO. 3:02CV1688 (CFD)
                                      :
    v.                                :
                                      :
                                      :
KATHRYN M. LAWSON, ET. AL.            :        JULY 13, 2005

### SUPPLEMENTAL BRIEF OF AMICUS CURIAE STATE ELECTIONS ENFORCEMENT COMMISSION IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

During oral argument on July 1, 2005, on the defendants' motions for summary judgment, the Court invited the parties to submit supplemental briefs in response to any issues raised by the Court during the argument. Two of the questions that the Court raised were: (1) whether absolute immunity should apply to a complaint alleging election law violations despite the possibility that such a complaint could alter the outcome of an election; and (2) whether courts in other states have applied absolute immunity to complaints alleging election law violations.

The amicus curiae, the State Elections Enforcement Commission ("SEEC"), submits this brief to respond to these two questions in the affirmative. Specifically, as discussed below, the harm that results from not applying absolute immunity in the elections context far outweighs the harm from applying it and compels the conclusion that absolute immunity should apply. Indeed, courts in other jurisdictions have repeatedly applied absolute immunity to quasi-judicial proceedings involving alleged election law violations. For all the reasons set forth herein, and in the other briefs in support of the defendants' motions for summary judgment, absolute immunity clearly applies to the present case and warrants summary judgment for the defendants.

**ARGUMENT**

I.   **THE BENEFITS OF APPLYING ABSOLUTE IMMUNITY IN THE ELECTIONS CONTEXT FAR OUTWEIGH ANY POTENTIAL HARM.**

During oral argument, this Court questioned whether absolute immunity should apply to a complaint filed with an elections enforcement board, such as the SEEC, because such a complaint, if filed on the eve of an election and publicized, could conceivably raise questions about a candidate that might alter the outcome of the election. While such a scenario is conceivable, the harm to an individual candidate resulting from such a possibility is far outweighed by the harm to the integrity of the electoral process as a whole that would result if absolute immunity were denied in the context of an elections enforcement proceeding.

In <u>Imbler v. Pachtman</u>, 424 U.S. 409 (1976), the United States Supreme Court explicitly recognized that the doctrine of absolute immunity is not without costs. In holding that a prosecutor is absolutely immune from liability for initiating and prosecuting a criminal prosecution, even if he acts maliciously, the Court acknowledged that this "leave[s] the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." <u>Id</u>. at 427. Despite this concern, the Court concluded that:

> [T]he alternative of qualifying a prosecutor's immunity would disserve the **broader public interest**. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. Moreover, it often would prejudice the defendants in criminal cases by skewing post-conviction judicial decisions that should be made with the sole purpose of insuring justice. With the issue thus framed, we find ourselves in agreement with Judge Learned Hand, who wrote of the prosecutor's immunity from actions for malicious prosecution: "As is so often the case, **the answer must be found in a balance between the evils inevitable in either alternative**.

2

> In this instance it has been thought in the end better to leave unredressed the wrongs by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949), cert. denied, 339 U.S. 949 (1950).

Imbler, 424 U.S. at 427-428 (emphasis added). Accordingly, the Court concluded that absolute immunity applied.

The Connecticut Appellate Court in Field v. Kearns, 43 Conn. App. 265, 682 A.2d 148 (1996), applied a similar analysis in concluding that absolute immunity applied to citizen complaints to the statewide grievance committee. Taking into account arguments that "the potential harm to an attorney's reputation and career from groundless complaints is great, that lawyers should not be deprived of their right to legal process, and that the result of providing absolute immunity to bar grievants would be an abuse of attorney grievance procedures," the court nonetheless concluded that "any such concerns are outweighed by the importance of public confidence in the supervision of attorney conduct." Field, 43 Conn. App. at 276. See also Craig v. Stafford Construction, Inc., 271 Conn. 78, 92, 856 A.2d 372 (2004)(applying absolute immunity to citizen complaint of police misconduct and noting that "the possible harm [that] a false brutality complaint may cause to a law enforcement officer's reputation . . . is outweighed by the public's interest in encouraging the filing and investigation of valid complaints").

Similarly, in the present case, even if an unfounded or malicious complaint to the SEEC that makes its way into the press might leave an individual candidate without recourse before an election, the far greater harm would be to the broader public interest in the integrity of the

election process as a whole if absolute immunity were denied.[1] As the Supreme Court has emphasized, the "State indisputably has a compelling interest in preserving the integrity of its election process." Burson v. Freeman, 504 U.S. 191, 199 (1992). Yet, if citizens are afraid to report suspected violations, the SEEC's ability to enforce the law will be significantly reduced and candidates will be less concerned with complying with the law because it will be far less likely that their violations will come to the attention of the SEEC. The result – potentially numerous, flagrant violations of the election laws prior to and during an election -- not only could skew the outcome of the election, but also destroy public confidence in the electoral process as a whole.

Accordingly, notwithstanding the possibility that individual candidates could be negatively affected in certain cases, a balancing of the "evils inevitable in either alternative." Imbler, 424 U.S. at 428, warrants the conclusion that absolute immunity should, and does, apply to complaints alleging election law violations.

## II.    COURTS IN OTHER JURISDICTIONS HAVE APPLIED ABSOLUTE IMMUNITY TO COMPLAINTS ALLEGING ELECTION LAW VIOLATIONS.

The conclusion that absolute immunity applies to quasi-judicial proceedings involving elections complaints is supported by the cases from other jurisdictions that have applied absolute immunity in the elections context.

---

[1] It should be noted that although the SEEC is statutorily authorized to take up to sixty days to address a complaint, Conn. Gen. Stat. § 9-7a(g), an individual who is the subject of a complaint to the SEEC is ultimately never without recourse because he or she may seek an order to show cause if the Commission has not acted within sixty days, id., and, after the Commission has ruled, may appeal the Commission's ruling to the Connecticut Superior Court pursuant to Conn. Gen. Stat. § 4-183.

For example, in Connolly v. Stone, 807 So. 2d 979 (La. App. 2002), the plaintiff poll commissioner sued the defendant for defamation after the defendant complained about the plaintiff's conduct during an election to the Jefferson Parish Board of Election Supervisors. The plaintiff's complaint caused the Board to initiate an investigation and suspend the plaintiff from his position. In dismissing the plaintiff's suit on the grounds of absolute immunity, the court concluded that the Board's proceedings were quasi-judicial in nature and that the defendant's defamatory comments, both those uttered orally that prompted the investigation and those that were set forth in a letter to the Board, were protected by absolute privilege.

Similarly, in Kimball v. Ryan, 283 Ill. App. 456 (1936), the plaintiff sued the defendants for libel after the defendants filed a complaint with the election commissioners accusing the plaintiff of various election law violations, including falsifying signatures on a petition to get a candidate on the ballot. Stating that "[i]t is the law that a person is not subject to be sued for slander or libel for defamatory statements in papers filed in a judicial proceeding or before bodies whose duties are quasi judicial," id. at 463, the court concluded that the defendants were entitled to absolute immunity and dismissed the suit.

In Penick v. Ratcliffe, 140 S.E. 664 (Va. 1927), a group of voters filed a petition in the county circuit court alleging voting irregularities and seeking a recount of a primary election. In the petition, the voters alleged that a judge had committed multiple election law violations, including bribing voters to vote for the winning candidate. When the judge filed a libel action against the voters, the Virginia Supreme Court ordered the suit dismissed on the grounds of absolute immunity, despite the fact that the allegations against the judge may well have been false. See also Salisbury v. Wraybevens, 1996 Ohio App. Lexis 2784 (1996)(prosecutor entitled

to absolute immunity for filing criminal complaint against plaintiff for violating Ohio's election laws).

Courts have applied absolute immunity not only to the acts of the complainants, but also to the acts of the elections board itself. Thus, for example, in Tobin for Governor v. Illinois State Board of Elections, 268 F.3d 517 (7th Cir. 2001), cert. denied, 535 U.S. 929 (2002), the Seventh Circuit affirmed the dismissal of a 42 U.S.C. § 1983 suit against the Illinois State Board of Elections on the grounds that the Board was shielded by absolute immunity. In so holding, the court echoed the Supreme Court's rationale for applying absolute immunity in other contexts, explaining that "[t]o protect the integrity of the electoral process, it is necessary to protect the board members from harassment and intimidation so that they can exercise their independent judgment." Id. at 522.

Although the Connecticut courts have not had occasion to apply absolute immunity in an elections case, there is no reason to believe that they would rule any differently than the courts discussed above. Indeed, the Connecticut Supreme Court has repeatedly stated in dicta that the types of quasi-judicial proceedings to which absolute immunity applies **include election contests**. See, e.g. Craig v. Stafford Construction, Inc., 271 Conn. 78, 84, 856 A.2d 372 (2004)("[t]he judicial proceeding to which absolute immunity attaches . . . includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, . . . [and] includes for example, lunacy, bankruptcy, or naturalization proceedings, and **an election contest**")(brackets omitted, emphasis added); Kelley v. Bonney, 221 Conn. 549, 566, 606 A.2d 693 (1992)(same); Petyan v. Ellis, 200 Conn. 243, 246, 510 A.2d 1337 (1986)(same, citing W. Prosser & Keeton, Torts, § 114, pp. 818-819 (5th Ed. 1984)).

6

In sum, there is a wealth of support for the conclusion that absolute immunity applies in the elections context and applies in the present case. Accordingly, for all the reasons set forth herein, in the SEEC's September 1, 2004 brief, and in the defendants' briefs, the defendants' motions for summary judgment should be granted.

                                        AMICUS CURIAE
                                        CONNECTICUT STATE ELECTIONS
                                        ENFORCEMENT COMMISSION


                                        RICHARD BLUMENTHAL
                                        ATTORNEY GENERAL


                        BY:     _____
                                        Jane R. Rosenberg
                                        Assistant Attorney General
                                        Federal Bar No. ct16092
                                        55 Elm Street
                                        P.O. Box 120
                                        Hartford, CT  06141-0120
                                        Tel: (860) 808-5020
                                        Fax: (860) 808-5347
                                        jane.rosenberg@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing supplemental brief was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 13th day of July, 2005 to:

Kenneth John Laska, Esq.
Drawer A
63 East Main Street
Plainville, CT  06062
Tel:  (860) 747-2792
Fax: (860) 747-8609

Beatrice S. Jordon, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT  06114
Tel:  (860) 249-1361
Fax: (860) 522-9549

Karen L. Karpie, Esq.
Murphy and Karpie
350 Franklin Ave., Suite 408
Bridgeport, CT  06604
Tel : (203) 333-0177
Fax: (203) 333-0177

John A. Barbieri, Esq.
P.O. Box 1445
New Britain, CT 06050
Tel:  (860) 224-7119
Fax: (860) 225-7319

Charles E. Vermette, Jr., Esq.
Litchfield Cavo, Attorneys at Law
40 Tower Lane, Suite 200
Avon, CT  06001
Tel :  (860) 255-5577
Fax : (860) 255-5566

Paul M. Clyons, Esq.
Law Offices of Heidi Zultkowski
P.O. Box 9011
New Britain, CT 06050-9948
Tel: (860) 827-4351
Fax: (860) 827-4386

William T. Barrante, Esq.
P.O. Box 273
Watertown, CT 06795
Tel: (860) 379-9885
Fax: (860) 738-4906

 

_____
Jane R. Rosenberg
Assistant Attorney General